BETH A. ROSS (SBN 141337)
bross@leonardcarder.com
AARON D. KAUFMANN (SBN 148580)
akaufmann@leonardcarder.com
DAVID P. POGREL (SBN 203787)
dpogrel@leonardcarder.com
ELIZABETH R. GROPMAN (SBN 294156)
egropman@leonardcarder.com
LEONARD CARDER, LLP
1330 Broadway, Suite 1450
Oakland, California 94612
Tel: (510) 272-0169
Fax: (510) 272-0174

*Attorneys for Plaintiffs and the Putative Class*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEAN ALEXANDER, *et. al.*, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FEDEX GROUND PACKAGE SYSTEM, INC. et. al.,<br><br>Defendant. | Case No: 3:05-cv-38 EMC<br><br>**DECLARATION OF BETH A. ROSS IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND SUPPLEMENTAL CLASS NOTICE**<br><br>Date:   August 6, 2015<br>Time:   1:30 PM<br>Dept.:  Courtroom 5 |

I, Beth A Ross, declare as follows:

1. I am an attorney licensed to practice law in the State of California and am admitted to practice in all California courts, as well as all of the U.S. District Courts in the State of California, the Seventh and Ninth Circuit Courts of Appeal, and the United States Supreme Court. I am a partner in the firm of Leonard Carder, LLP, located at 1330 Broadway, Suite 1450, Oakland, CA, 94612. I am the lead attorney for the Plaintiff class in this matter. I make this declaration in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement. I have personal knowledge of the facts set forth below and I could and would testify competently about them if called as a witness in this matter.

2. I have substantial experience in complex class actions, including but not limited to serving as one of the court-appointed Co-Lead counsel from my firm since 2005 in the multidistrict pretrial proceedings of which this case was formerly a part, and as the certified class counsel in *Estrada v. FedEx Ground Packages Systems, Inc.*, Los Angeles Superior Court No. B18903, 154 Cal.App.4th 1 (2007). Based on this experience and my thorough analysis of the legal and factual issues presented in this case, I believe the Proposed Settlement reached by the parties in this matter, the terms of which are provided in the Settlement Agreement, attached hereto as **Exhibit 1**, to be eminently fair and reasonable, and in the best interest of the certified Class, because of the substantial monetary benefits the Settlement will provide to the Class Members and the risks and delay of continued litigation, as discussed below.

## History of the Litigation and Settlement Negotiations

3. On November 17, 2004, Plaintiffs filed *Alexander v. FedEx Ground Package System, Inc.*, case in California Superior Court for the County of Alameda, alleging that the Drivers were employees, not independent contractors. In their Third Amended Complaint filed October 1, 2007 (the operative pleading), Plaintiffs asserted damage claims under the Family Medical Leave Act, 29 U.S.C. §2617(a)(1)(b) along with various provisions of the California Labor Code (including, *inter alia*, claims for unreimbursed employment expenses (§2802), unlawful wage deductions (§ 221), missed meal and rest breaks (§226.7), unlawful coercion (§ 450), and unpaid overtime (§1194)), a common law fraud claim, claims to collect civil penalties

1

under Labor Code §203 (waiting time) and §2699 (PAGA) and derivative claims for restitution, declaratory, and injunctive relief under the California Unfair Competition Law, Business and Professions Code §17200 *et. seq*.

4. FXG filed a timely answer to the complaint and then, on January 3, 2005, removed the action to Federal court. In August 2005, pursuant to a motion filed by FXG, the Judicial Panel on Multidistrict Litigation ("JPML") transferred *Alexander* to a multidistrict litigation ("MDL") docket before Judge Robert Miller in the Northern District of Indiana. *In re FedEx Ground Package System Inc. Employment Practices Litig.*, (No. II), 381 F.Supp.2d 1380 (J.P.M.L. 2005). Over 62 cases challenging FXG drivers' "independent contractor classification" were eventually consolidated into the MDL docket for coordinated pretrial proceedings.

5. The MDL court designated lead counsel for both sides and bifurcated the proceedings into liability and damages phases with simultaneous class certification and merits discovery. Three firms were appointed as co-lead counsel for the Plaintiffs, including Leonard Carder LLP. *In re FedEx Ground Package System Inc. Employment Practices Litigation*, United States District Court for the Northern District of Indiana, Case No. 3:05-MD-527 RM (MDL 1700) at Doc. 52 ("MDL Docket") .

