UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DEAN ALEXANDER, *et al.*,

        Plaintiffs,

    v.

FEDEX GROUND PACKAGE SYSTEM, INC.,

        Defendant.
_____/

No. C-05-0038 EMC

**ORDER RE SUPPLEMENTAL BRIEFING RE PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL**

**(Docket No. 119)**

The Court has conducted an initial review of Plaintiffs' motion for preliminary approval. Having considered the papers, the Court hereby orders that the parties file a joint supplemental brief to address the issues identified below. The supplemental brief, including any or all supporting evidence, shall be filed within **one week** of the date of this order.

1.     Class Definition

Under the settlement agreement, there is a settlement class and a settlement subclass (for the overtime claim specifically). The class and subclass are defined similarly. The class is defined as follows:

> All persons who: 1) entered into an [sic] FedEx Ground or FedEx Home Delivery Form Operating Agreement (now known as OP-149 and Form OP-149-RES); 2) drove a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) from November 17, 2000 through October 15, 2007 to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the state of California.

Sett. Agreement ¶ I.B. "Persons" include both individuals and business entities. *See* Sett. Agreement ¶ I.B. Moreover, "persons" include "business entities (of whatever type) which entered into, or assumed an assignment of, an FXG Operating Agreement on or after October 15, 2007 where the authorized officer or owner of the business entity was a Class Member." Sett. Agreement ¶ I.B.

The class definition under the settlement agreement appears to be somewhat different from the class that was certified by the Indiana district judge. In particular, the class certified by the Indiana district judge uses the time frame "since November 17, 2000 [or 2001]" while the class definition under the settlement agreement uses the time frame "from November 17, 2000 through October 15, 2007." The parties shall address this difference.

The parties shall also explain the provision in the settlement agreement that "persons" in the class include "business entities (of whatever type) which entered into, or assumed an assignment of, an FXG Operating Agreement *on or after* October 15, 2007 where the authorized officer or owner of the business entity was a Class Member." Sett. Agreement ¶ I.B (emphasis added).

Finally, the parties shall explain why the class notices seem to define the class differently from the above. For example, the settlement notice provides as follows:

> You received this notice because [FXG's] records show that (1) you signed FedEx Ground Pickup and Delivery Contractor Operating Agreement to provide service in California sometime during the period between November 17, 2000 and October 15, 2007 and that you may have personally worked as a full-time driver under that contract between November 17, 2000 and the present . . . .

Ross Decl., Ex. D (Settlement Notice, Question 1).

2. <u>Class Period</u>

The settlement agreement class definition suggests a class period between November 17, 2000, and October 15, 2007. But in their motion, Plaintiffs state that the class period is from November 17, 2000, through the date of the preliminary approval. *See* Mot. at 1 n.1. Even if the class period were the latter, and not the former, FXG appears to have provided information for the period November 17, 2000, through April 15, 2015, only. *See, e.g.*, Mot. at 14; Ross Decl., Ex. C

2

1  (claimant identification form).  The parties shall clarify the class period, including how the class
2  period works in conjunction with the class definition.

3  3.      Maximum Value of Case

4       As Plaintiffs note in their motion, "[i]n deciding whether the proposed settlement is adequate
5  and falls within the range of possible approval, 'courts primarily consider plaintiffs' expected
6  recovery balanced against the value of the settlement offer,' taking into account the risks of
7  continuing litigation."  Mot. at 8 (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 10778,
8  1080 (N.D. Cal. 2007) (Walker, J.)).  However, based on Plaintiffs' motion, it is not clear what the
9  maximum value of their case is, or what they anticipate it would be, if they were to prevail at trial.
10 Plaintiffs shall identify what the maximum value of their case is, and how they reached that
11 calculation (*e.g.*, per claim).

12 4.      Allocation of Settlement Fund

13      Based on Plaintiffs' motion, it appears that the following amounts will *not* be distributed to
14 the class:

- Attorney's fees and costs, capped at 25% of the $227 million settlement[1], *see* Sett. Agreement ¶ VII.A;
- Settlement administration fees, which appear to be approximately $30,000, *see* Ross Decl., Ex. H (settlement administration estimate);
- Incentive awards totaling $170,000 (*i.e.*, $10,000 for each of the seventeen named Plaintiffs), *see* Sett. Agreement ¶ VII.B;
- PAGA penalties to the state of California, totaling $1.2 million, *see* Sett. Agreement ¶ III.A;
- Settlement of the named Plaintiffs' individual claims, for a total of $1 million. *See* Mot. at 1 n.1; and
- A "reserve fund" of $2 million. *See* Mot. at 2.

