BETH A. ROSS (SBN 141337)
bross@leonardcarder.com
AARON D. KAUFMANN (SBN 148580)
akaufmann@leonardcarder.com
DAVID P. POGREL (SBN 203787)
dpogrel@leonardcarder.com
ELIZABETH R. GROPMAN (SBN 294156)
egropman@leonardcarder.com
LEONARD CARDER, LLP
1330 Broadway, Suite 1450
Oakland, California 94612
Tel: (510) 272-0169
Fax: (510) 272-0174

*Attorneys for Plaintiffs and the Class*

CAROLYN KUBOTA (SBN 113660)
ckubota@omm.com
SCOTT VOELZ (SBN 181415)
svoelz@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California 90071
Tel:  (213) 430-6000
Fax:  (213) 430-6407

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEAN ALEXANDER, *et. al.*, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FEDEX GROUND PACKAGE SYSTEM, INC. et. al.,<br><br>Defendant. | Case No: *3:05-cv-38 EMC*<br><br>**JOINT SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND SUPPLEMENTAL CLASS NOTICE** |

JOINT SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND SUPPLEMENTAL CLASS NOTICE

Case No. *3:05-cv-38 EMC*

## TABLE OF CONTENTS

I. SUPPLEMENTAL BRIEFING ................................................................................................ 1

   1. Class Definition and Class Period ........................................................................... 1

   2. Maximum Value of the Case .................................................................................... 4

   3. Allocation of Settlement Fund ................................................................................. 6

II. REVISED SETTLEMENT AGREEMENT, CLAIM FORM, AND NOTICES ................... 11

   1. Settlement Agreement ............................................................................................ 11

   2. Claim Form ........................................................................................................... 12

   3. Settlement Notice and Supplemental Class and Settlement Notice ...................... 12

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

- i –

JOINT SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND SUPPLEMENTAL CLASS NOTICE
   Case No. *3:05-cv-38 EMC*

# TABLE OF AUTHORITIES

**Federal Cases**

*Alexander v. FedEx Ground Package Sys., Inc.*,
  756 F.3d 981 (2014) .................................................................................................. 1

*Brown v. Federal Express Corp.*,
  249 F.R.D. 580 (C.D. Cal. 2008) ............................................................................. 11

*In re Mercury Interactive Corp. Sec. Litig.*,
  618 F.3d 988 (9th Cir. 2010) ..................................................................................... 6

*Kenny v. Supercuts, Inc.*,
  No. C 06-07521 CRB, 2008 WL 2265194 (N.D. Cal. June 2, 2008) ..................... 11

*Ruiz v. Affinity Logistics Corp.*,
  754 F.3d 1093 (9th Cir. 2014) ................................................................................... 4

*Salazar v. Avis Budget Group, Inc.*,
  251 F.R.D. 529 (S.D. Cal. 2008) .............................................................................. 11

*White v. Starbucks Corp.*,
  497 F. Supp. 2d 1080 (N.D. Cal. 2007) ................................................................... 11

**State Cases**

*Brinker Restaurant Corp. v. Super. Ct. (Hohnbaum)*,
  53 Cal. 4th 1004 (2012) .......................................................................................... 11

*Brinker v. Superior Court*,
  80 Cal.Rptr.3d 781 (2008) ...................................................................................... 11

- ii –

JOINT SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF MOTION FOR        Case No. *3:05-cv-38 EMC*
PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND SUPPLEMENTAL CLASS NOTICE

Plaintiffs Dean Alexander, Peter Allen, Albert Anaya, Suzanne Andrade, Jarrett Henderson, Ely Ines, Jorge Isla, Paul Infantino, Eric Jeppson, Gupertino Magana, Bernard Mendoza, Jesse Padilla, Joey Rodriguez, Dale Rose, Allen Rose, Agostino Scalercio, and Anthony Ybarra ("Plaintiffs"), jointly with Defendant FedEx Ground Package System, Inc. ("FXG" or Defendant"), hereby submit this supplemental brief in further support of Plaintiffs' Motion for Preliminary Approval of Class Settlement and Supplemental Class Notice. ECF Doc. Nos. 119, 120. This brief is filed in response to the Court's July 10, 2015 Order re: Supplemental Briefing re Plaintiffs' Motion for Preliminary Approval. ECF Doc. No. 122.

