BETH A. ROSS (SBN 141337)
bross@leonardcarder.com
AARON D. KAUFMANN (SBN 148580)
akaufmann@leonardcarder.com
DAVID P. POGREL (SBN 203787)
dpogrel@leonardcarder.com
ELIZABETH R. GROPMAN (SBN 294156)
egropman@leonardcarder.com
LEONARD CARDER, LLP
1330 Broadway, Suite 1450
Oakland, California 94612
Tel: (510) 272-0169
Fax: (510) 272-0174

*Attorneys for Plaintiffs and the Plaintiff Class*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

DEAN ALEXANDER, *et. al.*, on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

FEDEX GROUND PACKAGE SYSTEM, INC. et. al.,

Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No: 3:05-cv-38 EMC

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND SUPPLEMENTAL CLASS; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Date:     October 15, 2015
Time:     1:30 PM
Dept.:    Courtroom 5

*(left margin, vertical)* LEONARD CARDER, LLP ATTORNEYS 1330 BROADWAY, SUITE 1450 OAKLAND, CA 94612 TEL.(510) 272-0169  FAX.(510) 272-0174

PLS. NOT. OF MOT. & MOT. FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND SUPPLEMENTAL CLASS

Case No. 3:05-cv-38 EMC

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

PLEASE TAKE NOTICE that on October 15, 2015 at 1:30 PM or as soon thereafter as the matter can be heard in Courtroom 5 of the United States District Court located at 450 Golden Gate Ave., 17th Floor, San Francisco, California, before the Honorable Edward Chen, Plaintiffs Dean Alexander, Peter Allen, Albert Anaya, Suzanne Andrade, Jarrett Henderson, Ely Ines, Jorge Isla, Paul Infantino, Eric Jeppson, Gupertino Magana, Bernard Mendoza, Jesse Padilla, Marjorie Pontarolo, Joey Rodriguez, Dale Rose, Allan Rose, Agostino Scalercio, and Anthony Ybarra ("Plaintiffs") will and hereby do move this Court for an Order (1) granting preliminary approval of the proposed Settlement; (2) certifying the proposed Meal and Rest Period Settlement Subclass; (3) approving the form, content, and method of distribution of the Notice of Class Settlement, Supplemental Class and Settlement Notice, and Claim Form; (4) appointing Rust Consulting as Settlement Administrator; and (5) scheduling a hearing regarding final approval of the proposed Settlement, and regarding Class Counsel's request for attorneys' fees and costs and awards of Service Awards to the Named Plaintiffs.  This motion is made on the ground that proposed settlement is the product of arm's length negotiations by the certified class counsel with the assistance of an experience, renowned and neutral mediator.  Its terms are fair and reasonable in light of the risks the Plaintiffs and Class Members face in connection with litigation over establishing liability, proof of damages and class membership, and that the proposed settlement administrator is experienced and qualified to perform the functions necessary to administer all aspects of the settlement.   Defendant does not oppose this motion.

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL. (510) 272-0169  FAX: (510) 272-0174

1    This motion is based on this Notice of Motion and Motion, the accompanying

2  Memorandum of Points and Authorities and exhibits thereto; the Declaration of Beth A. Ross

3  and Exhibits thereto; the Declarations of Dean Alexander, Peter Allen, Albert Anaya, Suzanne

4  Andrade, Jarrett Henderson, Ely Ines, Jorge Isla, Paul Infantino, Eric Jeppson, Gupertino

5  Magana, Bernard Mendoza, Jesse Padilla, Marjorie Pontarolo, Joey Rodriguez, Dale Rose,

6  Allan Rose, Agostino Scalercio, and Anthony Ybarra; the Proposed Order; and all other

7  pleadings and evidence on file in this matter, and any other such evidence, briefing, or

8  argument that may be presented to the court at or before the time of hearing.

9

10   DATED:  September 15, 2015              Respectfully submitted,
                                            **LEONARD CARDER, LLP**

11
                                            By:  _/s/ Beth Ross_____
12                                                  Beth Ross
                                                    Aaron Kaufmann
13                                                  David Pogrel
                                                    Elizabeth Gropman
14

15                                          *Attorneys for Plaintiffs and the Plaintiff Class*

16

17

18

19

20

21

22

23

24

25

26

27

28

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

PLS. NOT. OF MOT. & MOT. FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT,
CERTIFICATION OF SETTLEMENT CLASS, AND SUPPLEMENTAL CLASS

Case No. 3:05-cv-38 EMC

1

2

# TABLE OF CONTENTS

3

4   INTRODUCTION ................................................................................................... 1

5   FACTUAL AND PROCEDURAL BACKGROUND .......................................... 4

6   THE TERMS OF THE PROPOSED SETTLEMENT ......................................... 9

7   ARGUMENT ...................................................................................................... 11

8   I.   THE $226.5 MILLION DOLLAR SETTLEMENT TO RESOLVE
         LITIGATION THAT HAS BEEN PENDING FOR A DECADE IS
9        UNDENIABLY IN THE BEST INTERESTS OF THE CLASS AND
         ENTITLED TO PRELIMINARY APPROVAL ........................................ 11
10
         A.   THE SETTLEMENT IS THE PRODUCT OF INFORMED,
11            NON-COLLUSIVE NEGOTIATIONS ......................................... 12

12       B.   THE SETTLEMENT FALLS WITHIN THE RANGE OF
              POSSIBLE APPROVAL. ............................................................. 12
13
         C.   THE ATTORNEYS' FEES AND COSTS PLAINTIFFS WILL
14            REQUEST ARE REASONABLE ................................................ 25

15       D.   THE PROPOSED SERVICE AWARDS ARE REASONABLE ............. 26

16       E.   THE SETTLEMENT DESIGNATES APPROPRIATE CY PRES
              BENEFICIARIES ........................................................................ 28
17
         F.   CAFA NOTICE OF THE SETTLEMENT IS REQUIRED ...................... 29
18
     II.  THE COURT SHOULD CERTIFY THE PROPOSED MEAL AND
19        REST PERIOD SETTLEMENT SUBCLASS TO FACILITATE THE
          MEAL AND REST PERIOD SETTLEMENT ......................................... 29
20
         A.   STANDARDS GOVERNING APPROVAL OF SETTLEMENT
21            CLASSES .................................................................................... 30

22       B.   THE PROPOSED MEAL AND REST PERIOD SETTLEMENT
              SUBCLASS SATISFIES REQUIREMENTS OF RULE 23(A) ............... 30
23
         C.   THE MEAL AND REST PERIOD SETTLEMENT SUBCLASS
24            MEETS THE REQUIREMENTS OF RULE 23(B)(3) ............................. 32

25

26

27

28

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL. (510) 272-0169  FAX: (510) 272-0174

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOT. FOR PRELIMINARY APPROVAL OF
CLASS SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND SUPPLEMENTAL CLASS
Case No. 3:05-cv-38 EMC

III.    THE PROPOSED NOTICE OF SETTLEMENT AND
        SUPPLEMENTAL NOTICE ARE ADEQUATE .....................................................33

        A.    THE PROPOSED NOTICE AND NOTICE PLAN ARE FAIR
              AND ADEQUATE ....................................................................................33

        B.    THE COURT SHOULD APPROVE SPECIAL NOTICE TO
              RECENTLY IDENTIFIED CLASS MEMBERS.........................................34

IV.     THE COURT SHOULD SET A FINAL APPROVAL HEARING .........................34

CONCLUSION ........................................................................................................................35

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOT. FOR PRELIMINARY APPROVAL OF
CLASS SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND SUPPLEMENTAL CLASS
Case No. 3:05-cv-38 EMC

# TABLE OF AUTHORITIES

## Federal Cases

*Harris v. Vector Mktg. Corp.*, C-08-5198 EMC, 2011 WL 1627973, at *7 (N.D. Cal. Apr. 29, 2011) ........................................................................................................................................ 11

*Villegas v. J.P. Morgan Chase & Co.*, CV 09-00261 SBA EMC, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012)........................................................................................... 12, 18, 33

*Custom Led, LLC v. eBay, Inc.*, 12-CV-00350-JST, 2013 WL 4552789 (N.D. Cal. 2013)........ 32

*Nachsin v. AOL, LLC*, 663 F.3d 1064 (9th Cir. 2011) ............................................................. 28

*Alexander v. FedEx Ground Package Systems, Inc.*, 756 F.3d 981 (9th Cir. 2014) ............... 7, 13

*Chaudry v. City of Los Angeles*,
    751 F.3d 1096 (9th Cir. 2014) ........................................................................................ 26

*Churchill Vill., L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) .......................................................................................... 33

*Dennis v. Kellogg Co.*,
    697 F.3d 858 (9th Cir. 2012) .......................................................................................... 28

*EEOC v. Kovacevich "5" Farms*,
    2007 WL 1174444 (E.D. Cal. Apr. 19, 2007) ................................................................ 30

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ..................................................................................... 31, 32

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir.1998) ..................................................................................Passim

*In re Bluetooth Headset Products Liability Litigation*,
    654 F.3d 935 (9th Cir. 2011) .......................................................................................... 26

In re FedEx Ground Package System Inc. Employment Practices Litig., (No. II,
    381 F. Supp. 2d 1380 (J.P.M.L. 2005) ......................................................................... 5, 6

*In re Mercury Interactive Securities Litigation*,
    618 F.3d 988 (9th Cir. 2010) .......................................................................................... 26

*In re Tableware Antitrust Litig.*,
    484 F.Supp.2d 1078 (N.D. Cal. 2007)........................................................................ 11, 12

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL. (510) 272-0169  FAX: (510) 272-0174

- iii -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOT. FOR PRELIMINARY APPROVAL OF
CLASS SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND SUPPLEMENTAL CLASS
Case No. 3:05-cv-38 EMC

*Mangold v. California Public Utilities Comm'n,*
67 F.3d 1470 (9th Cir. 1995) ................................................................. 26

Mazza v. Am. Honda Motor Co., Inc.,
666 F.3d 581 (9th Cir. 2012) ................................................................. 30

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco,*
688 F.2d 615 (9th Cir. 1982) ........................................................... 11, 12

*Rodriguez v. W. Publ'g Corp.,*
563 F.3d 948 (9th Cir. 2009) ................................................................. 26

*Ruiz v. Affinity Logistics Corp.,*
754 F.3d 1093 (9th Cir. 2014) ............................................................... 15

Satchell v. Fed. Express Corp.,
2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ...................................... 12

*Tijero v. Aaron Brothers, Inc.,*
2013 WL 6700102 (Dec. 19, 2013) ....................................................... 22

*Torrisi v. Tucson Elec. Power Co.,*
8 F.3d 1370 (9th Cir. 1993) ................................................................... 11

*Van Vranken v. Atlantic Richfield Co.,*
901 F. Supp. 294 (N.D. Cal. 1995) ................................................... 26, 27

State Cases
2015 WL 4993290 (9th Cir. 2015) ........................................................ 32

