1  CAROLYN KUBOTA (SBN 113660)
   ckubota@omm.com
2  SCOTT M. VOELZ (SBN 181415)
   svoelz@omm.com
3  O'MELVENY & MYERS LLP
   400 South Hope Street
4  Los Angeles, California 90071
   Tel:  (213) 430-6000
5  Fax:  (213) 430-6407
6
7  Attorneys for Defendant FedEx Ground
   Package System, Inc.
8

9                  **UNITED STATES DISTRICT COURT**

10                 **NORTHERN DISTRICT OF CALIFORNIA**

11

| | |
|---|---|
| 12  DEAN ALEXANDER, et al. | Case No: 3:05-cv-38 EMC |
| 13            Plaintiffs, | **DEFENDANT'S OPPOSITION TO PROPOSED INTERVENOR'S MOTION TO INTERVENE AND OTHER RELATED REQUESTS FOR RELIEF** |
| 14       vs. | |
| 15  FEDEX GROUND PACKAGE SYSTEM, INC., et al., | |
| 16 | Judge:         Hon. Edward M. Chen |
| 17            Defendant. | Hearing Date:  October 15, 2015 |
| | Time:          1:30 p.m. |

## I. INTRODUCTION

Proposed Intervenor Zohrabians's theory for intervention is a moving target. He began by arguing that the pre-August 2011 meal-and-rest-break claims were not certified, and that he should be allowed to intervene to seek to certify a subclass to do so. Motion to Intervene at 5–6, *Alexander v. FedEx Ground Package Sys., Inc.*, No. 3:05-cv-00038 (N.D. Cal. Aug. 21, 2015), Dkt. No. 135-1. But realizing the statute of limitations and merits-based hurdles that such a claim would have to overcome, he recently changed course completely, arguing that meal-and-rest-break claims were in fact certified under a different cause of action—California Code of Business & Professions Section 17200. He essentially argues that he should be permitted to intervene now because the plaintiff class has not secured enough compensation in exchange for the release of those Section 17200-based claims. His initial argument was wrong, and ignored the applicable statute of limitations and other barriers to certification. His new theory is likewise wrong, and ignores the clear procedural history of this case.

Importantly, at no point in Mr. Zohrabians's meandering attempts to justify intervention has he answered the question the Court ordered him to brief, as he failed to articulate any colorable reason why he would be prejudiced by being required to bring a new meal-and-rest-break action, as opposed to being permitted to intervene here. Nor has he shown why his complaints, which now are premised on his apparent dissatisfaction with the amount of compensation received in exchange for the release of the Section 17200 claims here, cannot be addressed through an objection rather than intervention.

## II. PROPOSED INTERVENOR'S PURPORTED "PREJUDICE" JUSTIFYING INTERVENTION IS PREMISED ON A CERTIFIED SECTION 17200-BASED MEAL-AND-REST-BREAK CLAIM THAT INDISPUTABLY DOES NOT EXIST

Mr. Zohrabians's only answer as to how he would be prejudiced by a denial of intervention here is that it would force him to abandon what he believes is a preexisting certified class of pre-2011 meal-and rest-break claims. *But this certified class simply does not exist*, and it is now clear that Mr. Zohrabians's concerns about the settlement amount to an attack on its adequacy, which is more properly handled in the objection process.

### A. A Section 17200 Claim Was Certified, but It Did Not Include Derivative Claims for Meal- and Rest-Break Violations

Zohrabians's "research" has "uncovered" what the parties to this litigation have known for seven years: the MDL Court certified Plaintiffs' derivative class claims under the UCL, Cal. Code Bus. & Prof. § 17200, allowing Plaintiffs to seek an additional year's worth of compensation under the statute of limitation for their Labor Code claims under Sections 221, 223, 450, 510, 1194, and 2802. This certified UCL claim, however, indisputably did not include derivative claims based on meal- and rest-break violations.

