UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEAN ALEXANDER, *et al.*,<br><br>    Plaintiffs,<br><br>        v.<br><br>FEDEX GROUND PACKAGE SYSTEM, INC., *et al.*,<br><br>    Defendants. | Case No.  05-cv-00038-EMC<br><br>**ORDER DENYING ZOHRABIANS'S MOTION TO INTERVENE AND FOR APPOINTMENT; AND GRANTING ZOHRABIANS'S MOTION FOR LEAVE TO FILE REPLY**<br><br>Re: Docket Nos. 135, 172 |

Currently pending before the Court is Henrik Zohrabians's motion to intervene and for appointment of subclass counsel and subclass representative.  The Court held a hearing on *inter alia*, Mr. Zohrabians's motion on September 3, 2015.  At the hearing, the Court asked the parties to provide supplemental briefing.  The parties did so, after which Mr. Zohrabians's asked for leave to file another brief.  Having considered the parties' submissions, the Court hereby **GRANTS** Mr. Zohrabians's motion for leave to file a second supplemental brief but **DENIES** his motion to intervene and for appointment.

## I.        FACTUAL & PROCEDURAL BACKGROUND

This litigation has a lengthy history.  It was initiated in 2004, put into MDL proceedings, appealed to the Ninth Circuit, remanded to this Court, and so forth.  For purposes of this opinion, the Court focuses only on those events that are directly relevant to the pending motion.

Plaintiffs filed a class action against Defendant FedEx Ground Package System, Inc. ("FXG"), asserting, in essence, wage-and-hour claims.  While in MDL proceedings, the MDL court granted in part and denied in part Plaintiffs' motion for class certification as to certain claims.  *See* MDL Docket No. 1119 (order, filed on March 25, 2008).  The MDL court

United States District Court
Northern District of California

1    subsequently granted FXG's motion for summary judgment.  *See* Docket No. 2097 (order, filed on

2    August 11, 2010).  Plaintiffs appealed to the Ninth Circuit and prevailed.  *See generally Alexander*

3    *v. FedEx Ground Package Sys.*, 765 F.3d 981 (9th Cir. 2014).

4          After the appeal, FXG filed several motions to limit liability and/or damages before this

5    Court (as the case had been remanded).  *See* Docket Nos. 108, 111, 113 (motions, filed on May

6    21, 2015).  The parties then engaged in settlement discussions.  Those negotiations were

7    successful, and Plaintiffs thus filed a motion for preliminary approval of the settlement.  *See*

8    Docket No. 119 (motion, filed on July 2, 2015).  The Court held a hearing on the motion on

9    August 6, 2015.  At the hearing, the Court expressed concern about the settlement because of the

10   resolution of the meal-and-rest-break ("MRB") claim.

11         As represented by the parties, the MRB claim – though pled in the operative complaint –

12   was not presented to the MDL court for certification and thus was never certified.[1]  *See, e.g.*,

13   Docket No. 126 (Joint Supp. Br. at 10) (noting that Plaintiffs made a strategic decision not to seek

14   certification of the MRB claim because of the then-existing law).  The named Plaintiffs, however,

15   still pursued their individual MRB claims and, under the settlement, they would receive $1 million

16   to release those individual claims.  What troubled the Court was that, under the settlement, the

17   other class members were *also* releasing their MRB claims but were not getting any compensation

18   for that release.  *See* Docket No. 128 (Order at 1-2).  Accordingly, the Court ordered supplemental

19   briefing from the parties and set a further hearing on the motion for September 3, 2015.  *See*

20   Docket No. 131 (civil minutes).

21         On August 21, 2015, the day after the parties provided their supplemental brief, Mr.

22   Zohrabians filed the currently pending motion to intervene and for appointment.  Not surprisingly,

23   Mr. Zohrabians's motion cited the Court's concerns about the MBR claim, as articulated at the

24   August 6 hearing.  The Court issued an order allowing Mr. Zohrabians to appear at the September

25   3 hearing.  *See* Docket No. 136 (order).