6. Between 2005 and 2007, the parties engaged in extensive written, document, deposition, and expert discovery. On or about March 13, 2007, after the close of class certification and merits discovery, Plaintiffs moved for class certification. The MDL court certified Plaintiffs' claims for unreimbursed employment expenses, illegal wage deductions, unlawful coercion, waiting time and PAGA penalties, along with their derivative UCL claims, and an overtime subclass under Section 1194. It adopted the following general class definition:

> All persons who: 1) entered into an [sic] FedEx Ground or FedEx Home Delivery Form Operating Agreement (now known as OP-149 and Form OP-149-RES); 2) drove a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) from November 17, 2000 through October 15, 2007 to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of California.

(MDL Docket, Doc. No. 1119). The overtime subclass – including class members, who drove delivery vehicles with a Gross Vehicle Weight Rating of less than 10,001 pounds, was similarly defined:

> All persons who: 1) entered into an [sic] FedEx Ground or FedEx Home Delivery Form Operating Agreement (now known as OP-149 and Form OP-149-RES); 2) drove a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) from November 17, 2000 through October 15, 2007 to provide package pick-up and delivery services pursuant to the Operating Agreement; (3) were dispatched out of a terminal in the state of California, and (4) at any time during the class period operated a vehicle with a gross vehicle weight rating of less than 10,001 pounds.

*Id*. The MDL denied Plaintiffs' motion to certify the claims asserted under the Family Medical Leave Act on a nationwide basis. Plaintiffs did not seek to certify several of the other claims asserted in the complaint including a statutory meal and rest break claim and a common law fraud claim.

7. In May 2008, class notice was sent to the approximately 2,300 *Alexander* Class Members identified by FXG, followed by a Supplemental and Second Supplemental Class Notice sent in September 21, 2009. About 20 persons opted out of the *Alexander* class. The lists of persons who were notified of the lawsuit and did not opt out ("Class Members") are attached at **Exhibits A1** to the Settlement Agreement. Attached as **Exhibit A2** to the Settlement Agreement is a list of the 20 persons who chose to opt out of the class.

8. Between April and June 2008, the parties filed cross-motions for summary judgment/summary adjudication on the issue of the Drivers' employment status. On August 11, 2010, the MDL court entered an order granting FXG's motion for summary judgment in the Kansas case. The MDL court issued the omnibus order on December 10, 2010 addressing the parties' cross motions for summary judgment in all the remaining cases, including *Alexander*. (MDL Docket at Doc. No. 2097). The MDL court granted Defendant's motion for summary judgment as to all of Plaintiffs' claims arising under or predicated upon violations of the California Labor Code based on a finding that the Plaintiffs and Class Members were "independent contractors" under the "right to control" test. *Id.* The MDL Court denied Plaintiffs'

cross-motion for summary adjudication, and issued no ruling with regard to Plaintiffs' FMLA claim. Instead, the MDL initiated proceedings that resulted in a remand of the *Alexander* case to this Court, as the transferor Court, for resolution of the remaining FMLA claims in late 2011.

9. In 2012, the parties settled the FMLA claims and the court entered final judgment in FXG's favor. An amended final judgment was entered by this court on January 29, 2013. (*See* Doc. No. 76).

10. Plaintiffs appealed from the adverse judgment to the Ninth Circuit Court of Appeal. FXG also filed a conditional cross-appeal with respect the MDL court's class certification decision which was denied by the Ninth Circuit. On August 27, 2014, the Ninth Circuit issued its opinion reversing the MDL court's decision and finding the Drivers to be employees as a matter of law under California's right-to-control test. *Alexander v. FedEx Ground Package Systems, Inc.*, 756 F.3d 981 (9th Cir. 2014). The Ninth Circuit remanded *Alexander* to the District Court with instructions to enter summary adjudication for Plaintiffs on the question of employment status. *Id.*

11. Since remand from the Ninth Circuit in October 2014, the parties met and conferred extensively to develop a joint pretrial and discovery plan and re-commenced the litigation. They exchanged voluminous electronic records and documents pertaining to Plaintiffs' class-wide damage claims and various defenses raised by Defendant to liability and began intensive motion practice with respect to critical disputed legal and factual issues. (*See* Doc. Nos. 88 and 94 [Jt. CMC Statements]). On May 21, 2015, Defendant filed three "first round" motions pertaining to its key defenses, including a motion to clarify the class definition intended to vastly reduce the size and scope of the class, a motion to limit plaintiffs' recoverable damages by shortening the length of the damage period, a motion to exclude settlement deductions from plaintiffs' damages directed at the viability of Plaintiffs' claims to recover damages for certain categories of settlement deductions. (*See* Doc. Nos 108 through 113 [motions and supporting papers]). Both before and after these motions were filed, the parties engaged in numerous in-person and telephonic meetings in an effort to narrow the disputed legal and factual issues they present in an effort to move the litigation forward efficiently and expeditiously.