---

[1] Although FXG will actually be paying out a total of $228 million, the Court understands that Plaintiffs will ask for fees and costs based on $227 million only because the remaining $1 million is being allocated to settlement of the named Plaintiffs' individual claims.

3

For the remaining $166.6 million to be distributed to the class, it appears that $16 million has been set aside for the overtime subclass. *See* Ross Decl. ¶ 18; *see also* Sett. Agreement ¶ III.A. Any of the $166.6 million that is not ultimately claimed by the class will go to a cy pres beneficiary. *See* Sett. Agreement ¶ III.D.

If any of the above is incorrect, the parties shall address that in supplemental briefing. Assuming the above, the Court has the following questions/comments about the above allocation.

    a.    <u>Incentive awards</u>.  Plaintiffs state that they will provide supporting declarations for the incentive awards at the time of final approval. *See* Mot. at 17. But for the Court to do a fair evaluation of the proposed settlement, that information must be provided now.

    b.    <u>Individual claims of the named Plaintiffs</u>.  Plaintiffs have not explained why $1 million has been set aside for the benefit of the named Plaintiffs, beyond the incentive awards. Plaintiffs shall address what claims the named Plaintiffs have beyond those at issue in this litigation and the value of those claims.  This can best be addressed in the supporting declarations that the Court is requiring for the incentive awards.

    c.    <u>Reserve fund</u>.  Plaintiffs shall explain what the reserve fund is, the rationale for it, and whether that fund will eventually be distributed to the class.

    d.    <u>Overtime subclass</u>.  Plaintiffs shall explain how they determined that $16 million should be set aside for the overtime subclass.

    e.    <u>Cy pres beneficiary</u>.  The parties shall identify who the cy pres beneficiary is and how the beneficiary is related to the subject matter of the lawsuit and the class members, including their location. *See, e.g.*, *Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012); *Nachsin v. AOL, LLC*, 663 F.3d 1064 (9th Cir. 2011).

5.    <u>Release Language</u>

The settlement agreement defines "Released Claims" as all claims:

(i)    that are owned by Plaintiffs or the class members; *and*

(ii)    that "arise under any statutory or common law claims which was asserted, or could be asserted in Plaintiffs' operative complaint *or* are related to, or arise from, the employment

4

classification of the Class or Subclass including but not limited to claims under[, *e.g.*, various California statutes]"; *and*

(iii) that "pertain to any time period prior to the entry of the Preliminary Approval Order by the Court."

Sett. Agreement ¶ I.R. The Court has concerns over the language used in (ii) above, in particular the phrase that precedes the word "or." That language could be interpreted quite broadly. The parties shall address whether they can agree on different language for the release so that it will not be misconstrued.

6. <u>Claim Form</u>

The claim form, *see* Ross Decl., Ex. C (claim form), contains a sworn certification to be signed by a claimant. The certification refers to the November 17, 2000-October 15, 2007 time period but does not reflect that the class definition can apparently go beyond October 15, 2007.

7. <u>Settlement Notice</u>

a. <u>Page 1</u>. The first bolded paragraph refers to the November 17, 2000-October 15, 2007 time period but does not reflect that the class definition can apparently go beyond October 15, 2007.

b. <u>Page 1</u>. The parties shall include as part of the first bolded paragraph a statement that the average estimated payment for an individual class member falls within the range of $65,000 to $85,000. *See* Ross Decl. ¶ 16.

c. <u>Page 1</u>. The chart shall clarify that, where a class member decides to object, he or she *must* still submit a claim in order to protect the right to payment.

d. <u>Page 1</u>. The chart is confusing by having the option "GO TO A HEARING" separate from the "OBJECT" option.

e. <u>Page 5</u>. In Question 13, there shall be a reminder that, if a class member decides to object, he or she *must* still submit a claim in order to protect the right to payment.

///

///

///

8. <u>Supplemental Class and Settlement Notice</u>

The comments in Paragraph 7, above, are equally applicable here.

IT IS SO ORDERED.

Dated: July 10, 2015

_____
EDWARD M. CHEN
United States District Judge