I.  **SUPPLEMENTAL BRIEFING**

Pursuant to the Court's Order of July 10, 2015, Doc. No. 122, the parties supplement Plaintiffs' preliminary approval motion as follows:

**1.     Class Definition and Class Period**

There are two time periods that determine the applicability and scope of the Settlement in this case: (1) the **class membership period** (November 17, 2000 to October 15, 2007), which determines whether a Driver is a member of the certified class, and (2) the **recovery period** (November 17, 2000 to Preliminary Approval), which is the time period for which damages are potentially recoverable for eligible Class Members and determines the monetary amount of each Class Member's settlement payment.

a.     Class Membership Period: November 17, 2000 to October 15, 2007. The class membership period in this case is defined to include persons who entered into an Operating Agreement ("OA") between November 17, 2000, and October 15, 2007. The class definition contained in the Settlement Agreement is identical to the definition certified by the MDL Court. *See* MDL Doc. Nos. 906, 1119. Accordingly, class membership in *Alexander* has been defined to include Drivers in California who entered into an OA and drove full-time for FXG on or before that date. *See, e.g.*, *Alexander v. FedEx Ground Package Sys., Inc.*, 756 F.3d 981, 984 (2014) ("Named plaintiffs represent a class comprising approximately 2300 individuals who were full-time delivery drivers for FedEx in California between 2000 and 2007."). Put differently, the class definition excludes drivers who first entered into an OA with FXG or FHD at any time *after*

1  October 15, 2007.

2          b.    <u>Recovery Period: November 17, 2000 to Preliminary Approval</u>.  By

3  contrast, the recovery period for each eligible Class Member extends from the beginning of the

4  class membership period, November 17, 2000, through the date of preliminary approval.

5  Declaration of Beth Ross in Further Support of Plaintiffs' Motion for Preliminary Approval of

6  Class Settlement and Supplemental Class Notice ("Ross Decl."), ¶ 2 , Exh. 1 (Settlement

7  Agreement).  Plaintiffs allege in the litigation that FXG's liability to the Class Members

8  continued after the class membership period closed, and damages continued to accrue, because

9  FXG continued to operate under a substantially similar business model after the class was

10  certified; FXG denies these allegations.  In settlement of this dispute, the parties agreed that the

11  period of time for which each Class Member is eligible to recover does not cut off at the same

12  time as the class membership period, but rather extends through the present.  Thus, if a Driver

13  meets the class membership definition above and continued to drive after October 15, 2007, s/he

14  will be entitled to a weekly payment for each eligible week through the date of preliminary

15  approval.  In exchange, Class Members will release related claims that pertain to any time prior to

16  the entry of preliminary approval.  Ross Decl., ¶ 2, Exh. 1, ¶ I.R.

17      The amount of each Class Member's settlement payment will be derived from settlement

18  and scanner data provided by FXG.  *See* Dkt. No. 119, pp. 14-15 & n. 8.  The Court correctly

19  observes that FXG provided class data and information through April 15, 2015.  Dkt. No. 122, ¶

20  2.  FXG commenced producing extensive and complicated settlement and scanner data in this

21  time frame (i.e. April-May 2015) to provide Plaintiffs with adequate time to analyze it and

22  prepare a comprehensive damage analysis in advance of the June 2, 2015 mediation.  Ross Decl.,

23  ¶ 7.  Because the agreed-upon release extends through the data of preliminary approval, the

24  parties have agreed that those Class Members who were still under contract with FXG as of April

25  15, 2015 will be credited with and receive settlement payments for additional work-weeks

26  through the date of preliminary approval in proportion to the number of weeks they drove during

27  the preceding four month period.  Ross Decl., ¶ 7.  This will fairly compensate the relatively

28  small number of Class Members who have continued to personally drive their routes through the

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL.(510) 272-0169  FAX: (510) 272-0174

present without creating the unnecessary burden and cost on the parties of formally supplementing and processing the complex settlement and scanner data produced prior to the mediation. The parties have revised the proposed claim form, attached hereto as **Exhibit 3**, to make clear that the Class Members' estimated recovery extends through the date of preliminary approval and is derived from data provided by FXG. Ross Decl. ¶ 57, Exhs. 3, 3a.