*Brinker Restaurant Corp. v. Superior Court (Hohnbaum,*
53 Cal.4th 1004 (2012) ..................................................................... 6, 7

*Estrada v. FedEx Ground Package System, Inc.,*
154 Cal. App. 4th 1 (2007) ........................................................ 16, 17, 18

*Ketchum v. Moses,*
104 Cal. Rptr., 17 P.3d (2001) .............................................................. 26


**Federal Statutes**
28 U.S.C. §1715(b) ................................................................................. 29
29 U.S.C. §2617(a)(1)(b) .......................................................................... 4

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL. (510) 272-0169  FAX: (510) 272-0174

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOT. FOR PRELIMINARY APPROVAL OF
CLASS SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND SUPPLEMENTAL CLASS
Case No. 3:05-cv-38 EMC

1

## State Statutes

Cal. Lab. Code § 2699.................................................................................................. 18

California Labor Code Sections 226.7, 510 ................................................................ 9

## Federal Rules

Federal Rule of Civil Procedure 23 ..................................................................Passim

## State Regulations

Cal. Code Regs., tit. 8, § 13520 ................................................................................ 17

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL. (510) 272-0169  FAX: (510) 272-0174

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOT. FOR PRELIMINARY APPROVAL OF
CLASS SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND SUPPLEMENTAL CLASS
Case No. 3:05-cv-38 EMC

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

# INTRODUCTION

Plaintiffs Dean Alexander, Peter Allen, Albert Anaya, Suzanne Andrade, Jarrett Henderson, Ely Ines, Paul Infantino, Jorge Isla, Eric Jeppson, Gupertino Magana, Bernard Mendoza, Jesse Padilla, Marjorie Pontarolo, Joey Rodriguez, Dale Rose, Allan Ross, Agostino Scalercio, and Anthony Ybarra ("Plaintiffs"), seek preliminary approval of a class action settlement on behalf of themselves along with a certified class of approximately 2,016 current and former pick-up and delivery drivers (collectively "Drivers" or "Class Members") who worked for FedEx Ground Package System, Inc. between November 17, 2000 and August 31, 2015[1] to resolve wage and hour claims arising from Defendant FedEx Ground's classification of them as independent contractors.  In addition, Plaintiffs seek certification of a settlement subclass comprised of class members who have driven their contracted routes for Defendant FedEx Ground since August 1, 2011 in order to resolve potential claims for unpaid meal and rest period claims that were not previously certified for class adjudication (the "Meal and Rest Period Settlement Subclass").

In their Third Amended Complaint, Plaintiffs alleged – and the Ninth Circuit agreed – that Drivers were misclassified as independent contractors, while working as both *de facto* and *de jure* employees.  Plaintiffs sought to recover damages for all class members for unreimbursed employment expenses, illegal wage deductions, statutory civil penalties, restitution, declaratory and injunctive relief under California's Unfair Competition Law, compensation for unpaid overtime on behalf of a certified subclass consisting of Drivers who operated delivery vehicles weighing less than 10,001 pounds, and related statutory interest and attorneys' fees and costs.  The Third Amended Complaint also asserted claims for missed meal and rest periods which, along with several others claims, were not certified for class-wide adjudication by the MDL court.

---

[1] The time period covered by the general and overtime class settlement and release is November 17, 2000 through August 31, 2015.  The time period covered by meal and rest period settlement and release is August 1, 2011 through August 31, 2015.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOT. FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND SUPPLEMENTAL CLASS

In their Fourth Amended Complaint, Plaintiffs re-allege the class claims that were previously certified for class adjudication, as well as additional class claims for alleged violations of Labor Code Section 226.7 on behalf of *Alexander* class members who have continued to drive one or more of their contracted routes during the last four years (since August 1, 2011).

The main terms of the settlement are as follows:[2]

- Defendant will pay the sum of $226,500,000 to resolve the class claims asserted in Plaintiffs' Fourth Amended Complaint, inclusive of payments to the class, attorneys' fees, litigation and Settlement Administration costs, service awards to class representatives, and payments to the California Labor and Workforce Development Agency pursuant to PAGA to resolve all disputes, but exclusive of an amount necessary to pay any payroll taxes associated with portions of the settlement attributable to the class-based wage and hour claims (Maximum Class Settlement Amount or "MCSA");

- Defendant stipulated to the filing of a Fourth Amended Complaint and certification of a settlement subclass pursuant to Federal Rule of Civil Procedure 23 comprised of *Alexander* class members who have continued to contract with Defendant and personally drive a FedEx Ground route during the period on and after August 1, 2011 for purposes of resolving on a class-wide basis alleged claims for missed meal and rest periods during this period;

- Plaintiffs and Class Members will release the claims that were asserted or that could have been asserted in this lawsuit based on the facts alleged in the Fourth Amended Complaint, excluding claims premised on missed meal and rest periods that may have arisen, if any, prior to August 1, 2011, which claims have not been and are not asserted in this case on a class-wide basis and are not released by the class-wide settlement;

- The Net Settlement Fund – consisting of the remainder of the MCSA after payment of Class Counsel's attorneys' fees, litigation costs, settlement administration costs, Class Representative Service Awards, a $2,000,000 Reserve Fund, and payment to the State in the amount of $1,200,000 for Private Attorneys' General Act penalties – will be distributed to the class;

- Class Members will be required to submit claim forms and W-9 forms, but no further documentation, to receive their Individual Settlement Payments;

---

[2] The Class Action Settlement Agreement ("Settlement Agreement"), including all Exhibits, is attached as **Exhibit 1** to the Declaration of Beth A. Ross in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, Certification of Settlement Subclass, and Supplemental Class Notice ("Ross Decl.") filed herewith.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOT. FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND SUPPLEMENTAL CLASS

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL. (510) 272-0169  FAX (510) 272-0174

- Class Counsel will seek court approval for an award of attorneys' fees and litigation costs of no more than 22% of the MCSA, subject to the filing of a fee motion 20 days after the Court grants preliminary approval, in order to give the Class time to review the request prior to Court approval;

- Plaintiffs will apply for service awards for the class representatives of no more than $10,000 per class representative (and of no more than $1500 for the representative of the Meal and Rest Period Settlement Subclass);

- Settlement payments will be distributed amongst the approximately 2016 Class Members who file timely and valid claim forms, using distribution formulas based on the number of workweeks, work days, and hours that they personally drove one of their FedEx Ground delivery routes in each year of their employment; and

- Any sums remaining in the Reserve Fund will be paid to the Class in a Second Distribution or to two *cy pres* beneficiaries, depending on the amounts left.

The proposed settlement is the product of arm's length negotiations with a renowned mediator (Michael E. Dickstein) and is fair and reasonable in light of the risks the Plaintiffs and Class Members will face in continued litigation over liability, proof of damages and class membership, the length of the Recovery Period and other defenses asserted by Defendant. Accordingly, Plaintiffs request that the Court (1) grant preliminary approval of the proposed settlement; (2) certify for settlement purposes a Meal and Rest Period Settlement Subclass comprised of *Alexander* Class Members who personally drove their FXG route(s) at any time between August 1, 2011 and August 31, 2015; (2) approve the form, content, and method of distribution of the proposed Notice of Settlement, proposed Supplemental Class and Settlement Notice, and Claim Form; (3) appoint Rust Consulting as the Settlement Administrator; and (4) schedule a hearing regarding final approval of the proposed Settlement, and Class Counsel's request for attorneys' fees and costs and service awards to the Named Plaintiffs.  Defendant does not oppose this Plaintiffs' Motion and agrees with the proposed schedule for notice and case deadlines.

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL. (510) 272-0169  FAX: (510) 272-0174

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOT. FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND SUPPLEMENTAL CLASS

1

## FACTUAL AND PROCEDURAL BACKGROUND

2          Defendant FedEx Ground Package System, Inc. ("FXG"), and its division FedEx

3  Home Delivery ("FHD") (hereinafter together referred to as "FXG" or "Defendant"),[3] is a

4  Delaware corporation affiliated with the Federal Express Corporation.  FXG employs thousands

5  of drivers to pick-up and deliver packages nationwide.

6          As a condition of employment, each FXG Driver is required to execute a contract with

7  FXG, known as the FedEx Ground Pickup and Delivery Contractor Operating Agreement

8  ("OA").  The OA classifies the Drivers as independent contractors, but grants FXG substantial

9  rights to control the manner and means of their work.  It requires that Drivers provide daily

10 package pick-up and delivery service to FXG customers on assigned routes, wearing FXG

11 uniforms, driving FXG-branded trucks, using FXG scanners, and following FXG work

12 methods.

13         On November 17, 2004, Plaintiffs filed the instant action, *Alexander v. FedEx Ground

14 Package System, Inc.*, in the California Superior Court for the County of Alameda, alleging that

15 the Drivers were employees, not independent contractors.  Ross Decl. ¶ 3.  In their Third

16 Amended Complaint, filed October 1, 2007 Plaintiffs asserted damage claims under the Family

17 Medical Leave Act, 29 U.S.C. §2617(a)(1)(b) and various provisions of the California Labor

18 Code (including, *inter alia*, claims for unreimbursed employment expenses (§2802),  unlawful

19 wage deductions (§ 221), missed meal and rest periods (§226.7), unlawful coercion (§ 450),

20 unpaid overtime (§1194)), along with a common law fraud claim, claims to collect civil

21 penalties under Labor Code §203 (waiting time) and §2699 (PAGA), and derivative claims for

22 restitution, declaratory, and injunctive relief under the California Unfair Competition Law,

23 Business and Professions Code §17200 *et. seq. Id.*

24         FXG filed a timely answer to the complaint and then, on January 3, 2005, removed the

25 action to Federal court.  Ross Decl. ¶ 4; Doc. No. 1.  In August 2005, pursuant to a motion filed

26

27         [3] FedEx Ground deals primarily with business-to-business deliveries, while FHD deals primarily
with residential deliveries.  The business differences between the two divisions are not material to the
28 litigation.

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL. (510) 272-0169  FAX: (510) 272-0174

by FXG, the Judicial Panel on Multidistrict Litigation ("JPML") transferred *Alexander* to a multidistrict litigation ("MDL") docket before Judge Robert Miller in the Northern District of Indiana.  *See In re FedEx Ground Package System Inc. Employment Practices Litig.*, (No. II), 381 F. Supp. 2d 1380 (J.P.M.L. 2005).  Over 62 cases challenging FXG drivers' "independent contractor" classification were eventually consolidated into the MDL docket for coordinated pretrial proceedings.  Ross Decl. ¶ 4.  The MDL court designated lead counsel for both sides and bifurcated the proceedings into liability and damages phases with simultaneous class certification and merits discovery.  Ross Decl. ¶ 5.  Three firms were appointed as co-lead counsel for the Plaintiffs, including Leonard Carder, LLP.  *Id.*; MDL Doc. No. 52.