Zohrabians is correct that Plaintiffs' class certification Motion incorporated a UCL claim, and that one of the more than half a dozen allegations supporting the UCL claim in the Complaint was a meal- and rest-break violation. *See* Motion to Certify Class of California Plaintiffs at 2, *In re FedEx Ground Package Sys., Inc.*, No. 05-md-00527 (N.D. Ind. Mar. 12, 2007), MDL Dkt. No. 547 (moving to certify Plaintiffs' eighth cause of action but not referencing which underlying business practices would be certified); 3d Am. Compl. ¶ 81. FedEx Ground's Opposition, however, pointed out that Plaintiffs had not moved for certification of the meal-and-rest-break claim. *See* FXG Opposition to Class Certification at 19 n.26, *In re FedEx Ground Package Sys., Inc.*, No. 05-md-00527 (N.D. Ind. Apr. 27, 2007), MDL Dkt. No. 610.

More significantly, Plaintiffs' reply brief in support of their motion made clear that—just as they were no longer seeking to certify the meal-and-rest-break claim under Cal. Lab. Code § 226.7—they were likewise not including meal-and-rest-break violations among the unfair business practices that formed their derivative claim under Section 17200. In the introductory paragraph of Section III.C., Plaintiffs specifically listed the Labor Code Section claims they contended shared common issues of fact and law, and which they sought to certify. These included, "reimbursement of necessary expenses (§ 2802), illegal wage deductions (§§ 221 & 223), coercion in the purchase of goods and services (§ 450), unpaid overtime wages (§§ 510 & 1194 et seq., and penalties (§ 2699), *and the associated claim under California Business & Professions Code § 17200 ("UCL").*" Reply Memorandum (Corrected) at 12 (emphasis added), *In re FedEx Ground Package Sys., Inc.*, No. 05-md-00527 (N.D. Ind. May 29, 2007), MDL Dkt.

1  No. 672.  Likewise, later in that same portion of the brief, in Section III.C.4, Plaintiffs represented
2  that "the UCL challenges the same practices at issue in Plaintiffs' other Labor Code claims, as
3  discussed in Section III(B)(1)–(3) above [sic[1]]," referring to sections discussing reimbursement of
4  necessary expenses, unpaid overtime wages and illegal wage deductions, and illegal coercion.  *Id.*
5  That is, Plaintiffs in their motion explicitly excluded the meal-and-rest-break component from
6  their Section 17200 claim, and that component was accordingly not at issue before the court when
7  it certified the claim in March 2008.

8  Zohrabians points to a 2014 letter sent by class counsel to class members purporting to
9  demonstrate class counsel's awareness of his imagined classwide meal-and-rest-break claim.
10 Any mention of classwide claims for meal- and rest-break violations is better explained, however,
11 as a mistake on the part of class counsel given their clear statements in the class certification
12 briefing.  In any event, FedEx cannot be bound by a privileged communication to class members
13 that it never saw or had the opportunity to correct or challenge.  And nothing in this letter changes
14 the reality of the procedural history of this case, or the fact that the meal-and-rest-break claims
15 were never a part of the certified UCL claim.

16 Class members' certified claims will be barred in subsequent suits through the terms of
17 the release and the doctrine of collateral estoppel.  However, because there was never a certified
18 claim for meal-and-rest-break violations, nothing prevents Zohrabians and his supposed putative
19 class of pre-August 2011 meal and rest break claimants from seeking to assert them in another
20 action—subject to the procedural, statute of limitations, class certification, and merits-based
21 arguments against them (which FXG contends are dispositive).  Mr. Zohrabians's brief provides
22 no evidence of any potential prejudice resulting from the need to bring a new action—the very
23 reason the Court ordered this briefing.

---

[1] Plaintiffs' brief did not contain any sections marked III.B.1, III.B.2, or III.B.3.  This reference is clearly a typographical error, and Plaintiffs meant to refer to the immediately preceding sections III.C.1 ("Reimbursement of Necessary Expenses (Labor Code § 2802)"), III.C.2 ("Unpaid Overtime Wages (Labor Code Sections 510 and 1194 et seq.) and Illegal Wage Deductions (Labor Code Sections 221 and 223)"), and III.C.3 ("Illegal Coercion (Labor Code Section 450)"), which collectively form Section III.C of the brief.