26         At the September 3 hearing, the parties explained that they had agreed to a modified

27

28   [1] As discussed below, the parties now have a dispute as to whether a MRB claim was in fact
     certified by the MDL Court.

United States District Court
Northern District of California

1    settlement to address the Court's concerns about the MBR claim.  Under the settlement, the class

2    would now get compensation for the MBR claim, but only for the period starting August 2011.

3    Because the settlement did not cover any MBR claim that predated August 2011, there would be

4    no release of that specific claim.  *See* Docket No. 144 (Tr. at 5).  The settlement did not include a

5    pre-August 2011 MBR claim because of a potential statute-of-limitations problem.  *See, e.g.*,

6    *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1018-19 (9th Cir. 2000) (in considering

7    whether the statute of limitations was tolled during the pendency of a class action (named

8    *Anderson*), concluding that there was tolling but, "whatever tolling applied, it ceased once the

9    deadline for seeking class certification [in *Anderson*] passed on October 15, 1996"; the *Anderson*

10   plaintiffs never moved for class certification).

11          Because there was no release of the pre-August 2011 MBR claim, the Court pressed Mr.

12   Zohrabians as to why intervention was necessary in this case.  He could object in *this* case to any

13   resolution of the August 2011-and-on MBR claim, and, if he wanted to proceed with a pre-August

14   2011 MBR claim, he could file a *new* action – with the court presiding over that action addressing

15   any statute-of-limitations issues, including tolling under *American Pipe & Construction v. Utah*,

16   414 U.S. 538 (1974),[2] and equitable tolling.  *See, e.g.*, Docket No. 144 (Tr. at 30-33) (Court,

17   stating "You have the right to raise everything that happens in this case in this new case[;] [t]hat's

18   why I'm saying why do you need intervention in this case"; also asking, "How are you

19   prejudiced?  How are your barred from raising the argument – the exact argument you just raised

20   in the next case?").  As to prejudice, Mr. Zohrabians claimed that *American Pipe* tolling and

21   equitable tolling arguments would be precluded if he were to file a separate action.  *See* Docket

22   No. 144 (Tr. at 35).  The Court then asked the Mr. Zohrabians and the parties to provide

23   supplemental briefing on "[w]hat prejudice is there in terms of preserving all of these rights –

24   *America[n] Pipe*, equitable tolling, whatever rights you have, the right to class certification – in

25   the second action as opposed to the current action?"  Docket No. 144 (Tr. at 45).

26

27   _____

28   [2] In *American Pipe*, the Supreme Court noted that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action."  *American Pipe*, 414 U.S. at 554.

United States District Court
Northern District of California

1    Mr. Zohrabians and the parties have now provided their supplemental briefing, including a

2    second supplemental brief from Mr. Zohrabians which the Court shall permit.  In his papers, Mr.

3    Zohrabians no longer claims – as he did at the hearing – that he could not raise *American Pipe*

4    tolling or equitable tolling in a second action.  Instead, Mr. Zohrabians has adopted a completely

5    new position that he never articulated either in his previous papers or at the September 3 hearing –

6    *i.e.*, that, contrary to what the parties have represented to this Court, the MDL court *did in fact*

7    *certify the MBR claim*.  According to Mr. Zohrabians, that being the case, Plaintiffs should not

8    have abandoned the pre-August 2011 MBR claim, and the fact that Plaintiffs did so shows that

9    they cannot fairly represent class members who have a MBR claim that predates August 2011 –

10   thus necessitating Mr. Zohrabians's intervention.  Mr. Zohrabians also argues that, because the

11   MBR claim was in fact certified, he would be prejudiced by having to bring a new action for pre-

12   August 2011 conduct because he may be forced to make a tolling argument that he should not

13   have to make at all.