12. In April 2015, the parties began formal settlement discussions to resolve the remaining class and individual claims. In preparation for mediation, FXG provided Plaintiffs with voluminous electronic data from multiple computerized recordkeeping systems to enable Plaintiffs to value the class damage claims. The data spans a fifteen year period and includes but is not limited to scanner and settlement data showing mileage and work hours, settlement payments, deductions, adjustments, route ownership, vehicle records, and dates of service. Plaintiffs engaged a forensic accounting expert to review and analyze the extensive electronic records, as well as voluminous receipts and other records produced by the Named Plaintiffs documenting their damage claims. After many weeks of cooperation between the parties and comprehensive analysis of the complex data produced by Defendant, Plaintiffs' expert generated a detailed and comprehensive damage-exposure model and risk analysis.

13. The parties selected Michael Dickstein, a highly respected and skilled mediator with special expertise in complex employment matters. In advance of the mediation, the parties exchanged comprehensive mediation briefs with each other and the mediator that included their respective analyses of Defendant's pending motions, the strengths and weaknesses of all claims and defenses, and the other potential litigation risks facing both sides.

14. All parties attended two full days of mediation on June 2 and 3, 2015, including four of the seventeen Named Plaintiffs on the first day. Negotiations extended late into the night on June 2nd and, though not originally scheduled, the parties agreed to continue for another full day on June 3rd. The parties entered into a Memorandum of Understanding at the end of the second day, which was the basis for the Settlement agreement presented here for the Court's approval.

15. This Settlement Agreement is the result of thorough and cooperative negotiations by experienced counsel familiar with the applicable law, class action litigation, and the facts of this case. Leading up to mediation, counsel for the parties engaged in a candid dialogue, including multiple telephonic and in-person meetings, regarding the strengths and risks of the Plaintiffs' claims and FXG's pending and potential motions to limit the scope of the class.

**Settlement Value and Terms**

16. FedEx Ground has agreed to create a common settlement fund for the benefit of the certified class in the amount of $227,000,000.00 to resolve fully, finally and completely the certified class claim.[1] I estimate the net amount to be paid to the class members under the terms of the Settlement Agreement (after payment of class counsel fees and expenses, PAGA penalties, Plaintiffs' service awards and individual recoveries, and a $2,000,000.00 reserve fund) will be approximately $166,000,000.00 million dollars with *average* estimated Individual Settlement Payments to class members in the range of $65,000.00 to $85,000.00 with some class members receiving settlement payments in excess of $200,000.00 and some class members receiving settlement payments of a few hundred dollars.

17. All class members will be eligible to receive a weekly settlement each work-week during which it appears, from FedEx Ground records, that they drove one of their FedEx Ground routes on a full-time basis, meaning 35 or more hours. The estimated base weekly settlement payment for class members will be $240.00 for those who drove in the FXG division and $190.00 for those who drove in the FHD division. The lower FedEx Home Delivery base weekly settlement payment reflects the proportionally lower expenses incurred by class members who drove for FHD, who were subject to fewer and smaller wage deductions than Ground drivers and who operated smaller trucks. The base weekly settlement payment for each year will be adjusted using an interest multiplier to account for statutory interest accrued at 10% simple on the unreimbursed expenses provided for in Labor Code Section 2802(b) during the fifteen year claim period. For example, the adjusted base weekly settlement payment for work-weeks in 2005 will be two-times the unadjusted base weekly settlement payment to account for ten years of statutory interest accrued at 10%, while payments for work-weeks in 2015 will be calculated using the base rate settlement payment with no adjustment. In addition, class members will be eligible for

---

[1] The parties were also able to resolve the remaining individual claims of the 17 named plaintiffs for the sum of $1 million dollars, inclusive of attorneys' fees and costs, bringing the total amount of the settlement to $228 million dollars. In addition, Defendant has agreed to pay whatever additional sums may be necessary for payroll and employment taxes that may be due and owing in connection with resolution of the class claims for unpaid wages.