The explanation included in the Settlement Notice is intended to reflect the two applicable time periods:

> You received this notice because [FXG's] records show that (1) you signed FedEx Ground Pickup and Delivery Contractor Operating Agreement to provide service in California sometime during the period between November 17, 2000 and October 15, 2007 and that you may have personally worked as a full-time driver under the contract between November 17, 2000 and the present . . . .

Ross Decl. ¶ 3.

      c.    <u>"Persons" to Include Business Entities</u>. Under the terms of the Settlement, Class Members may recover through the date of preliminary approval even if they began to operate as a business entity at some point during that period. Ross Decl. ¶ 2, Exh. 1, ¶ I.B ("persons" include business entities which "entered into, or assumed an assignment of, and FXG Operating Agreement *on or after* October 15, 2007, where the authorized officer or owner of the business entity was a class member").

The provision to include business entities is relevant and necessary in the context of this case because Plaintiffs allege that FXG encouraged and then required drivers who executed their contracts as individuals to incorporate and then assign their contracts to their incorporated business entities between 2008 and 2011 while continuing to perform the same services under the same terms and conditions as before; FXG denies these allegations. In 2008, FXG announced a program that it called the "California Transition," from which point on FXG only contracted with multiple-work-area drivers. Plaintiffs allege that that the Drivers who continued working after the California transition as MWA drivers were strongly encouraged and incentivized to begin operating as business entities. Ross Decl. ¶ 5. Plaintiffs further allege, and FXG agrees, that FXG changed its policy in California in September 2010 and *only* contracted with incorporated

entities from that date forward. Ross Decl. ¶ 6. Thus, Plaintiffs allege that many Class Members created a corporation or other business entity – in which they were the authorized officer and/or owner – and then assigned the OA from the individual to the entity in order to keep their jobs. Ross Decl. ¶ 6.

Prior to mediation, Defendant filed a Motion to Limit Plaintiffs' Recoverable Damages; it its motion FXG argued that liability terminated as to an individual Class Member at the time she assigned her OA to a business entity. Doc. No. 111, at 12-14. The effect of that Motion would have been be to terminate damages to the entire class as of September 2010, or even earlier for some Class Members. Plaintiffs contend that FXG's liability to Class Members did not end when they became business entities because Class Members continued to drive and operate under the same terms as before they assigned their contracts a business entity due to FXG's encouragement or insistence. *See, e.g., Ruiz v. Affinity Logistics Corp.*, 754 F.3d 1093, 1103-1104 (9th Cir. 2014). Again, FXG disputes this point. The Settlement provision to include business entities resolves this dispute and includes in each Class Member's individual recovery period any weeks during which he work on a full-time basis even after assigning his contact to a business entity.

### 2. **Maximum Value of the Case**

Based on the data produced by FXG for purposes of the mediation, Plaintiffs estimated that FXG's maximum potential exposure to the Class to be approximately $544,000,000. Ross Decl. ¶ 8. That valuation assumed that Plaintiffs could prevail on every aspect of their damage claims, including the argument that they should be allowed to prove their vehicle expenses, including vehicle depreciation, using a mileage proxy of 1.6 times the IRS rate (with an estimated value of $377,000,000, inclusive of attorneys' fees and costs) and that Plaintiffs would be awarded the full measure of civil penalties sought under PAGA (approximately $75,000,000). Ross Decl. ¶ 8. This valuation also assumed that Plaintiffs would defeat each of Defendant's continued attacks on the scope and size of the class, enabling Plaintiffs to retain maximum class membership and prove liability for the maximum recovery period. Ross Decl. ¶ 9.