Between 2005 and 2007, the parties engaged in extensive written, document, deposition, and expert discovery.  The MDL court's case management order required Plaintiffs to file class certification motions in four waves after the close of class certification and merits discovery.  The last day for filing the "wave one" class certification motions – of which *Alexander* was a part – was March 13, 2007 and the motion and supporting papers were filed on that day. Ross Decl. ¶ 6; MDL Doc. Nos. 58, 261, 482.  Plaintiffs moved to certify a California class to assert claims for unreimbursed expenses, illegal wage deductions, unlawful coercion, waiting time penalties, and PAGA penalties a nationwide class to assert claims under the FMLA, and a derivative UCL claim predicated on the same statutes.  Ross Decl. ¶ 6.  The MDL Court certified those claims, adopting the following General Class definition:

> All persons who: 1) entered into an [sic] FedEx Ground or FedEx Home Delivery Form Operating Agreement (now known as OP-149 and Form OP-149-RES); 2) drove a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) from November 17, 2000 through October 15, 2007 to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were dispatched out of a terminal in the State of California.

*Id*.  The MDL also certified an Overtime Subclass under Section 1194 – including class members who drove delivery vehicles with a Gross Vehicle Weight Rating of less than 10,001 pounds – which was similarly defined:

> All persons who: 1) entered into an [sic] FedEx Ground or FedEx Home Delivery Form Operating Agreement (now known as OP-149 and Form OP-149-RES); 2) drove a

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

- 5 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOT. FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND SUPPLEMENTAL CLASS

Case No. 3:05-cv-38 EMC

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL. (510) 272-0169   FAX (510) 272-0174

1  vehicle on a full-time basis (meaning exclusive of time off for commonly excused
2  employment absences) from November 17, 2000 through October 15, 2007 to provide
   package pick-up and delivery services pursuant to the Operating Agreement; (3) were
3  dispatched out of a terminal in the state of California, and (4) at any time during the
   class period operated a vehicle with a gross vehicle weight rating of less than 10,001
4  pounds.

5  *Id.*[4]  In May 2008, class notice was sent to the approximately 2,374 individuals and entities

6  identified by FXG as possibly fitting the class definition, followed by a Supplemental and

7  Second Supplemental Class Notice sent in September 21, 2009.[5]  Ross Decl. ¶ 7.

8      Between April and June 2008, the parties filed cross-motions for summary

9  judgment/summary adjudication on the issue of the Drivers' employment status in four waves.

10  Ross Decl. ¶ 8.  Two years later, on December 10, 2010, the MDL court issued an omnibus

11  order that addressed, *inter alia*, the cross-motions filed in the *Alexander* case. *Id; see also*

12  MDL Doc. No. 2097.   The MDL court granted Defendant's motion for summary judgment as

13  to all of Plaintiffs' claims arising under or predicated upon violations of the California Labor

14  Code based on a finding that the Plaintiffs and Class Members were "independent contractors"

15  under California's "right to control" test employment status test.  *Id.*  The MDL Court denied

16  Plaintiffs' cross-motion for summary adjudication, and issued no ruling with regard to

17  Plaintiffs' FMLA claim.  *Id.*

18      On January 24, 2011, the parties filed in the MDL court  a Joint Proposed Pretrial Order

19  detailing the history of the prior proceedings and the remaining issues to be tried.  Ross Decl. ¶

20  9; *see also* Doc. 46, Ex. A. Thereafter, the MDL court referred the case back to the JPML with

21  a suggestion for remand to the transferor Court in California.  In late 2011, the JPML remanded

22  the *Alexander* case to this Court for resolution of the remaining FMLA claims.  *Id.* In 2012, the

23  _____

24      [4]  The MDL Court denied Plaintiffs' motion to certify the claims asserted under the Family
    Medical Leave Act on a nationwide basis.  Plaintiffs made the strategic decision to not seek class

25  certification of the meal and rest period claims (including the derivative UCL claims) or the claim for
    common law fraud. Ross Decl. ¶ 6, n.2.  Among other reasons, the trend in the California courts at that

26  time – several years before the California Supreme Court decided *Brinker Restaurant Corp. v. Superior
    Court (Hohnbaum),* 53 Cal.4th 1004 (2012) – was *not* to certify meal and rest period claims for class

27  adjudication.  *Id.*; Doc. 126 at 9-10.

28      [5]  About 20 persons opted out of the *Alexander* class. Ross Decl. ¶ 7, **Exhibit A2.**

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOT. FOR PRELIMINARY APPROVAL OF
CLASS SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND SUPPLEMENTAL CLASS
Case No. 3:05-cv-38 EMC

parties settled the FMLA claims and the court entered final judgment in FXG's favor.  Ross Decl. ¶10.

Plaintiffs appealed from the adverse judgment to the Ninth Circuit Court of Appeal. Ross Decl. ¶ 11.  FXG also filed a conditional cross-appeal with respect the MDL court's class certification decision which was denied by the Ninth Circuit.  *Id.*  On August 27, 2014, the Ninth Circuit issued its opinion reversing the MDL court's decision and finding the Drivers to be employees as a matter of law under California's right-to-control test.  *Alexander v. FedEx Ground Package Systems, Inc.*, 756 F.3d 981 (9th Cir. 2014).  The Ninth Circuit remanded *Alexander* to the District Court with instructions to enter summary adjudication for Plaintiffs on the question of employment status.  *Id.*

Shortly after remand from the Ninth Circuit in October 2014, the parties began to meet and confer extensively to develop a joint pretrial and discovery plan.  Ross Decl. ¶ 12.  Since then they have exchanged voluminous electronic records and documents pertaining to Plaintiffs' class-wide damage claims and Defendant's various defenses to liability and commenced intensive motion practice with respect to the disputed legal and factual issues. *See* Doc. Nos. 88, 94, and 102.  On May 21, 2015, Defendant filed three "first round" motions pertaining to its key defenses, including (1) a motion to clarify the class definition intended to vastly reduce the size and scope of the class, (2) a motion to limit Plaintiffs' recoverable damages by shortening the length of the damage period, (3) a motion to exclude settlement deductions from Plaintiffs' damages directed at the viability of Plaintiffs' claims to recover damages for certain categories of settlement deductions.  *Id.*; *see* Doc. Nos. 109-113.  Both before and after these motions were filed, the parties engaged in numerous in-person and telephonic meetings in an effort to narrow the disputed legal and factual issues and to move the litigation forward efficiently and expeditiously. *Id.*

In April 2015, the parties began formal settlement discussions in an effort to resolve the remaining class and individual claims.  Ross Decl. ¶ 13.  In preparation for mediation, FXG provided Plaintiffs with voluminous class-wide data from multiple sources and electronic record-keeping systems to enable Plaintiffs to value the class damage claims.  *Id.* The data

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL. (510) 272-0169  FAX: (510) 272-0174

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOT. FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND SUPPLEMENTAL CLASS

Case No. 3:05-cv-38 EMC

spans a 15-year period and includes but is not limited to FXG scanner and settlement data showing the Drivers' mileage and work hours, settlement payments, deductions, and adjustments, route ownership, vehicle records, and dates of service. *Id.* Plaintiffs engaged a forensic accounting expert who has spent dozens of hours reviewing and analyzing FXG's extensive electronic records; Plaintiffs undertook a painstaking review of the voluminous receipts and other records produced by the Named Plaintiffs documenting their damage claims. *Id.* After many weeks of cooperation between the parties and comprehensive analysis of the complex data produced by Defendant, Plaintiffs' expert generated a detailed damage-exposure model and risk analysis. *Id.*

The parties selected Michael Dickstein, a highly respected and skilled mediator with special expertise in complex employment matters. Ross Decl. ¶ 14. In advance of the mediation, the parties exchanged comprehensive mediation briefs with each other and the mediator that included their respective analyses of Defendant's pending motions, the strengths and weaknesses of all claims and defenses, and the other potential litigation risks facing both sides. *Id.*

All parties attended two full days of mediation on June 2 and 3, 2015, including four of the seventeen Named Plaintiffs on the first day. Ross Decl. ¶ 15. Negotiations extended late into the night on June 2nd and, though not originally scheduled, the parties agreed to continue for another full day on June 3rd. *Id.* The parties entered into a Memorandum of Understanding at the end of the second day, which was the basis for the Settlement Agreement presented for the Court's approval at the hearing held on August 6, 2015. *Id.*

Following the August 6, 2015 hearing, the parties engaged in further negotiations in light of concerns raised by the Court about the scope of the proposed release and other aspects of the tentative agreement. Ross Decl. ¶ 16. The parties have since renegotiated the settlement terms in several material respects with the assistance of the mediator, including the total amount of the class settlement, the scope of the class release, and the amount of the attorneys' fees and costs demand. *Id.* In addition, the parties agreed to certification of a settlement subclass comprised of *Alexander* class members who have continued to contract with and drive for FXG

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL. (510) 272-0169  FAX: (510) 272-0174

- 8 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOT. FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND SUPPLEMENTAL CLASS

Case No. 3:05-cv-38 EMC

during the last four years (between August 1, 2011 and August 31, 2015) in exchange for the release of potential claims they may possess for alleged missed meal and rest periods (for the same time period) under California Labor Code Sections 226.7, 510 and IWC Order 9, as well as derivative claims under the UCL.   Ross Decl., ¶ 17. To facilitate this aspect of the settlement, Defendant has stipulated to the filing of a Fourth Amended Complaint brought by *Alexander* class member Marjorie Pontarolo on behalf of a settlement subclass of all similarly situated *Alexander* class members, and to the certification of a Meal and Rest Break Settlement Subclass defined as follows:

> All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES) between November 17, 2000 and October 15, 2007; 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since August 1, 2011, to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were  dispatched out of a terminal in the State of California.

*Id.*; Doc. Nos. 146, 146-1.

## THE TERMS OF THE PROPOSED SETTLEMENT

The complete Settlement Agreement is attached as Exhibit 1 to the Ross Declaration, filed herewith.  The $226,500,000 Class Settlement Fund will be allocated and distributed as follows:

- Approximately $173,263,500 will be distributed directly to the Class ($151,663,000), Overtime Subclass ($16,000,000), and Meal and Rest Period Settlement Subclass ($5,600,000);

- Up to 22% in attorneys' fees and costs (a maximum of $49,830,000);

- Settlement administration fees of approximately $35,000;

- Incentive awards totaling no more than $171,500 (*i.e.* up to $10,000 for each of the 17 original class representatives and $1,500 for the Meal and Rest Period Settlement Subclass representative);

- PAGA penalties to the State of California totaling $1,200,000;

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL. (510) 272-0169  FAX: (510) 272-0174

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOT. FOR PRELIMINARY APPROVAL OF
CLASS SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND SUPPLEMENTAL CLASS

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL. (510) 272-0169  FAX: (510) 272-0174

1     • A reserve fund of $2,000,000. [6]

2   Ross Decl. ¶ 43.

3          The Class definition contained in the Settlement Agreement is identical to the definition

4   certified by the MDL Court, closing the **Class Membership Period** as of October 15, 2007.