### B. Zohrabians Should Not Be Permitted To Intervene to Challenge the Adequacy of the Settlement.

Even if Zohrabians were correct that the meal-and-rest-break claim had been certified through Section 17200—which he is not—his challenge is at heart only to the adequacy of the value placed on the class members' Section 17200 claims in the proposed settlement in exchange for the release of those claims. But intervention at the preliminary approval stage is not an appropriate mechanism to challenge the adequacy of compensation offered by a proposed settlement. *See Cohorst v. BRE Props.*, 2011 U.S. Dist. LEXIS 87342, at *12–13 (S.D. Cal. July 19, 2011) (noting that putative class members have no right to intervene simply to oppose the adequacy of a preliminary settlement, and that such individuals may either opt-out of the settlement or formally object after preliminary approval); *Lane v. Facebook, Inc.*, 2009 U.S. Dist. LEXIS 103668, at *20 (N.D. Cal. Oct. 23, 2009) (Seeborg, J.) (denying proposed intervenors' motion to intervene to oppose the preliminary approval of a proposed settlement, noting that "Proposed Intervenors . . . have failed to establish that their rights to raise these issues are not adequately protected through the process for submitting objections that will follow upon preliminary approval of the settlement agreement."); *see also Devlin v. Scardelletti*, 536 U.S. 1, 3–4 (2002) (granting objectors in class actions the right to appeal without intervention).

Under the proposed settlement, class members receive adequate compensation for the release of their Section 17200 claims, as evidenced by the damages period extending through the period 2000–2001 by operation of Section 17200's longer statute of limitations. Again, class members' Section 17200 claim does not actually include claims for meal- and rest-break violations. But even if it did, as Zohrabians believes, class members are properly compensated for the release of those claims.

## III. ZOHRABIANS'S REQUESTED INTERVENTION WOULD VIOLATE THE ONE-WAY INTERVENTION RULE

The modern Rule 23 was designed in part to avoid "one-way intervention," a "perceived defect in the former Rule" that allowed a plaintiff to intervene in a class action after an adjudication favoring the class. *See Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 545 (1974); *Schwarzschild v. Tse*, 69 F.3d 293, 295 (9th Cir. 1995). To prevent the abuses such a procedure

1  invites, courts generally will not allow class certification motions after a ruling on the merits. *See*
2  *Schwarzschild*, 69 F.3d at 295.

3  Yet that is exactly what Zohrabians seeks to do here. Having the benefit of a Ninth
4  Circuit decision holding that his putative subclass members were employees as a matter of law
5  during the relevant time period, Zohrabians wants to certify a new class that would resuscitate
6  long-abandoned class claims for meal- and rest-break violations. Such an outcome would place
7  Zohrabians in a no-lose position by allowing his claims to be tolled indefinitely, then reasserted in
8  a motion for class certification after he learns, at least partly, the outcome as to liability. *See*
9  *Corns v. Laborers Int'l Union of N. Am.*, 2014 U.S. Dist. LEXIS 44997, at *12–14 (N.D. Cal.
10 Mar. 31, 2014) (Gonzalez Rogers, J.); *see also Tschudy v. J.C. Penney Corp.*, 2015 U.S. Dist.
11 LEXIS 115652, at *17–18 (S.D. Cal. Aug. 28, 2015); *Villa v. S.F. Forty-Niners, Ltd.*, 2015 U.S.
12 Dist. LEXIS 63568, at *8–9 (N.D. Cal. May 13, 2015) (Davila, J.); *Brown v. Hain Celestial Grp.,*
13 *Inc.*, 2014 U.S. Dist. LEXIS 161036, at *20–21 (N.D. Cal. Nov. 14, 2014) (Beeler, J.); *Gessele v.*
14 *Jack in the Box, Inc.*, 2012 U.S. Dist. LEXIS 120377, at *6–7 (D. Or. Aug. 24, 2012).

15 But the time for class certification motions has long since passed. Under the one-way
16 intervention rule, Zohrabians cannot now come in with a new motion for class certification on an
17 issue whose merits have been partially determined on summary judgment.