14                                  **II.    DISCUSSION**

15   A.    Legal Standard

16          Federal Rule of Civil Procedure 24 governs intervention, both intervention as of right and

17   permissive intervention.  A person or entity has the right to intervene (assuming a timely motion to

18   do so) if, *e.g.*, it "claims an interest relating to the property or transaction that is the subject of the

19   action, and is so situated that disposing of the action may as a practical matter impair or impede

20   the movant's ability to protect its interest, unless existing parties adequately represent that

21   interest."  Fed. R. Civ. P. 24(a)(2).  A person or entity may be permitted to intervene (again,

22   assuming a timely motion to do so) if, *e.g.*, it "has a claim or defense that shares with the main

23   action a common question of law or fact," although a "court must consider whether the

24   intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed.

25   R. Civ. P. 24(b)(1)(B).

26          As the Court noted at the September 3 hearing, in deciding the issue of intervention, the

27   critical question for the Court is whether Mr. Zohrabians's ability to protect his interests would be

28   compromised absent intervention.

                                              4

United States District Court
Northern District of California

1   B.      Alleged Certification of MBR Claim

2        As noted above, Mr. Zohrabians's argument that intervention is necessary is predicated on

3   his contention that the MBR claim was in fact certified by the MDL Court (and has now

4   effectively been abandoned in the proposed settlement).

5        As background, the current operative complaint (*i.e.*, the third amended complaint

6   ("TAC")) asserts a MBR violation in two causes of action: (1) directly through the fourth cause of

7   action, titled "Failure to Provide Meal and Break Periods In Violation of California Labor Codes

8   §§ 510, 226.7 and IWC 9," and (2) indirectly through the eighth cause of action, titled "Unfair

9   Business Practices in Violation of California Business and Professions Code §§ 17200."  MDL

10  Docket No. 899 (TAC).  Notably, the § 17200 claim is based not only on a MBR violation but also

11  on, *e.g.*, other California Labor Code violations, which are implicated in the other causes of action

12  asserted by Plaintiffs.  As Plaintiffs allege in ¶ 81 of the TAC:

13        By all of the foregoing alleged conduct of failing to indemnify
          Plaintiffs and class members for work-related expenses, by failing to
14        notify Plaintiffs and class members of their rights under the FMLA,
          by interfering with, restraining or denying FMLA rights to plaintiffs
15        and class members, by failing and refusing to provide plaintiffs and
          class members with workers compensation insurance and
16        unemployment insurance benefits, by failing to pay overtime
          compensation to Plaintiffs and plaintiff class members who operate
17        trucks with a gross vehicle weight rating of less than 10,001 pounds,
          by failing and refusing to provide meal and/or rest periods, by
18        unlawfully deducting money from wages and coercing Plaintiffs and
          plaintiff class members to patronize Defendant and allied
19        companies, by intentionally, reckless and/or negligently
          misrepresenting to Plaintiffs and plaintiff class members the true
20        nature of their employment status, and by engaging in the other acts
          and conduct alleged above, FEG and FHD have committed, and are
21        continuing to commit, ongoing unlawful, unfair and fraudulent
          business practices within the meaning of Cal. Bus. & Professions
22        Code §17200 et seq.

23  TAC ¶ 81.

24        The Court has reviewed the papers submitted by the parties and Mr. Zohrabians, as well as

25  other evidence of record in this case, including the MDL proceedings, and finds, conclusively, that

26  the MBR claim was not certified, either through the fourth cause of action or the eighth.  The

27  Court takes note of the following:

28        When Plaintiffs filed their motion for class certification before the MDL Court, they did

5

*not* ask for certification of the fourth cause of action, nor did they invoke California Labor Code § 226.7 or § 512.  *See* Ross Decl., Ex. A (Mot. at 2) (asking the MDL Court to "[a]llow[] this action to proceed as a state-wide class action as to Plaintiffs['] Second, Fifth, Sixth, Eighth, Ninth and Tenth Causes of Action for damages, rescission, restitution, declaratory and injunctive relief arising under California Labor Code Sections 201, 221, 223, 224, 450, 2699 and 2802, California Business and Professions Code Sections 17200 and 17203 . . . .").