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

tiered flat-rate settlement payments of either $75.00 or $25.00 for workweeks during which they personally drove fewer than 35, or fewer than 25 hours (respectively). Persons who received notice of the class action but who, according to FedEx Ground records, did not appear to drive during the class period will be eligible for flat minimum settlement payments of $250.00.

18. Members of the overtime subclass will receive additional settlement payments from an overtime set-aside fund of a maximum of $16,000,000.00 calculated as a *pro rata* share of the overtime settlement fund based on the number of daily and weekly overtime hours they drove during the class period to resolve claims for unpaid overtime compensation and related statutory interest.

19. The settlement amount falls well within the range of a reasonable recovery for preliminary approval, and fairly takes into account the litigation risks faced by the class in the absence of a settlement in light of the substantial defenses raised by Defendant FedEx Ground discussed in the accompanying Memorandum of Points and Authorities in Support Motion for Plaintiffs' Motion for Preliminary Approval of Class Settlement. These include: (1) whether the full-time requirement for class membership limits the class to persons who drove a FXG route at least 40 hours a week during 48 weeks of every year they worked for FXG, excluding all others, (2) whether the class, as defined, is unascertainable for some or all of the class period and/or whether class wide adjudication of the damage claims is unmanageable, requiring decertification, (3) the length of the time period covered by the Ninth Circuit's employment status finding, (4) whether Class Members who incorporated after the class was certified remain eligible to recover damages, (5) whether Plaintiffs will be permitted to prove their vehicle related expenses using a mileage proxy with expert testimony or instead will be required to prove those losses with receipts and similar records,  (6) whether Plaintiffs' wage deduction claims are limited or extinguished by the federal Truth-in-Leasing regulations, and (7) whether the Court will exercise its discretion to reduce or deny Plaintiffs' claim to recover civil penalties under Labor Code § 203 and §2699 under the facts and circumstances of this case.

20. In its pending Motion to Clarify the Class Definition, FXG has asked the Court to interpret the class definition to persons who, in each year of employment, drove no fewer than 40

7

hours a week, and who took off no more than 20 days in any calendar year (i.e. drove their route 48 out of 52 weeks during each year of employment). (Doc. No. 108). Plaintiffs believe that the class definition – which limits class membership to persons who "drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences)" – is not so restrictive, and includes, at a minimum, persons who regularly drove 35 hours a week (a common understanding of full-time employment) and cannot fairly be interpreted to exclude persons who routinely drove 9 to11 hour a days, four days per week, as contended by Defendant. Yet Plaintiffs acknowledge that if the Court were to agree with FXG and clarify the class definition to adopt Defendant's position, the size of the class would be reduced by close to fifty percent, as would the amount of class-wide damages. If Defendant were to succeed in decertifying the class for the first four years of the class period (November 2000 through December 2004) – the time period during which the Class Members' claims are most heavily concentrated – the class-wide damages could be reduced by between forty and fifty percent.

21. If Defendants' were to succeed on their Motion to Limit Plaintiffs' Recoverable Damages, as it relates to recovery on behalf of incorporated entities, it's liability would terminate as to approximately sixty percent of the class members who, between 2007 and 2010, assigned their FXG OA's to incorporated entities, and its liability to the class as a whole would end entirely in 2011 (when all of the remaining California contractors were required to incorporate as a condition of continuing to perform services for Defendant). The effect on the size of the class and the amount of the class recovery would be highly significant, and could also reduce the class-wide damages by as much as forty percent.

22. If Defendants' were to succeed on their Motion to Exclude Settlement Deductions from Damages, Plaintiffs' recoverable damages, as well as their entitlement to related civil penalties under PAGA, could also be limited by as much as forty percent.

23. Plaintiffs have also acknowledged the possibility that they may lose their claim for waiting time penalties altogether and that the Court may not award them the maximum penalties sought under PAGA predicated on their proven Labor Code violations. As to the waiting time penalty claim, Defendant has argued that, because the MDL court granted summary judgment in

8

DECLARATION OF BETH A. ROSS IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS
SETTLEMENT AND SUPPLEMENTAL CLASS NOTICE                           Case No. 3:05-cv-38 EMC

its FXG's favor in December 2010 in an order that remained in in effect until August 2014, Plaintiffs cannot establish the requisite "willfulness" to obtain waiting time penalties under Labor Code § 203. *See* Cal. Code Regs., tit. 8, § 13520 ("a good faith dispute than any wages are due will preclude imposition of waiting time penalties under Section 203"). With regard to the PAGA claim, Defendant will ask the Court to exercise its discretion to award, at most, a fraction of the PAGA penalties Plaintiffs seek because, in their full measure, the PAGA penalties would be astronomical and therefore "unjust, arbitrary and oppressive, or confiscatory." Cal. Lab. Code § 2699. Here, too, Plaintiffs have weighed the risk that these arguments could be adopted by the Court in whole or in part in assessing the settlement value of the class claims. While it is highly unlikely that Plaintiffs would recover nothing under PAGA, whether the Court would exercise its discretion to award them the maximum amount of the statutory penalty they seek – approaching $75 million dollars – is entirely uncertain.