Plaintiffs' maximum liability analysis was reached by applying a number of reasoned assumptions to the voluminous data provided by FXG. To determine class membership,

Plaintiffs' forensic accounting expert identified when Class Members drove "full-time," using average hours worked per week in conjunction with days not worked on a quarterly basis.[1] Ross Decl. ¶ 10. Plaintiffs' expert then calculated expense reimbursement damages for eligible work weeks based on (1) each driver's mileage records multiplied by a mileage proxy that was 1.6 times the IRS rate in effect during each year of the recovery period, (2) actual non-vehicle-related deductions taken from Drivers' settlement checks, as reflected in FXG's data, and (3) an estimate of other expenses – cellular phone expenses and vehicle washes - based on a sample of the Named Plaintiffs' receipts and other records. Ross Decl. ¶ 11. Statutory interest at 10% simple was calculated as of the date each expense was incurred. Plaintiffs' expert also calculated an alternate expense reimbursement damages valuation for eligible workweeks using the true IRS rate in effect during each year of the recovery period. Ross Decl. ¶ 11.[2]

Overtime damages were calculated for overtime-eligible Class Members based on actual hours worked by Class Members who drove overtime-eligible vehicles, as reflected in FXG's scanner date, at an average regular hourly rate of $28.00. Ross Decl. ¶ 11; *see infra*. Statutory interest was also calculated at the rate of 10%. Ross Decl. ¶ 11. PAGA penalties were calculated for each predicate Labor Code violation from the date of the Plaintiffs' LWDA letter through the time of mediation, and the value assigned assumed that the court would award every conceivable penalty with no discretionary reduction. Ross Decl. ¶ 12.

After calculating the maximum valuation of the case, Plaintiffs applied settlement discounts by evaluating the likelihood of success or failure on each of the assumptions used to calculate the maximum liability number. *See* Doc. No. 119, pp. 9-13 (discussing some of the applicable risk factors). The proposed Settlement provides a recovery for Class Members of approximately 41% of the maximum value of their individual expense reimbursement claims

---

[1] In the pre-mediation settlement valuation, Class Members were considered eligible to recover damages as a Class Member for any quarter in which s/he (1) took off no more than 13 work days in a quarter and (2) worked an average of 35 hours per workweek. Ross Decl. ¶ 10. The final Settlement distribution formula provides payments for *any workweek* in which a Class Member personally drove. *See* Doc. No. 119, pp. 14-15.

[2] Plaintiffs' expert calculated the maximum value of the case to be approximately $433,000,000 with $267,000,000 representing the approximate value of the expense reimbursement claim using the IRS rate as an alternate mileage proxy. Ross Decl. ¶ 8.

- 5 –
JOINT SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND SUPPLEMENTAL CLASS NOTICE
Case No. *3:05-cv-38 EMC*

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL.(510) 272-0169  FAX: (510) 272-0174

calculated using a mileage proxy of 1.6 times the IRS rate and 57% of the maximum value of the claim calculated using the IRS rate as a mileage proxy. Ross Decl. ¶ 13. Because the settlement is non-reversionary, these actual payouts to Class Members be a higher percentage of the full value, depending on the number of valid claims that are ultimately submitted. Plaintiffs' counsel thus concluded that the settlement of $227,000,000.00 is fair and reasonable.

### 3. Allocation of Settlement Fund

The Court's understanding of the allocation of the $228,000,000 Settlement Fund is accurate. Doc. No. 122, p. 3-4. The $227,000,000 Class Settlement Fund will be distributed as follows:

- Approximately $166,850,000 will be distributed directly to the Class;
- Up to 25% in attorneys' fees and costs (a maximum of $56,750,000);
- Settlement administration fees of approximately $30,000;
- Incentive awards totaling $170,000 (*i.e.* $10,000 for each of the Named Plaintiffs);
- PAGA penalties to the State of California totaling $1,200,000;
- A reserve fund of $2,000,000.