5   *See* MDL Doc. Nos. 906, 1119.  Accordingly, class membership in *Alexander* has been defined

6   to include Drivers in California who entered into an OA and drove full-time for FXG on or

7   before that date, and to exclude drivers who first entered into an OA with FXG or FHD at any

8   time *after* October 15, 2007.   *See, e.g.*, *Alexander v. FedEx Ground Package Sys., Inc.*, 756

9   F.3d 981, 984 (2014) ("Named plaintiffs represent a class comprising approximately 2,300

10  individuals who were full-time delivery drivers for FedEx in California between 2000 and

11  2007.").  The Class Membership Period is the same for the General Class, Overtime Subclass,

12  and Meal and Rest Period Settlement Subclass.

13         By contrast, the **Recovery Period** for each eligible General Class and Overtime

14  Subclass Members extends from the beginning of the Class Membership Period, November 17,

15  2000, through August 31, 2015 (the "Recovery Period").  Ross Decl., ¶ 23.[7]  Thus, if a Driver

16  meets the class membership definition above and continued to drive after October 15, 2007,

17  s/he will be entitled to a weekly and/or overtime settlement payment for each eligible week

18  through August 31, 2015.  The scope of the release applicable to the release claims is governed

19  by the same time period:   November 17, 2000 through August 31, 2015.  *Id.*; Ex. 1 at pps. 7-8,

20  §§T and U.  The Recovery Period for the Meal and Rest Period Subclass is from August 1,

21  2011 through August 31, 2015, and the scope of the release of claims premised on the meal and

22

23      [6]  A separate sum of $667,000 is to be paid to the seventeen original named plaintiffs
24  ($1,000,000, less attorneys' fees and costs) pursuant to the terms of an individual settlement agreement
    in exchange for full and complete general release of all claims, including their individual meal and rest
25  period claims.   Ross Decl., ¶ 43, n. 6.

26      [7]  Plaintiffs allege in the litigation that FXG's liability to the Class Members continued after the
    Class Membership Period closed, and damages continued to accrue, because FXG continued to operate
27  under the same or a substantially similar business model after the class was certified.   FXG denies these
    allegations.  In settlement of this dispute, the parties agreed that the period of time for which each Class
28  Member is eligible to recover does not cut off at the same time as the Class Membership Period, but
    rather extends through the August 31, 2015.

rest period allegations is governed by the same time period.

Additionally, under the terms of the Settlement, Class Members may recover through August 31, 2015 even if they began to operate as a business entity at some point during that period.  Ross Decl. ¶ 24; Exh. 1, ¶ I.B, C and D ("persons" include business entities which "entered into, or assumed an assignment of, and FXG Operating Agreement *on or after* October 15, 2007, where the authorized officer or owner of the business entity was a class member").

## **ARGUMENT**

**I.      THE $226.5 MILLION DOLLAR SETTLEMENT TO RESOLVE LITIGATION THAT HAS BEEN PENDING FOR A DECADE IS UNDENIABLY IN THE BEST INTERESTS OF THE CLASS AND ENTITLED TO PRELIMINARY APPROVAL.**

The dismissal or compromise of a class action must be approved by the Court.  Fed. R. Civ. P. 23(e).  Approval involves a two-step process in which the Court first determines whether a proposed class action settlement warrants preliminary approval and, if so, directs that notice be sent to proposed class members, reserving closer scrutiny for the final approval hearing.  *See Harris v. Vector Mktg. Corp.*, C-08-5198 EMC, 2011 WL 1627973, at *7 (N.D. Cal. Apr. 29, 2011).  Approval of a class action settlement rests in the discretion of the Court, which should ultimately determine whether the settlement is fundamentally fair, adequate, and reasonable to the Class.  *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).

Courts should grant preliminary approval of a settlement if it "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval."  *See In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007).  Courts should also apply their discretion in light of the judicial policy favoring settlement of complex class action litigation.  *See, e.g., Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("[I]t must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution.  This is especially true in complex class action litigation . . . .").

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

- 11 -

As discussed below, application of the relevant factors to this case fully supports preliminary approval.

### A.      The Settlement is the Product of Informed, Non-Collusive Negotiations

Adequate discovery and the use of an experienced mediator tend to support the conclusion that settlement negotiations were informed and non-collusive.  *See Villegas v. J.P. Morgan Chase & Co.*, CV 09-00261 SBA EMC, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012); *Satchell v. Fed. Express Corp.*, No. C03 2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007).  The Settlement Agreement tendered for the Court's approval here is the result of thorough and cooperative negotiations by experienced counsel familiar with the applicable law, class action litigation, and the facts of this case.  Ross Decl. ¶ 18.  Leading up to mediation, counsel for the parties engaged in a candid dialogue, including multiple telephonic and in-person meetings, regarding the strengths and risks of the Plaintiffs' claims and FXG's pending and potential motions to limit the scope of the class, the length of the recovery period and its continued attacks on the class certification.  *Id.*  The parties attended multiple days of mediation, after reviewing and analyzing complex questions about the voluminous data provided informally by FXG.  *Id.*

### B.      The Settlement Falls Within the Range of Possible Approval.

In deciding whether the proposed settlement is adequate and falls within the range of possible approval, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer," taking into account the risks of continuing litigation.  *See In re Tableware Antitrust Litig.,* 484 F. Supp.2d at 1080.  Courts should recognize that "the agreement reached normally embodies compromise; in exchange for the saving of cost and elimination of risk, the Parties each gave up something they might have won had they proceeded with litigation."  *Officers for Justice*, *supra.* 688 F.2d at 624 (internal quotations and citation omitted).  Here, the Settlement is fair, adequate, and well within the range of possible approval.

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL. (510) 272-0169  FAX: (510) 272-0174

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOT. FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND SUPPLEMENTAL CLASS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL. (510) 272-0169  FAX (510) 272-0174

## 1.    The Strength of Plaintiffs' Case and the Risk of Further Litigation Support Preliminary Approval.

In this action, Plaintiffs have prevailed on the most significant issue in the case by establishing that the Drivers are employees as a matter of law on summary judgment. *Alexander v. FedEx Ground Package Systems, Inc.*, 756 F.3d 981 (9th Cir. 2014). The focus of the litigation on remand would be to establish Defendant's class-wide liability for damages, restitution, and civil penalties and to conduct an accounting of Plaintiffs' losses.

FXG has asserted numerous factual and legal defenses with regard to the continuing viability of the class certification as to aspects of Plaintiffs' claims as well as to the nature and extent of its potential liability. Ross Decl., ¶ 32. These defenses include (1) whether the full-time requirement for class membership limits the class to persons who drove a FXG route at least 40 hours a week during 48 weeks of every year they worked for FXG, excluding all others, (2) whether the class, as defined, is unascertainable for some or all of the Recovery Period and/or whether class wide adjudication of the damage claims is unmanageable, requiring decertification, (3) the length of the time period covered by the Ninth Circuit's employment status finding, (4) whether Class Members who incorporated after the class closed per the certification on October 15, 2007 remain eligible to recover damages, (5) whether Plaintiffs would be permitted to prove their vehicle-related expenses using a mileage proxy supported by expert testimony or instead would be required to prove those losses with receipts and similar records,  (6) whether Plaintiffs' wage deduction claims are limited or extinguished by the federal Truth-in-Leasing regulations, (7) whether Plaintiffs will be able to recover expenses incurred in operating all of their contracted routes, or just the route they personally drove; and (8) whether the court will exercise its discretion to reduce or deny Plaintiffs' claim to recover civil penalties under Labor Code § 203 and § 2699 under the facts and circumstances of this case. *Id.*

Plaintiffs believe they have strong claims for liability under the California Labor Code, flowing from the Ninth Circuit's finding on employment status, and that they would prevail on many if not all of these issues.  At the same time, balanced against the strength of Plaintiffs' claims are litigation risks that are not insubstantial, which support preliminary approval of the

Settlement Agreement, and which will result in substantial monetary recoveries to the Class Members as described below.

Defenses to the Class Definition:  In its Motion to Clarify the Class Definition, FXG asked the Court to interpret the class definition to include only persons who, in each year of employment, drove no fewer than 40 hours a week, and took off no more than 20 days in any calendar year (i.e. those who drove their route 48 out of 52 weeks during each year of employment).  *See* Doc. No. 108.  Plaintiffs believe that the class definition – which limits class membership to persons who "drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences)" –  extends, at a minimum, to persons who regularly drove 35 hours a week (a common understanding of full-time employment).  If FXG were to convince the Court to adopt its definition of "full-time," many Class Members who drove over 8 hours in a day or 40 hours in a week, but only three or four days per week, would be excluded.  Ross Decl. ¶ 47.  If the Court were adopt Defendant's position, the size of the class would be reduced by close to 50%, as would the amount of class-wide damages.  Ross Decl. ¶ 33.

Defenses to the Class Certification:  FXG has also stated that it intends to file a motion to decertify the class for the first four years of the class period (November 2000 through December 2004) on the ground that it would be administratively infeasible to determine which putative class members met the full-time driving requirement during this time-frame. Defendant maintains that it does not have electronic records to show who drove each truck prior to early 2005 and that the paper records containing this information are stored in 19,000 boxes in warehouses throughout the state.  Doc. No. 108 at 10, n. 7.  Plaintiffs do not believe that such a motion would be successful.  But, they recognize that this motion places at risk between 40-50% of the class-wide damages because the Class Members' claims are most heavily concentrated during the four year period between 2000 and 2004.  Ross Decl. ¶ 34.

Defenses to the Length of the Liability Period (Ninth Circuit Ruling and Effect of Incorporation):  Defendant has also filed a Motion to Limit Plaintiffs' Recoverable Damages to the time period before December 13, 2010 (the date the MDL court granted FXG's motion for

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOT. FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND SUPPLEMENTAL CLASS

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

summary judgment) for the class as whole.  Doc. No. 111.  This motion, too, poses a significant risk to the class recovery.  FXG argues that it made substantial changes to its business model in California both after discovery closed in 2006 and again after the summary judgment motions were decided in 2010 (including, but not limited to, requiring all Class Members to take on multiple routes in 2008 and other changes to its corporate policies and procedures implemented through 2010).  *Id.*  For this reason, FXG claims, the Ninth Circuit employment status ruling had no force or effect after December 2010.  *Id.*  Plaintiffs disagree with this analysis, but they must consider the possibility that the Court could find otherwise. Ross Decl., ¶ 35 .