18 **IV.    FEDEX GROUND WOULD BE PREJUDICED BY THE REVIVAL OF LONG-STALE CLAIMS FOR MEAL- AND REST-BREAK VIOLATIONS.**
19
20 "The primary purpose of a statute of limitation is to prevent the assertion of stale claims
21 by plaintiffs who have failed to file their action until evidence is no longer fresh and witnesses are
22 no longer available." *Wood v. Vista Manor Nursing Ctr.*, 2006 U.S. Dist. LEXIS 76146, at *8
23 (N.D. Cal. Oct. 5, 2006) (Ware, J.) (quoting *Addison v. State*, 21 Cal. 3d 313, 317 (1978)).
24 Where the statute of limitations is tolled, as Zohrabians has sought to do here one way or the
25 other, the prejudice to defendants becomes greater as more time passes from the expiration of the
26 limitations period. *See Order of R.R. Telegraphers v. Ry. Express Agency, Inc.*, 321 U.S. 342,
27 349 (1944) ("[The] right to be free of stale claims in time comes to prevail over the right to
28 prosecute them.").

5

DEFENDANT'S OPPOSITION TO MOTION
TO INTERVENE AND OTHER RELIEF
NO. 3:05-cv-38 EMC

FedEx has implemented its discovery and fact-gathering in reliance on the fact that no meal-and-rest-break claims were certified. Fact discovery for *Alexander* closed on August 31, 2007—five months after Plaintiffs filed motions for certification that excluded the meal-and-rest-break claims. Order, *In re FedEx Ground Package Sys., Inc.*, No. 05-md-527 (N.D. Ind. June 29, 2007), MDL Dkt No. 766. Although FedEx has diligently preserved evidence relating to all certified claims, FedEx did not use those months to seek classwide discovery related to the meal-and-rest-break claims. As time passes fewer witnesses are available to defend FedEx against these claims, and FedEx did not conduct preservation depositions on potential witnesses on issues relating to meal or rest breaks. Nor, because the claims were never certified, did FXG seek classwide discovery on the merits of those claims.

At some point, FedEx needs to be able to rely on the decisions made by class counsel and the MDL court in shaping class members' claims. Reinstating class claims for meal-and-rest-break violations more than eight years after they were abandoned would be a sea change in this litigation. The Middle District of Florida recognized that the same prejudice would befall FedEx in the *Carlson* case, another case remanded from the same MDL court as this one, when the plaintiffs in that case attempted to add new class claims after remand. *Carlson v. FedEx Ground Package Sys., Inc.*, No. 05-cv-01380 (M.D. Fla. May 3, 2012), Dkt. No. 63.[2] Noting that the deadline for class certification had expired per the MDL court's scheduling order, the court held that FedEx "would be unduly prejudiced if Plaintiffs were permitted to change their litigation strategy seven years after Plaintiffs filed their first complaint, and five years after the deadline to move for class certification expired." *Id.* at 6. The prejudice is even greater in this case because it has been over eight years since the deadline for motions for class certification set forth in the MDL Court's Scheduling Order.

### V. ZOHRABIANS SHOULD NOT BE PERMITTED TO INTERVENE BECAUSE HIS PRE-2011 MEAL-AND-REST-BREAK CLAIMS ARE UNLIKELY TO SUCCEED ON CERTIFICATION OR ON THE MERITS

Finally, even if Zohrabians were permitted to intervene and file a motion for class certification on long-stale claims for meal- and rest-break violations, that class certification

---

[2] This Order is attached as Exhibit A to FedEx's concurrently filed Request for Judicial Notice.

1  motion would fail.  In 2007, the *Alexander* Plaintiffs made a strategic decision not to move to
2  certify the meal-and-rest-break claims based on their assessment of the legal landscape at the
3  time.  Since 2007, that landscape has become, if anything, less favorable to the certification of
4  these claims.

5  In *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004 (2012), the California Supreme
6  Court held that employers are not obligated to ensure that employees take the required meal
7  breaks.  *Id.* at 1034 ("An employer must relieve the employee of all duty for the designated
8  period, but need not ensure that the employee does no work.").  "[T]he employer is not obligated
9  to police meal breaks and ensure no work thereafter is performed." *Id.* at 1040.  In that case, a
10  group of plaintiffs brought a class action on behalf of cooks, wait staff, and other employees who
11  worked at the defendant's restaurants, alleging that the defendant prevented them from taking
12  meal and rest breaks.  *Id.* at 1018–20.  The defendant responded that its policies made such breaks
13  available, but that some employees chose not to take them in some instances.  *Id.*  The California
14  Supreme Court held that while "[e]mployees cannot manipulate the flexibility granted them by
15  employers to use their breaks as they see fit to generate such liability[,] . . . an employer may not
16  undermine a formal policy of providing meal breaks by pressuring employees to perform their
17  duties in ways that omit breaks." *Id.* at 1040.  The court remanded the class certification issue for
18  a determination of whether individual issues related to when and why employees took breaks
19  would predominate over common questions.  *Id.* at 1050–51.