While, in the memorandum supporting the class certification memorandum, Plaintiffs did reference California Labor Code §§ 226.7 and 512, *see* Ross Decl., Ex. B (Memo. at 11) (arguing that "[t]he claims under Labor Code §§ 221, 223, 224, *226.7*, 450, *512*, 2699, and 2802 . . . raise common questions beyond the threshold question of employee status"), this was clearly an error, as nowhere was a MBR violation substantively addressed in the memorandum.  This stands in sharp contrast to the substantive discussion of other claimed Labor Code violations.  *See, e.g.*, Ross Decl., Ex. B (Memo. at 10-13) (discussing California Labor Code §§ 2802, 221, 2699, and 510); Ross Decl., Ex. D (Reply Memo. at 12-16) (same).  Furthermore, FXG specifically asserted, in its opposition memorandum, that, even though Plaintiffs had referenced Labor Code §§ 226.7 and 512 in their papers, Plaintiffs had "*not* moved to certify their claim regarding meal and break periods."  Ross Decl., Ex. C (Opp'n Memo. at 19 n.26) (emphasis added).  Plaintiffs never disputed this assertion in their reply memorandum, which confirms that certification of the MBR claim was in fact not sought.

Further confirmation to that effect is reflected in the parties' Joint Proposed Pretrial Order, filed with the MDL Court on January 24, 2011, which stated, *inter alia*: "Plaintiffs did not move to certify their claims for meal and break period violation (Fourth Cause of Action) or for fraud (Seventh Cause of Action)."  MDL Docket No. 2450 (Prop. Pretrial Order at 10).

As Plaintiffs did not move for certification of the fourth cause of action, the MDL Court could not have certified a class based on the fourth cause of action.

While Plaintiffs did move for certification of their § 17200 claim, *see* Ross Decl., Ex. A (Mot. at 2), and the MDL Court certified that claim, Plaintiffs did not ask for certification of the

United States District Court
Northern District of California

1   *entirety* of the § 17200 claim.[3]   Rather, Plaintiffs were seeking only certification of the § 17200

2   claim so that it would be coextensive with the underlying predicate claims on which certification

3   was sought.   This was made clear in the certification papers submitted by Plaintiffs to the MDL

4   Court.   For example:

5   •   "The UCL claim arises *out of the same practices* by which FXG deprive class members of

6       their rightfully-earned wages in violation of the California Labor Code."   Ross Decl., Ex.

7       B (Memo. at 14) (emphasis added).

8   •   "Common questions of fact predominate with regard to Plaintiffs' claims under the

9       California Labor Code for reimbursement of necessary expenses (§ 2802), illegal wage

10      deductions (§§ 221 & 223), coercion in the purchase of goods and services (§ 450), unpaid

11      overtime wages (§§ 510 & 1194 *et seq.*), and penalties (§ 2699), *and the associated claim*

12      under California Business & Professions Code § 17200.").   Ross Decl., Ex. D (Memo. at

13      12) (emphasis added).

14  •   "The UCL challenges *the same practices at issue in Plaintiffs' other Labor Code claims*, as

15      discussed in Section III(B)(1)-(3) above [none of which discussed a MBR violation]."

16      Ross Decl., Ex. D (Memo. at 16) (emphasis added).

17          This was also made clear in the parties' Joint Proposed Pretrial Order filed with the MDL

18  Court: "As to the Eighth and Ninth Causes of Action, Plaintiffs' claims have been adjudicated in

19  FXG's favor *to the extent* that they were based on the certified employment claims under the

20  California Labor Code which were adjudicated in FedEx's favor."   MDL Docket No. 2450 (Prop.

21  Order at 16) (emphasis added).

22          The fact that the notice sent to the class, *see* MDL Docket No. 1271-3 (class notice); MDL

23  Docket No. 1288 (order approving class notice), and the letter sent to the class from Plaintiffs'

24  counsel following the Ninth Circuit victory, *see* Docket No. 145-1 (Burton Decl., Ex. 3 (letter,

25

26  _____

    [3] According to Mr. Zohrabians, it was reasonable for Plaintiffs to have (purportedly) asked for
27  certification of the MBR claim through § 17200 because § 17200 has a long (four-year) statute of
    limitations.  *See* Docket No. 145 (Supp. Brief at 2-3 n.1).  But if, in fact, Plaintiffs were intent on
28  proceeding with a MBR claim, it would have made little sense to invoke *only* the eighth cause of
    action (§ 17200) and not both the eighth and fourth causes of action.