24. Plaintiffs must also account for the possibility that they may be required to prove class-wide damages for unreimbursed employment expenses, as in *Estrada v. FedEx Ground Package System, Inc.*, 154 Cal.App.4th 1 (2007). It took more than a year to gather and analyze this kind of evidence from the 207 class members during the *Estrada* accounting and, as in this case, a large number of the class members had stopped working for FXG years earlier and were not able to locate and produce the required records. Were the Court to insist on receipts-based proof of Plaintiffs' expenses, as in *Estrada*, the time and expense of marshalling and analyzing receipts for over 2,000 class members would be very significant, while likely reducing Plaintiffs' expense reimbursement recoveries to a fraction of their losses.

25. The reasonableness of the Proposed Settlement is evidenced by the excellent monetary recovery which is the basis of the settlement and the fact that FXG has raised numerous and substantial legal and factual grounds to defend this action on the merits and to challenge the case's class action status. Absent a settlement, litigation of these issues would require several additional years and, if successful, as discussed above, could result in a reduction of the overall recover to the class by far more than fifty percent. If Defendants succeeded on multiple defenses,

Plaintiffs' potential recovery could be reduced to less than twenty-five percent of the full value of the class claims.

26. In addition, the settlement is non-reversionary; the entirety of the $227 million dollar settlement fund will be distributed to the class in *pro rata* shares depending on the number of class members who submit valid claims. Thus, if fewer than 100% of the eligible class members submit valid claims – which is common in class action cases despite the best efforts of class counsel to locate and provide notice to all members of the class – each Class Member's recovery could be in the range of sixty-five to seventy-five percent of the full value of their damage claims. This Settlement avoids the substantial uncertainty of continued litigation and ensures that Class Members receive substantial consideration now, instead of speculative payments in the future.

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169 FAX: (510) 272-0174

**Settlement Administrator's Qualifications**

27. Plaintiffs' counsel received three bids for administering the settlement, including distributing notice and related documents to the class by mail and on the internet, calculating settlement share payments, depositing and administering the settlement funds, creating a Qualified Settlement Fund per Internal Revenue Code § 468B and Treasury Regulation § 1.468B-1 for the purpose of processing claims resolving disputes (if any) and distributing the settlement share payments and other payments from the settlement fund, and making the necessary tax filings. We have elected to use Rust Consulting ("Rust") as the Settlement Administrator, as it offered a competitive bid and Plaintiffs' Counsel have had positive experiences using Rust Consulting in past class and collective action settlements. A description of Rust's services, expertise, and compensation is attached to the Settlement Agreement at **Exhibit H.**

28. Subject to Court approval, the parties will notify Class Members of the Settlement by sending the notice attached to the Settlement Agreement as **Exhibit D** by first-class United States mail to each Class Member at his or her last known address as shown in FedEx Ground's business records. Also, the parties will mail to each Class Member the Claim Form attached as to the Settlement Agreement as **Exhibit C** and an Internal Revenue Service Form W-9.

29. Once the Settlement Administrator has determined which Class Members have made valid claims pursuant to the guidelines approved by the Court ("Claimants"), Class Counsel will make and submit to the Settlement Administrator and FXG final payment calculations for each Claimant. All Claimants who submit valid claims to the Claims Administrator by the claim filing deadline will be eligible to recover their *pro rata* share of the settlement fund and the overtime settlement fund using the methodology described in paragraphs 17 and 18 above.

### Leonard Carder Attorneys' Background

30. I received a J.D. from the Boalt Hall School of Law at the University of California at Berkeley in 1988. I received a B.A. Letters from Wesleyan University in Middletown, Connecticut in 1983. I clerked for the Honorable Lawrence K. Karlton, United States District Judge, Eastern District of California, between 1988 and 1990.