The remaining $1,000,000, not apportioned from the Class Settlement Fund, is to resolve the Named Plaintiffs' individual claims meal and rest period violations, discussed *infra.*

a. <u>Incentive awards</u>. The Declaration of Beth Ross, filed concurrently herewith, generally describes the valuable services provided by each of the Named Plaintiffs that will support their request for service awards. Ross Decl. ¶¶ 15-22. The parties respectfully request that Plaintiffs be permitted to submit individual declarations from each of the 17 Named Plaintiffs with Plaintiffs' Motion for Order Approving Award of Class Representative Service Payments, Attorneys Fees and Costs, scheduled to be filed within 20 days of preliminary approval. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994-95 (9th Cir. 2010); Doc. No. 119, p. 16. This is because Plaintiffs' counsel is unable to gather all of 17 declarations with the specific information about the amount of time each Named Plaintiff provided in service to the class in the time period requested by the Court. Ross Decl. ¶ 14.

b. <u>Reserve fund</u>. A Reserve Fund of $2,000,000 will be allocated to cover

settlement payments to eligible Class Members who may have been omitted from the original or supplemental Class Notice. Ross Decl. ¶ 33. In Plaintiffs' counsel's experience there are often issues with a Defendant's data, particularly in cases such as this that span more than a decade during which the Defendant used multiple systems to track and record information about its drivers and package deliveries. Ross Decl. ¶ 34. Both parties recognize the possibility that, despite FXG' best efforts to produce accurate data, the data may be imperfect and some number of other eligible Class Members may be later identified, either from supplemental searches of FXG's many databases or because drivers hear about the settlement and seek compensation. Ross Decl. ¶ 34. On the other hand, FXG has already carefully re-reviewed its records and identified seventy-eight (78) additional persons meeting the class definition who were not on the original class list compiled in 2008 and updated in 2009, thus limiting the number of unidentified class members the parties anticipate coming forward. Ross Decl. ¶ 35. The parties believe the $2,000,000 Reserve Fund is appropriately limited in recognition of the parties' diligence in identifying Class Members, but also adequately sizeable to account for claims from persons meeting the class definition but not previously included on the class list.

Any amount of the Reserve Fund that is not paid to later-identified Class Members will be redistributed to the Class. Ross Decl. ¶ 36.

        c.      <u>Overtime subclass</u>. The rationale for allocating $16,000,000 to the overtime subclass is based on hours reflected in FXG's data for each Class Member who drove an overtime eligible vehicle (*i.e.,* a vehicle with a gross vehicle weight rating under 10,001 lbs). Plaintiffs' expert multiplied these hours by an average regular rate of pay and computed applicable interest; Plaintiffs and counsel then reduced that figure to account for risk in settlement negotiations.

The Plaintiffs first determined, based on identifying information provided by FXG, that approximately 20% of the class drove vehicles with a gross vehicle weight rating of less than 10,001 pounds and thus qualified for the overtime class. Ross Decl. ¶ 38. Plaintiffs' expert then used FXG scanner data to calculate the actual number of overtime hours worked by those class members. Ross Decl. ¶ 38. Plaintiffs multiplied that by an average regular hourly rate of pay,

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

1  which they developed based on a sample of Drivers' actual settlement checks and pursuant to the
2  California Labor Code's formula. Ross Decl. ¶ 38. This calculation valued the overtime claims
3  at approximately $16,000,000, exclusive of statutory interest accrued on those claims. Ross Decl.
4  ¶ 39. The overtime settlement fund represents approximately fifty percent (50%) of full value of
5  the overtime claims with statutory interest included, a discount proportional to the discount
6  applied to the expense reimbursement claims.

7  FXG's motions to limit the meaning of "full-time" and the duration of the recovery period
8  could have also significantly reduced Plaintiffs' recovery of overtime pay. For example, if the
9  Court adopted FXG's proposed definition of "full-time," many Class Members who drove over 8
10 hours in a day or 40 hours in a week, but only 3-4 days per week, would be excluded from the
11 Class. Doc. No. 119, pp. 9-10; Ross Decl. ¶ 41. Likewise, were FXG to succeed in decertifying
12 the class for the first four years of the recovery period, Plaintiffs would lose a substantial portion
13 of overtime claims, which are heavily concentrated in that period and accounted for the bulk of
14 the interest. Doc. No. 119, p. 10; Ross Decl. ¶ 42. In light of those risks, Plaintiffs discounted
15 the overtime claims by fifty percent for purposes of settlement.