In the same motion, Defendant argues that Class Members who assigned their contracts to incorporated entities after 2007 no longer meet the class definition and have no damage claims from that point in time forward.  *Id.* at 12-14.   Here, too, Plaintiffs disagree with Defendant's argument, but appreciate the legal and factual complexities of recovering damages on behalf of incorporated entities.  Ross Decl. ¶ 36.  In 2008, FXG announced a program that it called the "California Transition," after which it only contracted with multiple-work-area ("MWA") drivers.  Plaintiffs allege that that the Drivers who continued working after the California transition as MWA drivers were strongly encouraged and incentivized to begin operating as business entities.  Ross Decl. ¶ 25.  Plaintiffs further allege, (and FXG agrees), that FXG changed its policy in California in September 2010 and *only* contracted with incorporated entities from that date forward.  *Id.*  Plaintiffs allege that to keep their jobs Class Members were required to create a corporation or other business entity – in which they were the authorized officer and/or owner – and to assign the OA from themselves to the entity between September 2010 and 2011.  *Id.  See, e.g., Ruiz v. Affinity Logistics Corp.*, 754 F.3d 1093, 1103-1104 (9th Cir. 2014).  Again, FXG disputes this point.  But Plaintiffs also recognize that, if the Court were to rule in FXG's favor, its liability would terminate as to approximately 60% of the Class Members who, between 2007 and 2010, assigned their FXG OA's to incorporated entities; and its liability would terminate entirely, as to the whole class, as of 2011, when all of the remaining California contractors were required to incorporate as a condition of continuing to perform services for Defendant.  *Id.*  The effect on the size of the class and the amount of the

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOT. FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND SUPPLEMENTAL CLASS

Case No. 3:05-cv-38 EMC

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL. (510) 272-0169  FAX: (510) 272-0174

1  class recovery would be highly significant, and could also reduce the class-wide damages by as

2  much as 40%. Ross Decl. ¶ 36.

3      <u>Defenses Pertaining to Modes of Proof</u>: Plaintiffs have also weighed the legal and

4  practical challenges they will face in proving class-wide damages for unreimbursed

5  employment expenses. In *Estrada v. FedEx Ground Package System, Inc.*, 154 Cal. App. 4th 1,

6  18-26 (2007), a predecessor to the instant lawsuit, the Court required the Plaintiff class to prove

7  their vehicle related expenses, including fuel, vehicle maintenance, and other similar expenses

8  with contemporaneous receipts and similar records. Ross Decl. ¶ 37. It took more than a year

9  to gather and analyze the receipts and records from the approximately 200 class members

10  during the *Estrada* accounting and, as will also be true in this case, a large number of the class

11  members stopped working for FXG years earlier and could not locate and produce the required

12  records. *Id*. While Plaintiffs believe the Court would allow them to prove a substantial portion

13  of their vehicle expenses in this case using a mileage proxy supported by expert testimony,

14  Defendant will object. And, despite favorable legal precedent since *Estrada* supporting the use

15  of a mileage proxy and the availability of historic fuel prices and similar data in the public

16  domain that did not exist in 2005, Plaintiffs cannot be certain of success on this point. Were the

17  Court to insist on receipts-based proof of Plaintiffs' expenses, as in *Estrada*, the time and

18  expense of marshalling and analyzing receipts for over 2,000 class members would be very

19  significant, and would likely reduce the class-based expense reimbursement recovery to a

20  fraction of its true value.[8]

21      <u>Defenses to Plaintiffs' Ability to Recover Settlement Deductions</u>: In its Motion to

22  Exclude Settlement Deductions from Damages, FXG argues that Plaintiffs cannot recover

23  damages for deductions, or for employment expenses taken as deductions, from their settlement

24  checks under Labor Code Sections 221 and 2802. The basis of FXG's argument is that

25

26          [8] Moreover, FXG will likely argue that individualized analysis may be required for other types

27  of damages, such as determining the regular rate of pay for each member of the overtime subclass and establishing damages for unreimbursed cell phone records, so as to render class adjudication of these

28  issues unmanageable.

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL. (510) 272-0169 FAX: (510) 272-0174

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOT. FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND SUPPLEMENTAL CLASS

settlement deductions fall outside the prohibition of the wage deduction statute because they represent "charge-backs" that FedEx Ground is legally authorized to take from Drivers' settlement checks by the federal Truth-in-Leasing Regulations that govern the OA (promulgated pursuant to the Motor Carrier Act).  Doc. No. 113.  The deductions at issue include, among others, deductions to buy and/or rent FXG uniforms and scanners, several forms of insurance, DOT drug screenings, and other goods and services supplied by FXG to its drivers.  Plaintiffs disagree.  But, in the absence of case law directly addressing this argument, they must account for the possibility that a ruling in FXG's favor would limit Plaintiffs' recoverable damages, as well as their entitlement to related civil penalties under PAGA, by as much as 40%.  Ross Decl. ¶ 38.

Defenses to Recovery of Damages for All Contracted Routes:  Defendant has also argued that Plaintiffs are not entitled to recover damages and expenses incurred for all of the multiple-work-area Drivers' contracted routes under Labor Code Section 2802.  In brief, Defendant contends that Section 2802 – by its terms – was intended to address situations in which an employee incurs costs directly related to services s/he performs personally and that contractors who hire others to drive their additional contracted routes lose nothing and earn a profit on their employees' work on those additional routes.  Ross Decl. ¶ 39.  Here, again, Plaintiffs disagree with Defendants' narrow interpretation of the statute,  but for purposes of settlement must consider the possibility that Defendant could prevail in this argument and the corresponding reduction in the overall value of the expense reimbursement claim if Defendant is correct.  *Id*.

Defenses to Waiting Time Penalty Claims:  Plaintiffs must also acknowledge the possibility that they may not succeed on their claim for waiting time penalties altogether.  Defendant has argued that, because the MDL court's December 2010 order granting summary judgment to FXG  remained in in effect until August 2014, Plaintiffs cannot establish the requisite "willfulness" to obtain waiting time penalties under Labor Code § 203.  Ross Decl. ¶ 40; *see also* Cal. Code Regs., tit. 8, § 13520 ("a good faith dispute than any wages are due will preclude imposition of waiting time penalties under Section 203").

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL. (510) 272-0169  FAX: (510) 272-0174

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOT. FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND SUPPLEMENTAL CLASS

Case No. 3:05-cv-38 EMC

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL. (510) 272-0169  FAX: (510) 272-0174

<u>Defenses to PAGA Penalties Claims</u>: With regard to Plaintiffs' PAGA claim, Defendant will ask the Court to exercise its discretion to award, at most, a fraction of the PAGA penalties Plaintiffs seek because the full measure of the PAGA penalties would be astronomical and that, therefore, it would be "unjust, arbitrary and oppressive, or confiscatory" for the Court to award them.  Cal. Lab. Code § 2699; *see also* Ross Decl. ¶ 40.  Here, too, Plaintiffs have weighed the risk that these arguments could be adopted by the Court in whole or in part in assessing the settlement value of the class claims.  While it is highly unlikely that Plaintiffs would recover nothing under PAGA, whether the Court would exercise its discretion to award them the maximum amount of the statutory penalty they seek – approaching $75 million– is entirely uncertain. Ross Decl. ¶ 40.

In summary, without conceding that any adverse rulings as to any of these issues would be justified, Plaintiffs recognize the risk of such outcomes and weighed them against the potential recoveries to be yielded by the proposed settlement.  Loss on any one of the defenses mounted by Defendant, as described above, could potentially cut the maximum class-wide recovery in half, while loss on multiple of FXG's defenses – an outcome within the realm of possibility – could reduce Plaintiffs' potential recovery to less than 25% the full value of the class claims.  Ross Decl. ¶ 41.  The $226,500,000 class settlement is well within the range of a reasonable settlement value in light of the litigation risks described above.  *Id.*

## 2. The Settlement Value is Fair in Light of Maximum Potential Exposure Discounted For Risk

"[I]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair.  Rather, the fairness and the adequacy of the settlement should be assessed relative to risks of pursuing the litigation to judgment."  *Villegas,* 2012 WL 5878390, at *6 (internal quotations and citations omitted).  The Class Settlement will result in payment of an award to the class that is more than fair and reasonable, particularly in light of the litigation risks.

### a. Calculation of Maximum Potential Exposure Discounted For Risk

Based on the data produced by FXG for purposes of the mediation, Plaintiffs estimated

- 18 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOT. FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND SUPPLEMENTAL CLASS

Case No. 3:05-cv-38 EMC

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL. (510) 272-0169  FAX: (510) 272-0174

FXG's *maximum* potential exposure to the Class to be approximately $533,000,000.  Ross Decl.
¶ 19. This valuation assumed that Plaintiffs could prevail on every aspect of their damage
claims including, but not limited to the argument that they should be allowed to prove the most
significant aspect to their damage claims – their vehicle expenses – with expert testimony based
on a mileage proxy of 1.6 times the IRS rate, that they would be entitled to recover the full
amount of the expenses they incurred for each one their contracted routes, and that they would
be awarded the full measure of the over $86,000,000 in civil penalties sought under PAGA
($75,000,000) and Labor Code §203 ($11,000,000).  *Id.* The $533,000,000 valuation also
assumed that Plaintiffs could defeat Defendant's continued attacks on the scope of the class,
enabling Plaintiffs to retain maximum class membership and prove liability on the basis of the
Ninth Circuit's employment status ruling for the maximum length of the recovery period
spanning 15 years.  *Id.*

Plaintiffs' maximum liability analysis was reached by applying a number of reasoned
assumptions to the voluminous data provided by FXG as detailed below.  After calculating the
maximum valuation of the case, Plaintiffs applied settlement discounts by evaluating the
likelihood of success or failure on each of the assumptions used to calculate the maximum
liability number.

General Class: To determine class membership, Plaintiffs' forensic accounting expert
identified when Class Members drove "full-time" in FXG scanner data using average hours
worked per week in conjunction with days not worked on a quarterly basis.[9]  Ross Decl. ¶ 22.
The Settlement provision to include business entities includes in each Class Member's
individual recovery period any weeks during which s/he work on a full-time basis even after
assigning his or her contact to a business entity.  Ross Decl., ¶26.