20  More recently in *Alcantar v. Hobart Serv.*, 2015 U.S. App. LEXIS 15687 (9th Cir. Sept. 3,
21  2015), the Ninth Circuit found that a district court did not abuse its discretion in denying
22  certification to a class that asserted meal-and-rest-break claims in a context similar to this one.  In
23  that case, the plaintiff was employed as a service technician for a company that manufactures
24  commercial food equipment.  *Id.* at *4.  Service technicians spent most of their time working on-
25  site at customer locations, outside the supervision of their employer.  *Id.* at *4–5.  The district
26  court held, and the Ninth Circuit affirmed, that the plaintiff's meal-and-rest-break claim could not
27  satisfy Rule 23(b)(3)'s predominance requirement because individualized questions of why

28

technicians missed their meal or rest breaks would predominate over common questions. *Id.* at *15.

These cases would be dispositive here. As the record in *Alexander* shows, FedEx drivers had ability and discretion to take breaks as needed. Indeed, Section 1.15 of the Operating Agreement, entitled "Discretion of the Contractor to Determine Method and Means of Meeting Business Objectives," specifically gives unfettered discretion to the Contractor in this regard, stating, "For example, no officer, agent or employee of FedEx Ground shall have the authority to prescribe . . . whether or when the Contractor is to take breaks." To the extent that Plaintiffs or the Proposed Intervenor allege some informal policy pressured drivers not to take breaks, this would be a highly individualized inquiry differing from terminal-to-terminal and from driver-to-driver, which would preclude certification of any revived meal-and-rest-break subclass. This class certification analysis would be no different whether Zohrabians litigated his claim in a separate suit or was permitted to intervene here. But given the potential disruptions to the settlement process by permitting intervention, Zohrabians should not be permitted to intervene here only to assert untenable class claims.

## **CONCLUSION**

For the foregoing reasons, Zohrabians should not be permitted to intervene in this case. His meal-and-rest-break claim is time-barred, and to the extent that he objects to the adequacy of the proposed settlement, he may do so with a formal objection after preliminary approval.

Dated: September 17, 2015

By: /s/ Scott Voelz
  Carolyn Kubota
  Scott M. Voelz

O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California 90071
Tel: (213) 430-6000

Attorneys for Defendant FedEx Ground Package System, Inc.

**CERTIFICATE OF SERVICE BY CM/ECF AND BY MAIL**

I am a citizen of the United States and employed in Los Angeles County, California, at the office of a member of the bar of this Court at whose direction this service was made. I am over the age of eighteen years and not a party to the within action. I am a resident of or employed in the county where the service described below occurred. My business address is 400 South Hope Street, Los Angeles, California 90071-2899. I am readily familiar with this firm's practice for collection and processing of correspondence for mailing with the United States Postal Service. In the ordinary course of business, correspondence collected from me would be processed on the same day, with postage thereon fully prepaid and placed for deposit that day with the United States Postal Service. On September 17, 2015, the following was served via CM/ECF or by mail:

**DEFENDANT'S OPPOSITION TO PROPOSED INTERVENOR'S MOTION TO INTERVENE AND OTHER RELATED REQUESTS FOR RELIEF**

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT'S OPPOSITION TO PROPOSED INTERVENOR'S MOTION TO INTERVENE AND OTHER RELATED RELIEF**

I put a true and correct copy thereof in a sealed envelope, with postage fully prepaid, and placing the envelope for collection and mailing today with the United States Postal Service in accordance with the firm's ordinary business practices, addressed as follows:

> Elizabeth Cara Morris
> Leonard Carder, LLP
> 1330 Broadway, Suite 1450
> Oakland, CA 94612

I declare under penalty of perjury under the laws of the United States that the above is true and correct. Executed on September 17, 2015, at Los Angeles, California.

*/s/ Scott Voelz*
Scott M. Voelz