1    dated September 11, 2014), referenced the MBR violation is immaterial.  That fact may inform an

2    equitable tolling argument.  But as both Plaintiffs and FXG point out, "it does not somehow

3    retroactively alter the MDL Court's Class Certification Order into one that certified causes of

4    action that Plaintiffs did not previously seek to litigate on a class-wide basis."  Docket No. 168

5    (Supp. Br. at 4).

6            To the extent Mr. Zohrabians has asked the Court to defer ruling on the issue of whether

7    the MBR claim was certified, either directly or indirectly, *see* Docket No. 172-1 (2d Supp. Br. at

8    7), the Court denies that request.  Mr. Zohrabians suggests that fuller briefing is needed but the

9    matter has already been sufficiently briefed.  As for Mr. Zohrabians's suggestion that discovery is

10   needed, the Court disagrees.  The question of what claims were certified is informed objectively

11   by the court records, not by, *e.g.*, the subjective intent of counsel, and the record is more than

12   sufficiently developed on the issue.  It is unclear exactly what discovery Mr. Zohrabians believes

13   is necessary – *e.g.*, would he be deposing Judge Miller (the MDL judge) to ascertain his

14   understanding of the motion for class certification?  Or would he be deposing Plaintiffs' and

15   FXG's litigation counsel?  What relevant evidence could be obtained which is not already in the

16   court records?  The Court refuses to go down that route.

17           Furthermore, the Court emphasizes that nothing supports the chicanery suggested by Mr.

18   Zohrabians – *i.e.*, that a MBR claim in some form was certified and that the parties have falsely

19   represented to this Court that it was not.  While the Court has had concerns about the settlement, it

20   is clear that this has been a hard-fought case, and the settlement provides for substantial recovery

21   to the class.  The Court also takes this opportunity to advise Mr. Zohrabians that, now that he has

22   entered the fray, he and his counsel also have Rule 11 obligations, and it seems odd, to say the

23   least, that he has leveled serious charges against the parties while at the same time praising them.

24   *See, e.g.*, Docket No. 144 (Tr. at 18, 20-21) (counsel for Mr. Zohrabians stating "my firm is not

25   going to sit here and demand somehow that these people are not good counsel" and "[w]e have

26   nothing against class – they have done a great job in this case. . . .  Remarkable job, they really

27   have[;] I can't say anything bad about them, but I am concerned."); Docket No. 170 (Supp. Br. at

28   6) (giving "due respect to the work undertaken by these same counsel to date").  The Court is also

United States District Court
Northern District of California

United States District Court
Northern District of California

1    troubled by shifting theories asserted by Mr. Zohrabians; this raises concerns about Mr.

2    Zohrabians's real goal.

3         Finally, the Court notes that, to the extent Mr. Zohrabians contends that Plaintiffs *should*

4    have moved for certification of the MBR claim, and the failure to do so raises questions about the

5    adequacy of Plaintiffs and their counsel, see Docket No. 145 (Supp. Br. at 6), the Court disagrees.

6    As the Court noted at the September 3 hearing, counsel made a "good faith . . . judgment . . . that

7    meal-and-rest-break claims are hard to certify, particularly under . . . the pre-*Brinker* law as it

8    existed then." Docket No. 144 (Tr. at 17). Moreover, even post-*Brinker*, certification on a MBR

9    claim is not an easy task, as evidenced by the Ninth Circuit's recent decision in *Alcantar v. Hobart*

10   *Service*, No. 13-55400, 2015 U.S. LEXIS 15687 (9th Cir. Sept. 3, 2015). Furthermore, the case

11   cited by Mr. Zohrabians is distinguishable as it involved res judicata concerns, *see Pearl v. Allied*

12   *Corp.*, 102 F.R.D. 921, 924 (E.D. Pa. 1984) (discussing splitting of a single cause of action and res

13   judicata), and those concerns are not implicated here where the pre-August 2011 conduct is

14   distinct from the post-August 2011 conduct and where the parties have made clear that pre-August

15   2011 claims are not being released.