31. I have litigated employment law cases, including numerous class action lawsuits during the approximately 25 years I have been an attorney at Leonard Carder LLP, first as an associate attorney (1990 through 1995) and later as a partner (1995 to the present). I am a Fellow of the College of Labor and Employment Lawyers and I have been selected to the Northern California Super Lawyers list in the area of Plaintiffs' side employment litigation in every year since 2008. In 2014 and 2015, I was named one of Northern California's Top Women Attorneys. I have been a member of the Board of Directors of the AFL-CIO Lawyers' Coordinating Committee and have served as an Associate Chapter Editor of the ABA's Employment Discrimination Law Treatise. I am a frequent guest lecturer on wage and hour law and employment class action litigation at local law schools and numerous conferences, including programs put on by the Labor and Employment Sections of the ABA, the California State Bar, the San Francisco Bar Association, the LCC of the AFL-CIO, the Pacific Coast Labor and Employment Conference, and the California Employment Lawyers Association.

32. Leonard Carder LLP was founded nearly seventy (70) years ago and specializes in labor and employment law. The firm – which now includes approximately 25 attorneys – represents clients throughout the State of California and elsewhere in the United States, including employees in employment law class and representative actions and single and multi-plaintiff

11

cases and labor unions and associated trust funds.  Over the last 25 years, the firm has served as certified class counsel in many wage and hour class action matters.  I have personally served as co-lead trial and certified class counsel in previous and related cases challenging the lawfulness of FedEx Ground's independent contractor classification of its drivers, including *Estrada v. FedEx Ground Packages Systems, Inc.,* Los Angeles Superior Court Case No. BC210130 (alleging independent contractor misclassification, reimbursement claims under Labor Code § 2802, and UCL claims; resulting in $27 million dollar class judgment paid to 207 California class members) and *In re Fedex Ground Package Systems Employment Practices Litigation,* U.S. District Court Northern District of Indiana, Case No. 05-MDL-1700 (MDL nationwide class action challenging independent contractor misclassification).  I have served as the certified class counsel in *Vickery v., Cinema Seven, Inc.*, San Francisco Superior Court Case No. CGC 94 959610 (1994-1998), a landmark action establishing the employment status of approximately 700 exotic dancers employed by the world-famous Mitchell Brother's O'Farrell Theatre in San Francisco, California, in addition to successfully challenging independent contractor misclassification in a variety of other cases, including most recently *Aguilar et. al. v Carey Limousine Inc.,* LA Superior Court Case No. BC411455 (JAMS Case No. 1100059356) (establishing employment status of limousine drivers misclassified as independent contractors and obtaining multi-million dollar damage award for plaintiff drivers); *Ardon et. al. v. 3PD, Inc.*, Cal. Case No. ED CV 13-01758 ODW (DTBx) (challenge to IC misclassification of 200+ appliance delivery and installation drivers resulting in multimillion dollar settlement of individual and PAGA claims for PAGA class).

33.     In my professional opinion, based on my experience as an employment and wage and hour litigator, and in particular my experience litigating a number of other cases based on alleged misclassification of independent contractors, and based on my own independent investigation and evaluation and consultation with Plaintiffs, my law partners and colleagues, that the proposed settlement fairly addresses all of the allegations of the violations of the Labor Code by Defendant and provides adequate monetary relief to Plaintiffs and the Class Members.  I have assessed the risks and inherent delays if we were to continue with the litigation and believe the

settlement is fair, reasonable and adequate in light of all known facts and circumstances, including the risk of significant delay, defenses asserted by Defendants, and uncertainties regarding the continued viability of the class certification, liability and the amount of damages that might be recovered.

### **Additional Persons Meeting the Class Definition**

34. In the course of collecting and exchanging data for purposes of mediation, Defendants identified seventy-eight (78) additional persons meeting the class definitions who were mistakenly omitted from the original class list.

35. Subject to Court approval, the parties will notify these additional Class Members of the Class Settlement, as well as providing them the opportunity to opt-out pursuant to Federal Rule of Civil Procedure 23, by sending the Supplemental Class and Settlement Notice attached to the Settlement Agreement as **Exhibit E** by first-class United States mail to each of the approximately 78 Un-notified Class and Sub-Class Members at his or her last known address as shown in FedEx Ground's business records.  Also, the parties will mail to each of the additional Class Members the Claim Form attached as hereto as **Exhibit C** and an Internal Revenue Service Form W-9.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed this 2nd day of July, 2015 at Oakland, California.

           /s/ Beth A. Ross
           Beth A. Ross