16 While the settlement allocates 50% of the overtime recovery to unpaid wages and 50% to
17 accrued interest, the $16,000,000 figure will allow overtime Class Members to recover
18 approximately $14.00 in overtime premiums (based on an average regular hourly rate of pay of
19 $28.00) for each overtime hour they actually worked for which they received straight-time
20 compensation but not overtime premiums. Ross Decl. ¶ 44.

21      d.      *Cy pres* beneficiary. The parties have agreed to designate two *cy pres*
22 beneficiaries as recipients of funds that are not distributed to the class: The Impact Fund and the
23 California Rural Legal Assistance Foundation.

24 The Impact Fund, located in Berkeley, California, provides support for and litigates
25 complex case on social justice issues, often in the area of employment law. Ross Decl. ¶ 46 .
26 The Impact Fund frequently litigates employment law class actions on behalf of vulnerable
27 workers in California, such as *Ellis v. Costco Wholesale Corp.*, *Estrada v. Bashas' Inc.,* and
28 *Moeller v. Taco Bell*; Ross Decl. ¶ 46. In addition, the Impact Fund regularly drafts *amicus* briefs

and letters advocating for the rights of California's low-wage workers and their access to justice, including *Duran v. US Bank National Association*, *Iskanian v. CLS Transportation Los Angeles, LLC*, and *Ayala v. Antelope Valley Press*. Ross Decl. ¶ 46. The Impact Fund's commitment to workers' rights in California, in particular its focus on workers' collective access to justice in the form of class actions, is directly related the independent contractor misclassification claims at issue in this case and the California Drivers who make up the Class.

The California Rural Legal Assistance Foundation ("CLRA Foundation") provides support, education, public policy advocacy, litigation support, and legal assistance to California's rural poor. Ross Decl. ¶ 47. The CLRA Foundation has two targeted projects focused on California's workers: the Labor and Employment Law Project ("LELP") and the Labor and Civil Rights Litigation project. Ross Decl. ¶ 47. The LELP has been instrumental in advancing state legislation aimed at protecting workers from wage theft, discrimination, harassment, and abuse. Ross Decl. ¶ 47. In the Labor and Civil Rights practice group, CLRA Foundation pursues litigation on behalf of workers alleging wage theft, violation of workplace safety standards, and other unfair labor practices. Ross Decl. ¶ 47. The CLRA Foundation has offices in Sacramento and Freso and serves California workers exclusively. Ross Decl. ¶ 47. Like the Impact Fund, CLRA Foundation's employment and labor work is focused on protecting low-wage workers from violations of the Labor Code like those alleged in this case. Accordingly, its work is related to the subject matter of the case and California Class Members.

The parties selected multiple organizations due to the size of the settlement fund in this case, to ensure that any *cy pres* funds do not result in a windfall for any particular entity. The parties agree that these two organizations will share equally in any residual funds. Ross Decl. ¶ 48.

   e. <u>Individual claims of the Named Plaintiffs</u>. The Named Plaintiffs, but not the Class, had individual claims for meal and rest period compensation. This is because Plaintiffs did not seek class certification of the meal and rest period claims due to the legal climate at the time of Plaintiffs' Motion for class certification in 2007-2008. The $1,000,000 settlement, not apportioned from the Class settlement fund, resolves these claims on an individual basis. Ross

Decl. ¶ 49, Exh. 1 ("to be paid to Plaintiffs in satisfaction of their individual meal and rest break claims"); *see also* Doc. No. 119, p. 1, n. 1. The meal and rest claims are the only individual claims remaining in the case.