Plaintiffs' expert calculated expense reimbursement and wage deduction damages for

---

[9] In the pre-mediation settlement valuation, Class Members were  considered eligible to recover
damages as a Class Member for any quarter in which s/he (1) took off no more than 13 work days in a
quarter and (2) worked an average of 35 hours per workweek. Ross Decl. ¶ 22, fn. 4.  The final
Settlement distribution formula provides payments for *any workweek* in which a Class Member
personally drove.  *See* Doc. No. 119, pp. 14-15.  *Id.*

eligible workweeks based on (1) each driver's mileage records multiplied by a mileage proxy that was 1.6 times the IRS rate in effect during each year of the recovery period, (2) actual non-vehicle-related deductions taken from Drivers' settlement checks, as reflected in FXG's data, and (3) an estimate of other expenses – cellular phone expenses and vehicle washes – based on a sample of the Named Plaintiffs' receipts and other records.  Ross Decl. ¶ 27.  Statutory interest at 10% simple was calculated as of the date each expense was incurred.  *Id.* Plaintiffs' expert also calculated an alternate expense reimbursement damages valuation for eligible workweeks using the true IRS rate in effect during each year of the recovery period, which resulted in an alternative maximum exposure valuation of $413,600,000 as opposed to $533,000,000.  *Id.*

Overtime Subclass:  Overtime damages were calculated for Overtime Subclass Members based on actual hours Class Members personally drove overtime-eligible vehicles, as reflected in FXG's scanner data, at an average regular hourly rate of $28.00.  Ross Decl. ¶ 28. Statutory interest was also calculated at the rate of 10%, resulting in a maximum valuation of the overtime claim of approximately $32,000,000.  *Id.*  In light of the risk of decertification of the 2000 to 2004 period, in which overtime claims are heavily concentrated, and the risk of the Court adopting FXG's definition of "full-time," the settlement reflects a 50% discount to the overtime claims.  Ross Decl. ¶ 47.  That settlement discount is also proportional to the discount applied to the expense reimbursement and wage deduction claims and that fairly accounts for the litigation risks absent a settlement.  *Id.*

Meal and Rest Period Settlement Subclass:  Meal and rest period damages were calculated for members of the Meal and Rest Period Settlement Subclass based on the number of actual days those class members personally drove their contracted route(s) between August 1, 2011 and August 31, 2015, as reflected in FXG's scanner data, at a rate of two hours of additional pay per day (or $56.00/ day).  Statutory interest was also calculated at a rate of 10% simple, resulting in a maximum value for the meal and rest period claims of approximately $14,109,000.  Ross Decl., ¶ 29.  Taking into consideration the substantial risk posed by Defendant's Motion to Limit Plaintiffs' Recoverable Damages, discussed *supra*, which could

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOT. FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND SUPPLEMENTAL CLASS

Case No. 3:05-cv-38 EMC

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL. (510) 272-0169  FAX: (510) 272-0174

terminate liability as early as 2010 (meaning no recovery after that date), the Plaintiffs discounted the meal and rest period claims to 40% of their maximum value.  Ross Decl. ¶ 48. This discount also reflects the risk that Plaintiffs could fail to obtain class certification of the previously uncertified meal and rest period claims.  *Id.*  Additionally, the settlement discount applied to meal and rest period claims is proportional to both the discount applied to the expense reimbursement and wage deduction claims and the net recovery to be paid to the Named Plaintiffs to resolve the individual meal and rest period claims by separate agreement.[10] *Id.*

PAGA Penalties and Waiting Time Penalties:  PAGA penalties were calculated for the predicate Labor Code violations from the date of the Plaintiffs' LWDA letter through the time of mediation, resulting in a value of approximately $75,000,000.  The waiting-time penalties under Section 203 were calculated for the approximately 1,500 class members whose contracts have terminated during the class period as having a full value of approximately $11,340,000 (representing the maximum penalty: 30 days of wages).  Ross Decl. ¶ 30.  After accounting for the risk of losing the waiting time penalty claim and the Court's ability to exercise its discretion to reduce the PAGA penalties, the Settlement reflects a substantial discount to these claims as well.

               *b.*     *Recovery is Fair and Adequate in Relation to Maximum Value*

The proposed Settlement provides a recovery for Class Members of approximately 42% of the maximum value of their individual expense reimbursement and wage deduction claims calculated using a mileage proxy of 1.6 times the IRS rate (and at rate of 57% of the maximum value of the claim when calculated using the IRS rate as a mileage proxy), 50% of the maximum value of the overtime claims, and 40% of the maximum value of the released meal and rest period claims.  Ross Decl. ¶ 31.  Because the settlement is non-reversionary, these

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL. (510) 272-0169  FAX: (510) 272-0174

---

[10]   The individual meal and rest period claims of the 17 named plaintiffs were valued for purposes of settlement using the identical methodology described above.  The net recovery each will receive in exchange for a general release in favor of Defendant will be approximately 42% of the maximum value of the claims.  Ross Decl., ¶48, fn. 7.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOT. FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND SUPPLEMENTAL CLASS

actual payouts to Class Members may ultimately be a higher percentage of the full value, depending on the number of valid claims that are ultimately submitted. *Id.* Plaintiffs' counsel thus concluded that the settlement of $226,500,000 is more than fair and reasonable and entitled to approval. *Id.*

The Settlement affords relief to Class Members who likely would never have filed individual claims. The net amount to be paid to Class Members will be approximately $175,263,000 dollars, with *average* estimated Individual Settlement Payments to class members in the range of $65,000 to $85,000. More than 100 class members will be eligible for settlement payments in excess of $200,000. Ross Decl. ¶ 20. Under the circumstances, the amount of the settlement is fair, adequate and reasonable. *See Scott v. Bimbo Bakeries USA*, No. 2:10cv03154 (E.D. Pa. March 5, 2014) (ECF No. 174) (approving a settlement of wage and hour claims for payments of $900 to each current driver and $450 to each former driver, plus $12,500 enhancement payments); *Tijero v. Aaron Brothers, Inc.*, No. C 10-01089-SBA, 2013 WL 6700102 at *3 (Dec. 19, 2013) (granting preliminary approval of settlement of wage and hour claims where the average recovery would be between approximately $28 and $45); *Bautista v. Harvest Management Sub*, No. 2:12-cv-10004 (C.D. Cal. Oct. 16, 2013) (ECF No. 60) (preliminarily approving a $2.2 million settlement of wage-and-hour violation claims of 14,000-member class).

### 3.     The Distribution Allocation Formula is Fair

The plan of distribution is also fair and reasonable. The Settlement provides that the settlement fund will be allocated using the best available records maintained by FXG, from which the number of weeks during which each class member personally drove were derived, as well as the number of hours they drove in each of those weeks, between November 17, 2000 and August 31, 2015. Ross Decl. ¶ 42.

General Class Distribution Formula by Workweek: All Class Members will be eligible to receive a settlement amount for each workweek during which it appears, from FXG records, that they drove one of their FXG routes 35 or more hours. Ross Decl., ¶ 44. Class Members will also be eligible for tiered flat-rate settlement payments of either $75.00 or $25.00 for

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOT. FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND SUPPLEMENTAL CLASS

Case No. 3:05-cv-38 EMC

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

1   workweeks during which they personally drove fewer than 35, or fewer than 25 hours

2   (respectively).  Persons who received notice of the class action, but who, according to FXG

3   records, did not appear to drive personally during the claim period will be eligible for a flat

4   minimum settlement payment of $250.  *Id.*

5          The estimated *base* weekly settlement payments  will be $240 for Class Members who

6   drove in the FedEx Ground division and $190 for those who drove in the FHD division.  The

7   lower FedEx Home Delivery base weekly settlement payment reflects the proportionally lower

8   expenses incurred by Class Members who drove for FHD, who were subject to fewer and

9   smaller wage deductions, and who operated fewer routes and smaller trucks than their

10  counterparts in the FedEx Ground division.  Ross Decl. ¶ 45.  The base weekly settlement

11  payment for each year will be adjusted using an interest multiplier to account for statutory

12  interest accrued at 10% simple as provided for in Labor Code Section 2802(b) during the 15

13  year claim period.   For example, the adjusted base weekly settlement payment for workweeks

14  in 2005 will be two-times the unadjusted base weekly settlement payment to account for ten

15  years of statutory interest accrued at 10%, while payments for workweeks in 2015 will be

16  calculated using the base rate settlement payment with no adjustment.   *Id.*

17          Overtime Subclass Distribution Formula:  Settlement payments to Overtime Subclass

18  Members will be allocated *pro rata* from an overtime fund of $16,000,000.  These payments

19  will be based on number of overtime hours (i.e. hours over 8 hours in a day or over 40 in a

20  week) reflected in FXG's scanner records logged by each eligible subclass member relative to

21  the total number of overtime hours logged by all members of the Overtime Subclass.  Ross

22  Decl. ¶ 46.

23          Plaintiffs determined, based on identifying information provided by FXG, that

24  approximately 20% of the vehicles operated by  Overtime Subclass Members during the class

25  period had a gross vehicle weight rating of less than 10,001 pounds.   Ross Decl. ¶ 46.

26  Plaintiffs' expert then used FXG scanner data to calculate the actual number of overtime hours

27  driven by those Overtime Subclass Members in the eligible vehicles.  *Id.*  Plaintiffs expert

28  multiplied that by an average regular hourly rate of pay of $28.00 which they developed based

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL. (510) 272-0169  FAX: (510) 272-0174

on a sample of Drivers' actual settlement checks and pursuant to the Labor Code's formula. *Id*. This calculation valued the overtime claims at approximately $16,000,000, exclusive of statutory interest accrued on those claims. *Id*.  The settlement allocates 50% of the overtime recovery to unpaid wages and 50% to accrued interest.  The $16,000,000 figure will allow Overtime Subclass Members to recover approximately $14.00 in overtime premiums (based on an average regular hourly rate of pay of $28.00) for each overtime hour they actually drove for which they received straight-time compensation but not overtime premiums.  *Id*.

     <u>Meal and Rest Period Settlement Subclass Distribution Formula</u>:  The Meal and Rest Period Settlement Subclass settlements will be allocated *pro rata* to the approximately 468 class members who FXG records show continued to contract with FXG and personally drive during the last four years (between August 1, 2011 and August 31, 2015) from the meal and rest period fund of $5,600,000.  Ross Decl., ¶ 48. These payments will be based on number of days driven by each eligible subclass member, as reflected in FXG's records, relative to the total number of days driven all members of the Meal and Rest Period Settlement Subclass during the period August 1, 2011 through August 31, 2015.

     The distribution methodology applied here – which is rooted in a workweek model - is commonly employed in wage-and-hour cases.  *See, e.g., Ching v. Siemens Industry, Inc.*, No. C 11-4838 MEJ, at *6 (N.D. Ca. Nov. 26, 2013) (granting preliminary approval of settlement and finding that weeks-worked was a reasonable basis for allocating individual payments).

         **4.**     **Reserve Fund Provides for Previously Unidentified Class Members**

     A Reserve Fund of $2,000,000 will be allocated to cover settlement payments to eligible Class Members who may have been omitted from the original or supplemental Class Notice.  Ross Decl. ¶ 49   .  In Plaintiffs' counsel's experience there are often issues with a Defendant's data, particularly in cases such as this that span more than a decade during which the Defendant used multiple systems to track and record information about its drivers and package deliveries. *Id*.  Both parties recognize the possibility that, despite FXG' best efforts to produce accurate data, the data may be imperfect and some number of other eligible Class Members may be later identified, either from supplemental searches of FXG's many databases or because drivers hear

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL. (510) 272-0169  FAX (510) 272-0174

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOT. FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND SUPPLEMENTAL CLASS

Case No. 3:05-cv-38 EMC

about the settlement and seek compensation.  *Id.*  On the other hand, FXG represents that it has already carefully re-reviewed its records and identified seventy-eight (78) additional persons meeting the class definition who were not on the original class list compiled in 2008 and updated in 2009, thus limiting the number of unidentified class members the parties anticipate coming forward.  *Id.*  The parties believe the $2,000,000 Reserve Fund is appropriately limited in recognition of the parties' diligence in identifying Class Members, but also adequately sizeable to account for claims from persons meeting the class definition but not previously included on the class list.  *Id.*  Any amount of the Reserve Fund that is not paid to later-identified Class Members will be redistributed to the Class of the *cy pres* beneficiaries, depending on the amount.  *Id.*

Overall, the reasonableness of the proposed Settlement is evidenced by the excellent monetary recovery which is the basis of the settlement, in light of the fact that FXG has raised numerous and substantial legal and factual defenses to the merits of Plaintiffs' claims and continues to challenge the case's class action status.  Absent a settlement, litigation of these issues would require several additional years and, if successful, as discussed above, could result in a reduction of the overall recovery to the class of far more than 50%.  Indeed, if Defendant succeeded on multiple defenses, Plaintiffs' potential recovery could be reduced to less than 25% of the full value of the class claims.  This Settlement avoids the substantial uncertainty of continued litigation and ensures that Class Members receive substantial consideration now, instead of speculative payments in the future. Ross Decl., ¶ 54.