16   C.    Prejudice

17        Because the Court concludes that no MBR claim was ever certified, either directly through

18   the fourth cause of action or indirectly through the eighth cause of action, the Court turns back to

19   the question that it initially asked the parties to brief through a supplemental filing: What prejudice

20   is there to Mr. Zohrabians if he were not allowed to intervene and instead had to pursue a pre-

21   August 2011 MBR claim in a new action? At best, Mr. Zohrabians has articulated two arguments:

22   (1) that it will be harder for him to argue for tolling in a new action given what Plaintiffs have

23   asserted here; and (2) that it will be costly for him to litigate a second action. *See* Docket No. 145

24   (Supp. Br. at 5); Docket No. 172-1 (2d Supp. Br. at 6).

25        Neither of these arguments is  persuasive. First, even if Mr. Zohrabians were allowed to

26   intervene, he would have to confront potential time bar for the pre-August 2011 MBR claim and

27   the challenges in obtaining class certification. Second, Mr. Zohrabians has failed to identify any

28   significant costs that he would have to pay to litigate a second action as opposed to continuing to

1  litigate in this action.

2  D.      Permissive Intervention

3          Finally, as to permissive intervention, the Court notes that "[t]he degree of the

4  'commonality' of law or fact required may depend in part on the nature of the requested

5  intervention." 6-24 Moore's Fed. Prac. – Civ. § 24.11.  Here, an argument could be made that

6  there is not a common question of law or fact in light of the carve-out of the pre-August 2011

7  MBR claim from the action. *See also id.* (noting that, "[i]n assessing whether the common-

8  question requisite is satisfied, courts will use their discretion to assess the potential gains or

9  prejudice that would result if intervention is granted").

10         But even assuming commonality is satisfied here, the Court must consider whether

11  intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

12  *See* Fed. R. Civ. P. 24(b).  Moreover, the Court may still consider whether Mr. Zohrabians's

13  interests are adequately represented in the instant case, as well as the availability of a remedy

14  through a separate suit. *See* 6-24 Moore's Fed. Prac. – Civ. § 24.10[2][c]-[d].  These

15  considerations weigh against permissive intervention in the instant case.  Mr. Zohrabians's actions

16  threaten to derail the settlement, which has been achieved after more than ten years of ongoing

17  litigation, and he has the ability to represent his own interests as an objector in this case or through

18  filing a separate action for the pre-August 2011 MBR claim. *Cf. Allen v. Bedolla*, 787 F.3d 1218

19  (9th Cir. 2015) (upholding denial of intervention motion because it was not timely made –

20  "motion was filed after four years of ongoing litigation, on the eve of settlement and threatened to

21  prejudice settling parties by potentially derailing settlement talks"; adding that "objectors'

22  concerns could largely be addressed through normal objection process").

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

United States District Court
Northern District of California

10

United States District Court
Northern District of California

1

2                                    **III.     CONCLUSION**

3                  For the foregoing reasons, the Court denies Mr. Zohrabians's motion to intervene.

4       Because the intervention motion is being denied, the motion for appointment is also denied.

5       Moreover, the Court notes that a motion for appointment is premature given that no MBR class

6       has ever been certified.  Mr. Zohrabians, of course, is free to participate as an objector in this case

7       and/or initiate a new action to assert a pre-August 2011 MBR claim.

8                  This order disposes of Docket Nos. 135 and 172.

9

10      **IT IS SO ORDERED.**

11

12      Dated: September 29, 2015

13

14      _____

15      EDWARD M. CHEN
        United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

11