Plaintiffs did not seek certification of the meal and rest period claims because, at that time, the majority of appellate courts and District Courts had determined that employers only needed to "authorize" meal [and arguably rest] periods, not that they needed to take affirmative steps to provide breaks of ensure that they were taken. *See, e.g., White v. Starbucks Corp.*, 497 F. Supp. 2d 1080, 1089 (N.D. Cal. 2007) (holding that employer only required to "*offer* meal breaks," not "actively [] ensure that workers are taking these breaks") (emphasis in original). This difficult legal standard made it appear very unlikely that Plaintiffs would obtain class certification on their meal and rest period claims. *See Brown v. Federal Express Corp.*, 249 F.R.D. 580 (C.D. Cal. 2008) (denying certification of class meal and rest period claims because standard that employer was "required only to make meal breaks and rest periods available to Plaintiffs" raised individualized issues); *Salazar v. Avis Budget Group, Inc.*, 251 F.R.D. 529 (S.D. Cal. 2008) (same); *Kenny v. Supercuts, Inc.*, No. C 06-07521 CRB, 2008 WL 2265194 (N.D. Cal. June 2, 2008) (same); *Brinker v. Superior Court,* 80 Cal.Rptr.3d 781 (2008), *rev'd and remanded in relevant part* 53 Cal. 4th 1004 (2012). In light of that risk, Plaintiffs' counsel made a strategic decision to *not* move to certify the meal and rest period claims. Ross Decl. ¶ 50. But the 17 Named Plaintiffs retained their individual meal and rest period claims and were continuing to pursue those claims through trial.

In April 2012, the California Supreme Court issued its seminal decision in *Brinker Restaurant Corp. v. Super. Ct. (Hohnbaum),* 53 Cal. 4th 1004 (2012) ("Brinker."). *Brinker* confirmed that an employer must do all of the following to provide lawful meal periods to its employees: "[1] relieve its employees of all duty, [2] relinquished control over the activities and [3] permit them a reasonable opportunity to take an uninterrupted 30-minute break, *and* [4] not impede or discourage them from doing so." *Brinker*, 53 Cal. 4th at 1039 (emphasis added). Given this standard and Plaintiffs allegations that FXG did nothing to fulfill these obligations because of its driver misclassification and resulting lack of any meal or rest period policy,

Plaintiffs believe that have a good likelihood of prevailing on those individual claims, justifying the settlement.

Taking into account a decrease in liability for the risk they may still face, Plaintiffs settled those individual claims in conjunction with the class claims. Plaintiffs' counsel will be paid a percentage of the $1,000,000 as compensation for attorneys' fees and costs separate and apart from the fees and costs to be requested in conjunction with preliminary approval of the class Settlement. Ross Decl. ¶ 51. From the remainder of the $1,000,000, the Named Plaintiffs will each receive a *pro rata* share of the $1,000,000 based on their tenure with FXG. Ross Decl. ¶ 51.

## II. REVISED SETTLEMENT AGREEMENT, CLAIM FORM, AND NOTICES

Plaintiffs' Motion for Preliminary Approval appended the proposed Settlement Agreement for this litigation, signed by counsel for both parties, though the filed version had not yet been executed by the parties themselves. The parties attach here a fully executed Settlement Agreement. Ross Decl. ¶ 2, Exh. 1.

Additionally, the parties submit proposed revisions to the Settlement Agreement, Claim Form, Settlement Notice, and Supplemental Class and Settlement Notice prompted by the Court's Order.

### 1. Settlement Agreement

The parties propose the following changes to the Settlement Agreement based, in large part, on the Court's Order. *See* Ross Decl. ¶ 52, Exhs. 2, 2a. The parties will file a revised, fully-executed Settlement Agreement in the event that the Court approves all or some of the following changes.

a. Release Language. Pursuant to the Court's Order, the parties have agreed to revised language defining "Released Claims" as all claims which:

> (i) are owned or held by Plaintiffs, Class Members, and Sub-Class Members and/or by their affiliated business entities (if any), or any of them, as against Releasees, or any of them; and
> (ii) arise under any statutory or common law claim which was asserted in Plaintiffs' operative complaint or, *whether or not asserted*, are related to, or arise from, the employment classification of the Class or Subclass including but not limited to claims under [*e.g.* various California Statutes] and
> (iii) pertain to any time prior to entry of the Preliminary Approval Order by the Court.