**C.**     **The Attorneys' Fees and Costs Plaintiffs Will Request Are Reasonable**

The Settlement provides that, prior to the final approval hearing, Class Counsel may petition the Court for an award of fees *and* out-of-pocket litigation expenses in an amount *not to exceed* twenty-two percent (22%) of the total class settlement fund, an amount that is less than the Ninth Circuit benchmark of 25% in cases where a "percentage of the fund" recovery is permissible and appropriate.  *See Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1029 (9th Cir.1998) (referring to 25% in attorneys' fees as a "benchmark award").

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL. (510) 272-0169  FAX: (510) 272-0174

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL. (510) 272-0169   FAX: (510) 272-0174

Plaintiffs' Counsel submits that this aspect of the agreement is eminently fair and reasonable in light of the significant time and expense that they have devoted to this case over the last eleven years.  The anticipated fee request is tied to the amount that will be paid out to the Class, is well less than the Ninth Circuit's benchmark award, will result in fair and appropriate compensation to class counsel in light of the contingent risk taken during over a decade of intensive litigation, and the extraordinary outcome.  *Id.; see also Knight v. Red Door Salons, Inc.*, No. 08-01520 CD, at *6 (N.D. Cal. Feb. 2, 2009) (observing that class action fee awards average around one-third of the recovery).[11]

Class Counsel will file their application for fees and costs within 20 days after entry of the Court's preliminary approval order, so that Class Members can be fully informed of the fee request and have ample time to consider the request prior to the deadline for objecting.  *See In re Mercury Interactive Securities Litigation*, 618 F.3d 988 (9th Cir. 2010).  The Class Settlement Notice will inform Class Members that the fee motion will be on file with the Court and available for public review.  The fee motion will be heard at the same time as the final approval motion.

### D.    The Proposed Service Awards Are Reasonable

Service or incentive awards are typical in class action cases.  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009).  In evaluating incentive awards, courts may consider "(1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation and; (5) the

---

[11]   The anticipated request for 22% of the class settlement fund is in fully in line with the lodestar fee – described in previous briefing at Doc. 130 - with an appropriate upward adjustment to compensate counsel for the substantial contingent risk in this case as well as the excellence of the result of appeal and in resolving the case.  *See Mangold v. California Public Utilities Comm'n*, 67 F.3d 1470, 1473 (9th Cir. 1995) (in diversity action, plaintiffs' entitlement to fees evaluated under substantive state law); *Ketchum v. Moses*, 104 Cal. Rptr. 377, 17 P.3d at 744-46 (2001); *accord Chaudry v. City of Los Angeles*, 751 F.3d 1096, 1112 (9th Cir. 2014) (California law permits multiplier for contingent risk); and *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 942 (9th Cir. 2011)(the court may adjust the lodestar figure to reflect a host of "reasonableness" factors, "including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment").

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOT. FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND SUPPLEMENTAL CLASS
Case No. 3:05-cv-38 EMC

1   personal benefit (or lack thereof) enjoyed by the class representative as a result of the

2   litigation." *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

3   Here, Plaintiffs' counsel believes that service awards to the original 17 class

4   representatives in an amount not to exceed $10,000 each is consistent with a fair, just and

5   adequate settlement.  As shown in accompanying declarations, during the 11 years this case has

6   been pending, each of the 17 original class representatives has devoted substantial time and

7   effort to assisting with its prosecution and successful resolution, ranging between 70 and 260

8   hours.[12]  Each of the 17 original class representatives agreed to serve as class representatives in

9   this case with the express understanding that their role was to represent and seek relief for the

10  class of FedEx Ground contractors who, like them, were classified as "independent contractors"

11  when in fact they were employees entitled to the benefits and protections of California law.  *Id.*

12  They did so despite the risk of retaliation or negative perception they each face from a current,

13  future or potential employer who could easily identify them as Plaintiffs in this litigation with a

14  simple internet search.  *Id.*

15  Additionally, all of the class representatives actively participated in formal written

16  discovery and document production, and all were deposed, requiring extensive time,

17  preparation and travel.  *Id.*  They were ready, willing and able to assist counsel in developing

18  the factual record at all stages of the case and they did so, participating in in-person meetings,

19  phone conferences, and one-on-one communications with counsel.  *Id.* They willingly served as

20  liaisons to the time, absent class members, and have been actively involved in the settlement

21  process.  Under these circumstances the service awards sought on their behalf are reasonable

22  and appropriate.

23  ///

24

25

26  ---

    [12]  *See* Declaration filed in Support of Motion For Preliminary Approval of Class Settlement,
    Certification of Settlement Class, and Supplemental Class Notice by Dean Alexander, Peter Allen,
    Albert Anaya, Suzanne Andrade, Jarrett Henderson, Ely Ines, Jorge Isla, Paul Infantino, Eric Jeppson,
27  Gupertino Magana, Bernard Mendoza, Jesse Padilla, Marjorie Pontarolo, Joey Rodriguez, Dale Rose,
    Allan Rose, Agostino Scalercio, and Anthony Ybarra.

28

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL. (510) 272-0169  FAX: (510) 272-0174

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOT. FOR PRELIMINARY APPROVAL OF
CLASS SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND SUPPLEMENTAL CLASS

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL. (510) 272-0169  FAX: (510) 272-0174

### E.    The Settlement Designates Appropriate Cy Pres Beneficiaries

The parties have agreed to designate two *cy pres* beneficiaries as recipients of funds that are not distributed to the class:  The Impact Fund and the California Rural Legal Assistance Foundation.  Both are appropriate *cy pres* recipients under the standard established in *Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012); *Nachsin v. AOL, LLC*, 663 F.3d 1064 (9th Cir. 2011) for the reasons set forth below.  Ross Decl., ¶ 50.

The Impact Fund, located in Berkeley, California, provides support for and litigates complex case on social justice issues, often in the area of employment law.  Ross Decl. ¶ 46 . The Impact Fund frequently litigates employment law class actions on behalf of vulnerable workers in California, such as *Ellis v. Costco Wholesale Corp.*, *Estrada v. Bashas' Inc.,* and *Moeller v. Taco Bell*; *See* Ross Decl. ¶ 51.  In addition, the Impact Fund regularly drafts *amicus* briefs and letters advocating for the rights of California's low-wage workers and their access to justice, including *Duran v. US Bank National Association*, *Iskanian v. CLS Transportation Los Angeles, LLC*, and *Ayala v. Antelope Valley Press*.  *Id.*  The Impact Fund's commitment to workers' rights in California, in particular its focus on workers' collective access to justice in the form of class actions, is directly related the independent contractor misclassification claims at issue in this case and the California Drivers who make up the Class.  *Id.*

The California Rural Legal Assistance Foundation ("CLRA Foundation") provides support, education, public policy advocacy, litigation support, and legal assistance to California's rural poor.  Ross Decl. ¶ 52.  The CLRA Foundation has two targeted projects focused on California's workers: the Labor and Employment Law Project ("LELP") and the Labor and Civil Rights Litigation project.  *Id.*  The LELP has been instrumental in advancing state legislation aimed at protecting workers from wage theft, discrimination, harassment, and abuse.  Ross Decl. ¶ 47.  In the Labor and Civil Rights practice group, CLRA Foundation pursues litigation on behalf of workers alleging wage theft, violation of workplace safety standards, and other unfair labor practices.   The CLRA Foundation has offices in Sacramento and Freso and serves California workers exclusively.  Like the Impact Fund, CLRA Foundation's employment and labor work is focused on protecting low-wage workers from

violations of the Labor Code like those alleged in this case.  Accordingly, its work is related to the subject matter of the case and California Class Members.  *Id.*

The parties selected multiple organizations due to the size of the settlement fund in this case, to ensure that any *cy pres* funds do not result in a windfall for any particular entity.  The parties agree these two organizations will share equally in any residual funds.  Ross Decl. ¶ 53.

**F.     CAFA Notice of the Settlement is Required**

The Class Action Fairness Act ("CAFA") requires that notice be served on "the appropriate Federal official" and the "appropriate State official" within "[n]ot later than 10 days after a proposed settlement of a class action is filed in court." 28 U.S.C. §1715(b).  The Settlement provides for CAFA notice to be given by the Settlement Administrator after preliminary approval is granted in the form required by the statute.  See Ross Decl., Ex. 1 (Settlement Agreement) at Section II(3)(d), and Ex. G (CAFA Notice).

**II.     THE COURT SHOULD CERTIFY THE PROPOSED MEAL AND REST PERIOD SETTLEMENT SUBCLASS TO FACILITATE THE MEAL AND REST PERIOD SETTLEMENT**

The parties have stipulated to the certification of a settlement subclass to resolve, on a class-wide basis, claims for missed meal and rest periods asserted on behalf of class members who have continued to contract and drive with FXG under the terms of the same OA as all other class members during the period August 1, 2011 through August 31, 2015 as asserted in the Third Cause of Action in the Fourth Amended Complaint ("Meal and Rest Period Settlement Subclass").  See Doc. 146-1, ¶¶ 14-15, 51-53.  Plaintiffs propose the following class definition:

> All persons who: 1) entered or will enter into a FXG Ground or FXG Home Delivery form Operating Agreement (now known as form OP-149 and form OP-149 RES) between November 17, 2000 and October 15, 2007; 2) drove or will drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) since August 1, 2011, to provide package pick-up and delivery services pursuant to the Operating Agreement; and 3) were  dispatched out of a terminal in the State of California.

*Id. at* ¶ 14.

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL. (510) 272-0169  FAX. (510) 272-0174

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOT. FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND SUPPLEMENTAL CLASS

**A.     Standards Governing Approval of Settlement Classes**

When considering a motion for preliminary approval of a settlement, the Court must make a threshold determination as to whether the proposed settlement class meets meet Rule 23 requirements. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-20 (9th Cir. 1998). Specifically, the Court must determine whether the proposed class satisfies the requirements that (1) the class is so numerous that joinder would be impracticable; (2) there are questions of law or fact common to the class; (3) the named plaintiffs' claims are typical of the claims of the proposed class; and (4) plaintiffs and their counsel will adequately and fairly represented the interests of the class. Id. at 1019. Additionally, the action must be maintainable under Fed. R. Civ. P. 23(b) (1), (2), or (3).  *Id.* at 1022.  Based on these standards, as further discussed below, the Court should certify the proposed Settlement Class for settlement purposes.