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

Ross Decl. ¶ 53; Exhs. 2, 2a, ¶ I.R (emphasis added).  The parties believe this language better effectuates their intent in drafting the release and will ensure that the clause is not misconstrued.

        b.    <u>Other Changes</u>.  The parties hereby request that the Court approve three other minor changes to the Settlement Agreement.  First, the "Procedures for Settlement Approval" states that, to be valid, Claims Forms must be postmarked within "60 days after entry of the Preliminary Approval Order."  The Settlement Agreement should require that Valid Claims be postmarked 60 days after *mailing of the Settlement Notice and Claim Forms.*  Ross Decl. ¶ 54; Exhs. 2, 2a, ¶ VI.A.5.  Second, the references to "Augustine Scalercio" should be changed to *Agostino* Scalercio.  Ross Decl., ¶ 55; Exhs. 2, 2a , pp. 1, 24.  Third, in the "Required Events" section, the Settlement Agreement should designated *Rust Consulting* as the Settlement Administrator, not "KCC LLC."  Ross Decl. ¶ 56, Exhs. 2, 2a, ¶ II.2.

If the Court approves the revised release language and other changes, the parties will file a revised, fully executed Settlement Agreement.

**2.**    **<u>Claim Form</u>**

The claim form does not reflect a different class definition than the class definition certified by the MDL court.  The claim form asks claimants for a sworn certification that they are eligible for class membership because they executed an OA with FXG between November 17, 2000, and October 15, 2007.  *See* Ross Decl. ¶ 57, Exh. 3.  The Settlement Agreement does not require that each claimant swear to the duration of his or her recovery period.

The parties submit, however, a revised Claim Form clarifying the recovery period, discussed *supra*.  Ross Decl. ¶ 57, Exhs. 3, 3a.

**3.**    **<u>Settlement Notice and Supplemental Class and Settlement Notice</u>**

Pursuant to the Court's order, the parties have updated the Settlement Notice (and Supplemental Class and Settlement Notice) to (1) clarify on pages 1 and 5 that an objecting Class Member must also submit a claim form and (2) combine "OBJECT" and "GO TO HEARING" into a single option.  *See* Ross Decl. ¶ 58, 59, Exhs. 4, 4a, 5, 5a.

The parties would like the opportunity to address the Court regarding the following: "The parties shall include as part of the first bolded paragraph a statement that the average estimated

- 12 –
JOINT SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF MOTION FOR        Case No. *3:05-cv-38 EMC*
PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND SUPPLEMENTAL CLASS NOTICE

payment for an individual class member falls within the range of $65,000 to $85,000." Doc. No. 122, p. 5. The parties respectfully suggest that including the average recovery estimates could be misinterpreted. Class Members will be entitled to a wide range of recoveries that produce these averages, with some recoveries as low as $250.00 (the minimum payment under the terms of the Settlement) and some as high as $250,000.00. Ross Decl. ¶ 60.

    To clarify the applicable time periods and preview the potential recovery, the parties propose the following modified language be bolded at the top of the notice:

**If You Are or Were a FedEx Ground or FedEx Home Delivery Pickup and Delivery Driver in the State of California and Entered Into an Operating Agreement Between November 17, 2000 and October 15, 2007, You Could Be Eligible For a Payment From a Class Action Settlement.**

**If You Are Eligible, You May Receive $190 or $240 for Each Week In Which You Drove Full-Time Between November 17, 2000, and [INSERT PRELIMINARY APPROVAL DATE].**

Ross Decl. ¶ 58, 59, Exhs. 4, 4a, 5, 5a. The parties believe the above language addresses the Court's concerns and accurately summarizes the content of the notice and the substantive terms of the proposed settlement.

Respectfully submitted,

**LEONARD CARDER, LLP**

Dated: July 22, 2015       By:  */s/ Beth A. Ross*
                                         Beth A. Ross
                                         Attorneys for Plaintiffs and Plaintiff Class

**O'MELVENY & MYERS LLP**

Dated: July 22, 2015       By:  */s/ Scott Voelz*
                                         Scott Voelz
                                         Attorneys for Defendant

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174