**B.     The Proposed Meal and Rest Period Settlement Subclass Satisfies Requirements of Rule 23(a)**

The proposed Settlement Subclass satisfies all requirements of Rule 23(a). First, the proposed Meal and Rest Period Settlement Subclass, which has approximately 468 class members, is sufficiently numerous to satisfy Rule 23(a)(1). Courts have generally found a class of at least 40 members meets the numerosity requirement.  *See, e.g., EEOC v. Kovacevich "5" Farms*, No. CV-F-06-165 OWW/TAG, 2007 WL 1174444, at *21 (E.D. Cal. Apr. 19, 2007).

Second, Rule 23(a)(2) is satisfied because there are questions of law and fact common to the proposed Meal and Rest Period Settlement Subclass. *See Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012) ("Commonality only requires a single significant question of law or fact."). Here, common liability issues include whether the Subclass Members are employees under California law, whether Defendant's written policy regarding meal and rest breaks set forth in the common OA complies with California law, and/or whether Defendant systematically discouraged the Subclass Members from taking meal and rest periods. Any one of these would satisfy the commonality requirement of Rule 23(a)(2).

Third, the typicality requirement of Rule 23(a)(3) is satisfied because the claim raised by the class representative Plaintiff Marjorie Pontarolo is typical of the claim asserted on behalf

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOT. FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND SUPPLEMENTAL CLASS

Case No. 3:05-cv-38 EMC

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL. (510) 272-0169  FAX: (510) 272-0174

of the Class. Typicality is established if representative's claims are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. The claim Pontarolo asserts arises out of the same factual and legal circumstances as the claims of other Class Members: like all Subclass Members, Pontarolo continued to be classified as an independent contractor after August 1, 2011, her terms and conditions of employment were governed by the same FedEx Ground Pickup and Delivery Contractor Operating Agreement as all Class Members, including the provision pertaining to the taking of breaks; and her claim that she was denied the protection of California wage and hour law is predicated on the same facts and law as the claims of the Class Members she seeks to represent. See Declaration of Marjorie Pontarolo, ¶ 2 and 6, filed herewith.  For the same reasons, Ms. Pontarolo will "fairly and adequately protect the interests of the class" as required by Rule 23(a)(4) because she has no conflicts of interest with other class members and has demonstrated her willingness to assert and prosecute the claim on behalf of the class as a whole.  *See Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 985 (9th Cir. 2011).

Rule 23(g)(1) requires courts, when appointing class counsel, to consider: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation and the type of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to its representation.

Plaintiff's counsel – Beth Ross, Aaron Kaufmann, David Pogrel, and Elizabeth Gropman – have identified and investigated the meal and rest period claims pertaining to the time period August 1, 2011 through August 31, 2015; they have extensive experience in class action litigation, including wage-and-hour claims of the type asserted here, and have been appointed Class Counsel in numerous other cases including this one; and they have demonstrated that they have the ability and resources to vigorously pursue the claims.  Ross Decl., ¶ 2, 58-60.  For these reasons, Plaintiffs' counsel and class representative Pontarolo meet the adequacy requirement of Rule 23(a)(4), and Plaintiffs' counsel should be appointed as Class Counsel pursuant to Rule 23(g).

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL. (510) 272-0169  FAX: (510) 272-0174

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL. (510) 272-0169  FAX: (510) 272-0174

1

2

**C.**   **The Meal and Rest Period Settlement Subclass Meets the Requirements of Rule 23(b)(3)**

3    The Meal and Rest Period Settlement Subclass also meets the requirements of Rule

4  23(b)(3) because common questions "predominate over any questions affecting only individual

5  members," and class resolution is "superior to other available methods for the fair and efficient

6  adjudication of the controversy."  *Id.*  The settlement class satisfies the predominance

7  requirement which examines whether the proposed classes are "sufficiently cohesive to warrant

8  adjudication by representation." *Hanlon*, 150 F.3d at 1022.  "When common questions present a

9  significant aspect of the case and they can be resolved for all members of the class in a single

10  adjudication, there is clear justification for handling the dispute on a representative rather than

11  on an individual basis." *Id.*;  *See also Edwards v. First Am. Corp.*, __ F.3d __, 2015 WL

12  4993290 at *7 (9th Cir. 2015).

13    Common issues predominate here because the claims for missed meal and rest periods

14  turn on common liability issues suited to class-wide adjudication: whether Meal and Rest

15  Period Settlement Subclass Members continued to be employees under California law after

16  August 1, 2011, because Defendant's right to control the manner and means of their work is

17  manifest in the same OA considered by the Ninth Circuit and other common operating policies

18  and procedures.  Stemming from this threshold question of employee status, liability for the

19  meal and rest period claims likewise depends upon common proof, principally whether the

20  terms of the OA, signed by all Subclass Members, pertaining to meal and rest period complies

21  with the requirements of California law and, if so, whether Defendant systematically

22  discouraged Subclass Members from taking meal and rest periods.  *See* Pontarolo Declaration, ¶

23  6,

24    Rule 23(b) (3) is satisfied for the additional reason that resolution of the issues in this

25  case on a class-wide basis is "superior to other available methods for the fair and efficient

26  adjudication of the controversy." *See Hanlon*, 150 F.3d at 1023. The alternative to a single class

27  action - numerous individual actions - would be inefficient and unfair. *See, e.g., Custom Led,*

28  *LLC v. eBay, Inc.*, 12-CV-00350-JST, 2013 WL 4552789 (N.D. Cal. 2013) (superiority

1  established because a "class action would achieve the resolution of the putative class members'

2  claims at a lower cost and would reduce the likelihood of inconsistent determinations").

3  **III.  THE PROPOSED NOTICE OF SETTLEMENT AND SUPPLEMENTAL**
**NOTICE ARE ADEQUATE**

4

5        Under Rule 23(e), the Court "must direct notice in a reasonable manner to all class

6  members who would be bound by a proposed settlement."  Fed. R. Civ. P. 23(e) (1).  The notice

7  provided to members of a class certified under Rule 23(b)(3) must be the "best notice

8  practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B).  Notice is satisfactory "if it

9  generally describes the terms of the settlement in sufficient detail to alert those with adverse

10  viewpoints to investigate and to come forward and be heard."  *Churchill Vill., L.L.C. v. Gen.*

11  *Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal citations omitted).

12        **A.        The Proposed Notice and Notice Plan are Fair and Adequate**

13        The proposed Notice and notice plan satisfy the requirements of Rule 23(e) and due

14  process.  The proposed Notice, submitted as Exhibit D to the Settlement Agreement (attached

15  as Exhibit 1 to the Ross Declaration), explains (1) the nature of the action and the terms of the

16  Settlement (including the Settlement Amount and costs), (2) how settlement payments will be

17  calculated, (3) the claims that will be released, (4) how the Class Member may collect his

18  portion of the Settlement, object to the Settlement, (5) in the case of members of the meal and

19  rest period settlement subclass and the previously un-notified class members, how to exclude

20  themselves from the action and the settlement, and (6) how the attorneys' fees and costs will be

21  paid.  *See Id.*  This information satisfies Rule 23(e).  *See, e.g., Villegas,* 2012 WL 5878390, at

22  *8 (approving a notice containing the same categories of information).

23        The proposed notice procedure provides Class Members with the best notice possible.

24  In addition to running a National Change of Address (NCOA) search upon receiving the class

25  address list from Defendant, the Settlement Administrator will skip trace any returned Class

26  Notice Packages and will re-mail those for which an updated address has been found.  This is

27  the best notice practicable.  *See Ohayon v. Hertz Corp.*, No. 5:11-cv-01662 EJD, at *5-6 (N.D.

28

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL. (510) 272-0169  FAX: (510) 272-0174

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOT. FOR PRELIMINARY APPROVAL OF
CLASS SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND SUPPLEMENTAL CLASS

1   Cal. Oct. 16, 2012) (NCOA search and reasonable diligence to obtain addresses for returned

2   mailings met the Rule 23 notice standards).

3       **B.**    **The Court Should Approve Special Notice to Recently Identified Class**
                **Members**

4

5       Plaintiffs also request that the Court approve a Supplemental Class and Settlement

6   Notice, pursuant to Federal Rule of Civil Procedure 23, affording recently identified class

7   members the opportunity to opt-out.  In the course of collecting and exchanging data for

8   purposes of mediation, Defendants identified approximately seventy-eight (78) additional

9   persons meeting the class definition.  Ross Decl. ¶ 62 .  As Defendant mistakenly omitted these

10  persons from the original class list provided to Plaintiffs, these Class Members did not receive

11  the original class notice sent in 2009 and thus did not have the opportunity to opt-out. *Id.*

12      In order to provide these persons the chance to opt-out pursuant to Rule 23, Plaintiffs

13  propose that the Court approve a Supplemental Class and Settlement Notice to be sent to the

14  approximately 78 class members in conjunction with the Claim Form.  Ross Decl., Ex. 1 at  Ex.

15  E.  The special notice form provides the previously omitted class members the chance to opt-

16  out, as well as explaining their options to submit a claim form, object to the Settlement, appear

17  in Court, or do nothing.  *Id.*

18  **IV.    THE COURT SHOULD SET A FINAL APPROVAL HEARING**

19      Finally, the Court should set a hearing for final approval of the Settlement.  The Parties

20  propose Plaintiffs' counsel's application for attorneys' fees and costs and awards of Service

21  Awards for the Named Plaintiffs, be filed and served no later than 20 days after the Court grants

22  preliminary approval, and that the other papers in support of final approval are filed 35 days

23  before the final approval hearing.

24

25

26

27

28

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL. (510) 272-0169  FAX: (510) 272-0174

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOT. FOR PRELIMINARY APPROVAL OF
CLASS SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND SUPPLEMENTAL CLASS
Case No. 3:05-cv-38 EMC

1

## <u>CONCLUSION</u>

2        For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) grant

3  preliminary approval of the proposed Settlement;  (2) certify the Meal and Rest Period

4  Settlement Subclass; (3) approve the form, content, and method of distribution of the Notice,

5  Supplemental Class and Settlement Notice, and Claim Form; (4) appoint Rust  Consulting as

6  Settlement Administrator; and (5) schedule a hearing regarding final approval of the proposed

7  Settlement.

8

9                                                      Respectfully submitted,

10  DATED:  September 15, 2015              **LEONARD CARDER, LLP**

11

12                                          By:  _/s/ Beth Ross_____
                                                   Beth Ross
13                                                 Aaron Kaufmann
                                                   David Pogrel
14                                                 Elizabeth Gropman

15                                          *Attorneys for Plaintiffs and the Plaintiff Class*

16

17

18

19

20

21

22

23

24

25

26

27

28

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL. (510) 272-0169  FAX: (510) 272-0174

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOT. FOR PRELIMINARY APPROVAL OF
CLASS SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND SUPPLEMENTAL CLASS
Case No. 3:05-cv-38 EMC