BETH A. ROSS (SBN 141337)
bross@leonardcarder.com
AARON D. KAUFMANN (SBN 148580)
akaufmann@leonardcarder.com
DAVID P. POGREL (SBN 203787)
dpogrel@leonardcarder.com
ELIZABETH R. GROPMAN (SBN 294156)
egropman@leonardcarder.com
LEONARD CARDER, LLP
1330 Broadway, Suite 1450
Oakland, California 94612
Tel: (510) 272-0169
Fax: (510) 272-0174

*Attorneys for Plaintiffs and the Class*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEAN ALEXANDER, *et. al.*, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FEDEX GROUND PACKAGE SYSTEM, INC. et. al.,<br><br>Defendant. | Case No: 3:05-cv-38 EMC<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE SERVICE PAYMENTS**<br><br>Date:     March 24, 2016<br>Time:     1:30 PM<br>Dept.:     Courtroom 5 |

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on March 24, 2016 at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 5 of the United States District Court located at 450 Golden Gate Ave., 17th Floor, San Francisco, California, before the Honorable Edward Chen, Plaintiffs Dean Alexander, Peter Allen, Albert Anaya, Suzanne Andrade, Jarrett Henderson, Ely Ines, Jorge Isla, Paul Infantino, Eric Jeppson, Gupertino Magana, Bernard Mendoza, Jesse Padilla, Margorie Pontarolo, Joey Rodriguez, Dale Rose, Allen Ross, Agostino Scalercio, and Anthony Ybarra ("Plaintiffs") will and hereby do move this Court for an Order approving, as proposed in the Settlement Agreement preliminarily approved by the Court on October 22, 2015: (1) an award of $49,830,000 in attorneys' fees and costs to Plaintiffs' Counsel, and (2) an award of $10,000 service awards to each of the 17 Class Representatives for the Class and the Overtime Subclass; (3) and an award of a $1,500 service award to the Class Representative for the Meal and Rest Period Settlement Subclass.

This motion is made on the grounds that the requested fees are fair, reasonable, and appropriate. Counsel's efforts created a common fund of $226,500,000. Counsel are seeking a fee award of 22% of the common fund, below the Ninth Circuit's benchmark or 25%, a result that is fully justified in light of the excellent result achieved (the median recovery will be approximately $84,000) and the risks and obstacles skillfully overcome by Counsel over the course of the 11 year litigation in this Court, the Multidistrict Litigation, and before the Ninth Circuit. A lodestar "cross-check" based on the current lodestar of between approximately $12.4 million and $14.1 million (through November 13, 2015) yields a multiplier of approximately 3.5 to 4, which is comparable to multipliers in similar common fund cases and is fully justified by the unique procedural history of this litigation, risks incurred and overcome, and the results achieved.

This motion is further made on the grounds that the requested service payments for the class representatives are fair and reasonable, given the considerable efforts by those named plaintiffs on behalf of the class that resulted in substantial benefits to the class as a whole.

Plaintiffs base this motion on this Notice of Motion and Motion; the Memorandum of

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AWARD OF
ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE SERVICE PAYMENTS

CASE NO: 3:05-CV-38 EMC

1  Points and Authorities in support of this Motion (attached below); the Declaration of Beth A.

2  Ross and Exhibits thereto (filed herewith); the Declaration of Susan Ellingstad; the Declaration of

3  Matthew Houston; the Declaration of Michael Rubin; the Declaration of Daniel Feinberg; the

4  Declarations of the Named Plaintiffs (Doc. Nos. 150-167) the argument of counsel; and all other

5  papers and records on file in this matter.

6

7                                          Respectfully submitted,

8  DATED:  November 13, 2015              **LEONARD CARDER, LLP**

9

10                                         By:  */s/ Beth Ross*
                                                Beth Ross
11                                              Aaron Kaufmann
                                                David Pogrel
12                                              Elizabeth Gropman

13                                         *Attorneys for Plaintiffs and the Class*

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

- 2 -

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AWARD OF
ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE SERVICE PAYMENTS

CASE NO: 3:05-CV-38 EMC

# TABLE OF CONTENTS

I.  INTRODUCTION ............................................................................................................ 1

II. STATEMENT OF FACTS ............................................................................................ 2

    A.  Procedural History ............................................................................................ 2

    B.  Counsel Skillfully Litigated the Case to a Successful Conclusion, Overcoming
        Extraordinary Risks .......................................................................................... 6

    C.  The Settlement Terms and Process Are Extremely Beneficial to the Class ............ 8

III. THE COURT SHOULD AWARD COUNSEL ATTORNEYS' FEES IN THE AMOUNT
     OF 22% OF THE COMMON FUND TO COMPENSATE THEM FOR WORK
     DELIVERED OVER 11 YEARS IN THIS HIGH-STAKES LITIGATION WITH
     EXCELLENT RESULTS. ................................................................................................ 9

    A.  Counsel Are Entitled to an Award of Attorneys' Fees Because the Litigation
        Recovered a Certain and Calculable Fund for the Plaintiff Class and Subclasses .. 9

    B.  The Percentage-of-the-Fund Method is the Appropriate Method of Calculating
        Fees in this Case ............................................................................................. 10

        1.  The Requested Fee is Below the Ninth Circuit Benchmark ..................... 12

        2.  The Requested Fee is Fair, Reasonable, and Warranted ........................... 13

    C.  The Requested Fee Amount is Reasonable Under a Lodestar Cross-Check ......... 17

        1.  Plaintiffs' Lodestar is Reasonable and Appropriate.................................. 17

        2.  A Multiplier in a Range of 3.5 and 4 is Justified Under the Circumstances
           of the Case ............................................................................................. 21

IV. THE COURT SHOULD APPROVE THE REQUESTED SERVICE PAYMENTS TO
     THE CLASS REPRESENTATIVES ............................................................................ 23

V.  CONCLUSION ............................................................................................................ 26

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

# TABLE OF AUTHORITIES

**Federal Cases**

*Alexander v. FedEx Ground Package Systems, Inc.*,
   756 F.3d 981 (9th Cir. 2014) ................................................................................. 2

*Blum v. Stenson*,
   465 U.S. 886, 900 n. 16 (1984) ........................................................................... 11

*Boeing Co. v. Van Gemert*,
   444 U.S. 472, 478 (1980) ....................................................................................... 1

*Bond v. Ferguson Enters., Inc.*,
   2011 WL 2648879 (E.D. Cal. June 30, 2011) .................................................... 25

*Boyd v. Bank of America Corp.*,
   2014 WL 6473804 (C.D. Cal. Nov. 18, 2014) .................................................... 15

*Elliott v. Rolling Frito-Lay Sales, LP*,
   No. SACV 11-01730 DOC, 2014 WL 2761316 (C.D. Cal. June 12, 2014) ........... 16

*Garcia v. Gordon Trucking, Inc.*,
   2012 WL 5364575 (E.D. Cal. Oct. 31, 2012) ..................................................... 13

*Glass*, 2007 WL 221862 ............................................................................................ 17

*Gomez v. H & R Gunland Ranches, Inc.*,
   No. CV F 10-1163 LJO MJS, 2011 WL 5884224 (E.D. Cal. Nov. 23, 2011) ........... 16

*Graham v. Overland Solutions, Inc.*,
   No. 10-CV-0672, 2012 WL 4009547 (S.D. Cal. 2012) ...................................... 23

*Greene v. Gino Morena Enters. Inc.*,
   2014 WL 1607448 (C.D. Cal. Nov. 4, 2014) ...................................................... 25

*Guttierez*,  2015 WL 2438274 .................................................................................... 22

*Harris v. Marhoefer*,
   24 F.3d 16, 19 (9th Cir. 1994) ............................................................................. 20

*Hopkins v. Stryker Sales Corp.*,
   No. 11-CV-02786-LHK, 2013 WL 496358 (N.D. Cal. Feb. 6, 2013) ................. 13

*In re Activision Sec. Litig.*,
   723 F. Supp. 1373, 1378-79 (N.D. Cal. 1989) ................................................... 12

In re *Bluetooth Headset Products Liab. Litig.*,
   654 F.3d 935, 942 (9th Cir. 2011) .......................................................... 10, 11, 22

*In re Continental Ill. Sec. Litig.*,
   962 F.2d 566, 572 (7th Cir. 1992) ....................................................................... 11

*In re Crazy Eddie Sec. Litig.*,
   824 F. Supp. 320, 327 (E.D.N.Y. 1993) .............................................................. 16

*In re FedEx Ground Package System Inc. Employment Practices Litig.*, (No. II),
   381 F.Supp.2d 1380 (J.P.M.L. 2005) .................................................................... 3

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

*In re Med. X-Ray Film Antitrust Litig.*,
  1998 U.S. Dist. LEXIS 14888 (E.D.N.Y. Aug. 7, 1998) ........................................ 16

*In re Pac. Enter Sec. Litig.*,
  47 F.3d 373, 379 (9th Cir. 1995)........................................................................ 12

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291, 1295 (9th Cir. 1994)............................................................. 11, 20

*Mangold v. California Pub. Utilities Comm'n*,
  67 F.3d 1470, 1478 (9th Cir. 1995)..................................................................... 10

*Mexican Workers v. Arizona Citrus Growers*,
  904 F.2d 1301, 1311 (9th Cir. 1990)................................................................... 11

*Monterrubio v. Best Buy Stores*,
  *L.P.*, 291 F.R.D. 443, 463 (E.D. Cal. 2013)....................................................... 25

*Ontiveros v. Zamora*,
  2014 WL 5035935 (E.D. Cal. Oct. 8, 2014) ...................................................... 25

*Paul, Johnson, Alston & Hunt v. Graulty*,
  886 F.2d 268 (9th Cir. 1989)............................................................................... 1

*Ramirez v. Ghilotti Bros. Inc.*,
  No. C 12-04590 CRB, 2014 WL 1607448 (N.D. Cal. Apr. 21, 2014) .................... 25

*Rigo v. Kason Industries, Inc.*,
  No. 11-CV-64-MMA DHB, 2013 WL 3761400 (S.D. Cal. July 16, 2013)............... 16

*Rodriguez v. West Publishing Corp.*,
  563 F.3d 948, 958-59 (9th Cir. 2009) ................................................................ 23

*Ross v. U.S. Bank NA*,
  No. C 07-02951 SI, 2010 WL 3833922 (N.D. Cal. Sept. 29, 2010)....................... 25

*Staton v. Boeing Co.*,
  327 F.3d 938, 977 (9th Cir. 2003)....................................................................... 23

*Swedish Hosp. Corp. v. Shalala*,
  1 F.3d 1261, 1269 (D.C. Cir. 1993) .............................................................. 11, 12

*Torrisi v. Tuscon Elec. Power Co.*,
  8 F.3d 1370, 1376 (9th Cir. 1993)....................................................................... 12

*Vasquez*,
  266 F.R.D. at 491 ............................................................................................... 16

*Vincent v. Hughes Air W., Inc.*,
  557 F.2d 759, 769 (9th Cir. 1977)....................................................................... 20

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043, 1047-50 (9th Cir. 2002) ..................................................... passim

*Williams v. MGM-Pathe Communications Co.*,
  129 F.3d 1026, 1027 (9th Cir. 1997).................................................................... 12

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

## STATE CASES

*Bell v. Farmers Ins. Exc.*,
   115 Cal. App. 4th 715, 726 (2004) ........................................................................ 12

*Chavez v. Netflix, Inc.*,
   162 Cal. App. 4th 43, 66 (2008) .......................................................................... 13

*Estrada v. FedEx Ground Packages Systems, Inc.*,
   154 Cal.App.4th 1 (2007) ........................................................................... 6, 7, 14

*Glendale City Employees' Ass'n v. City of Glendale*,
   15 Cal. 3d 328, 341 (1975) ................................................................................. 12

*In re Consumer Privacy Cases*,
   175 Cal.App.4th 545, 557-58 (2009) ................................................................... 11

*Ketchum v. Moses*,
   24 Cal. 4th 1122, 1132-33 (2001) ........................................................... 13, 15, 21

*Lealao v. Beneficial California*,
   82 Cal. App. 4th 19, 48 (2000) ...................................................................... 11, 12

*Melendres v. City of Los Angeles*,
   45 Cal. App. 3d 267, 278 (1975) ................................................................... 11, 12

*Munoz v. BCI Coca-Cola Bottling Co. of Los Angeles*,
   186 Cal. App. 4th 399, 403 (2010) ...................................................................... 12

*Rider v. County of San Diego*,
   11 Cal.App.4th 1410, 1423 (1992) ...................................................................... 20

*Serrano v. Priest*,
   20 Cal.3d 25, 35 (1977) ........................................................................................ 1

*Wershba v. Apple Computer, Inc.*,
   91 Cal.App. 224, 255 (2001) ........................................................................... 1, 21

*Woodland Hills Residents Assn., Inc. v. City Council*,
   23 Cal. 3d 917, 943 (1979) ................................................................................. 10

## FEDERAL STATUTES

29 U.S.C. § 2617 ....................................................................................................... 2

## STATE STATUTES

California Labor Code § 1194 ...................................................................................... 2
California Labor Code § 221 ........................................................................................ 2
California Labor Code § 226.7 ................................................................................. 2, 5
California Labor Code § 2699 ...................................................................................... 2
California Labor Code § 2802 ................................................................................. 2, 4
California Labor Code § 450 ........................................................................................ 2
California Labor Code § 510 .................................................................................... 1, 5

## OTHER AUTHORITIES

*Newberg on Class Actions* § 14:6
  (4th Ed. 2002) ........................................................................................................... 13

## REGULATIONS

California Unfair Competition Law, Business and Professions Code §17200 ................................ 2

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AWARD OF
ATTORNEYS' FEES, AND CLASS REPRESENTATIVE SERVICE PAYMENTS

CASE NO: 3:05-CV-38 EMC

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

# I.   INTRODUCTION

On October 22, 2015, this Court granted Plaintiffs' Motion for Preliminary Approval of Class Settlement, Certifying Settlement Subclass, and Ordering Supplemental Class Notice.  *See* Doc. No. 179.  Pursuant to the terms of the Settlement Agreement and this Court's order, Counsel now moves for approval of an award of attorneys' fees and costs and service payments for the class representatives.

Counsel secured an extraordinary result for the class and subclass members in this case: a $226,500,000 non-reversionary settlement on behalf of approximately 2,016 current and former drivers for FedEx Ground Package System, Inc., and its division FedEx Home Delivery.  This remarkable result is particularly impressive given the risks faced and obstacles overcome by Counsel while litigating the case for close to 11 years in the this Court, the Multidistrict Litigation ("MDL"), and before the Ninth Circuit.  Having created this common fund through skillful litigation efforts and a strategic approach to settlement negotiations, Counsel respectfully requests a 22% fee, in the amount of $49,830,000, inclusive of litigation expenses.

The requested fee is fair, reasonable, and appropriate pursuant to the percentage-of-the-fund method, under which counsel who have created a common fund are generally awarded 25% or more of that common fund.  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (common fund); *Serrano v. Priest*, 20 Cal.3d 25, 35 (1977) (*Serrano III*) (common fund); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989) (25% benchmark).  Such an award is particularly appropriate here, given the result achieved by the settlement and the contingent nature of Counsel's representation in light of risks of the litigation.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-50 (9th Cir. 2002) (listing factors).  A lodestar "cross-check" yields a multiplier of approximately 3.5 to 4, which is fully justified by the results and risk factors here and is within the range commonly awarded in similar cases.  *Wershba v. Apple Computer, Inc.*, 91 Cal.App. 224, 255 (2001) (multipliers ranging from 2 to 4); *Vizcaino*, 290 F.3d at 1051 n. 6.

Plaintiffs Dean Alexander, Peter Allen, Albert Anaya, Suzanne Andrade, Jarrett Henderson, Ely Ines, Jorge Isla, Paul Infantino, Eric Jeppson, Gupertino Magana, Bernard Mendoza, Jesse Padilla, Marjorie Pontarolo, Joey Rodriguez, Dale Rose, Allen Ross, Agostino

Scalercio, and Anthony Ybarra were also instrumental in the successful resolution of this case, which could not have occurred but for their willingness to step forward and serve as class representatives, aiding in the prosecution of the case at all stages of the litigation and ensuing settlement.  Accordingly, as permitted by the Settlement Agreement, each of the original 17 class representatives and Plaintiff Pontarolo should be awarded an incentive payment in the amount of $10,000 and $1,500, respectively, as reasonable additional compensation for the time and effort expended, and the risk assumed, by them in connection with this litigation.

## II.    STATEMENT OF FACTS

### A.    Procedural History

FedEx Ground Packages System, Inc., and its division FedEx Home Delivery (collectively "FXG" or "Defendant"), retained thousands of drivers to pick-up and deliver packages in California and also nationwide.  On November 17, 2004, Plaintiffs filed *Alexander v. FedEx Ground Package System, Inc.*, in the Superior Court for the County of Alameda, alleging that the California Drivers were FXG's employees, not *bona fide* independent contractors.  Ross Decl. ¶ 6.  Plaintiffs asserted damage claims under various provisions of the California Labor Code (including, *inter alia*, claims for unreimbursed employment expenses (§2802),  unlawful wage deductions (§ 221), missed meal and rest breaks (§226.7), unlawful coercion (§ 450), and unpaid overtime (§1194)), a common law fraud claim, claims to collect civil penalties under Labor Code §203 (waiting time) and §2699 (PAGA), and derivative claims for restitution, declaratory, and injunctive relief under the California Unfair Competition Law, Business and Professions Code §17200 *et. seq.*, as well as under the Family Medical Leave Act, 29 U.S.C. §2617(a)(1)(b).[1]  *Id.* (Plaintiffs' Third Amended Complaint, Oct. 1, 2007).

FXG filed a timely answer to the complaint and then, on January 3, 2005, removed the action to federal court and then shortly thereafter to Multidistrict Litigation ("MDL").  Ross Decl. ¶ 7.  *Alexander* was transferred to a MDL docket before Judge Robert Miller in the Northern

---

[1] A proposed Fourth Amended Complaint was filed on September 11, 2015, by stipulation.  Doc. No. 146.

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

District of Indiana and eventually consolidated with 62 cases challenging the FXG Drivers' "independent contractor" classification across the country. *In re FedEx Ground Package System Inc. Employment Practices Litig.*, (No. II), 381 F.Supp.2d 1380 (J.P.M.L. 2005); Ross Decl. ¶ 7. The MDL Court designated lead counsel for both sides and bifurcated the proceedings into liability and damages phases with simultaneous class certification and merits discovery. Ross Decl. ¶ 8. Three firms, including Leonard Carder, were appointed as Co-Lead Counsel for the Plaintiffs. Ross Decl. ¶ *Id*.

Between 2005 and 2007, the parties engaged in extensive written, document, deposition, and expert discovery. The MDL Co-Leads took and defended hundreds of depositions, reviewed and produced tens of thousands of documents from FXG and the Plaintiffs alike, and briefed numerous non-dispositive motions. Ross Decl. ¶ 9. On March 13, 2007, the *Alexander* Plaintiffs moved to certify claims for unreimbursed employment expenses, illegal wage deductions, unlawful coercion, waiting time and PAGA penalties, along with UCL claims that were derivative of these predicate claims (the "General Class"), and a proposed Overtime Subclass under Labor Code § 1194. *Id*. The MDL Court certified the General Class on behalf of California drivers who drove on a full-time basis between November 17, 2000 and October 15, 2007. The Overtime Subclass was similarly defined, but was limited to those who drove delivery vehicles with a Gross Vehicle Rating of less than 10,001 pounds. *Id*. (MDL Docket, Doc. No. 1119). The MDL denied Plaintiffs' motion to certify the claims asserted under the Family Medical Leave Act on a nationwide basis.[2] *Id*. In May 2008, class notice was sent to the approximately 2,300 *Alexander* Class Members identified by FXG, followed by a Supplemental and Second Supplemental Class Notice sent in September 2009. About 20 persons opted out of the *Alexander* class. Ross Decl. ¶ 10.

_____

[2] Plaintiffs made a strategic decision not seek to certify several of the other claims asserted in the complaint, including claims for missed meal and rest breaks under the California Labor Code or a derivative claim under the UCL, and a common law fraud claim. *See also* Doc. No. 126 at 9-10.

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

Between April and June 2008, the parties filed cross-motions for summary judgment and summary adjudication on the issue of the Drivers' employment status. Ross Decl. ¶ 11.  Plaintiffs prepared a comprehensive "Omnibus Fact Memorandum" that distilled and summarized the detailed common evidence contained in the voluminous discovery record, which was proffered in support of the 42 class certification motions.   Ross Decl. ¶ 47.  On December 10, 2010, the MDL court granted FXG's motion for summary judgment as to all Plaintiffs' claims arising under the California Labor Code based on a finding that the Class Members were "independent contractors" under the "right to control" test. Ross Decl. ¶ 11.  *See* also (MDL Docket at Doc. No. 2097). The MDL Court also denied Plaintiffs' cross-motion for summary adjudication and issued no ruling with regard to Plaintiffs' FMLA claim.  In late 2011, the Judicial Panel on Multi-District Litigation ("JPML") remanded the *Alexander* case to this Court for resolution of the remaining FMLA claims.  *Id.* The parties then settled the FMLA claims and this Court entered an amended final judgment in FXG's favor on January 29, 2013.  (*See* Doc. No. 76).

Plaintiffs appealed both the MDL Court's adverse summary judgment and summary adjudication decision on employment status to the Ninth Circuit.  On August 27, 2014, the Ninth Circuit reversed the MDL Court's decision and found the Drivers to be employees as a matter of law.  *Alexander v. FedEx Ground Package Systems, Inc.*, 756 F.3d 981 (9th Cir. 2014).  The Ninth Circuit remanded the case to this Court with instructions to enter summary adjudication for Plaintiffs on the question of employment status.  Ross Decl. ¶ 13.  With this ruling, Counsel was able to avoid the cost, delay, and uncertainty inherent in a jury trial.  *Id.*

Shortly after remand from the Ninth Circuit, the parties recommenced the litigation and began to meet and confer to develop a joint pretrial and discovery plan, exchanging voluminous electronic records and documents, and cooperating to define and narrow disputed legal and factual issues. Ross Decl. ¶ 14.  (*See* Doc. Nos. 88 and 94 [Jt. CMC Statements]). On May 21, 2015, FXG filed three "first round" motions pertaining to its key defenses, including (1) a motion to clarify the class definition intended to vastly reduce the size and scope of the class, (2) a motion to limit Plaintiffs' recoverable damages by shortening the length of the damage period,

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

and (3) a motion to eliminate Plaintiffs' ability to recover damages for certain categories of settlement deductions.   (*See* Doc. Nos 108 through 113 [motions and supporting papers]).

In April 2015, the parties began formal settlement discussions to resolve the remaining class and individual claims. Ross Decl. ¶ 15.  In preparation for mediation, FXG provided Plaintiffs with large amounts of  data from multiple electronic recordkeeping systems, spanning a 15-year period and including scanner and settlement data showing mileage and work hours, settlement payments, deductions, adjustments, route ownership, vehicle records, and dates of service. *Id*.  Plaintiffs engaged a forensic accounting expert to analyze these complex records, as well as voluminous receipts and other records produced by the Plaintiffs documenting their damage claims, and, after months of work, generate a detailed damage-exposure model and risk analysis. *Id*.

The parties selected Michael Dickstein, a highly-respected and skilled mediator with special expertise in complex employment matters, to serve as a neutral.  Ross Decl. ¶ 16.  After two full days of mediation on June 2 and 3, 2015, the parties entered into a Memorandum of Understanding, which was the basis for the Settlement Agreement presented here for the Court's approval at the hearing on August 6, 2015.  Ross Decl. ¶ 17.

Following that hearing, the parties engaged in further negotiations, with the assistance of the mediator, in light of concerns raised by the Court about the scope of the release and other aspects of the initial agreement.  Ross Decl. ¶ 17.   As part of the renegotiated agreement the parties agreed to certification of a settlement subclass comprised of class members who continued to drive for FXG during the last four years (between August 1, 2011 and August 31, 2015) in exchange for the release of potential claims they may possess for alleged missed meal and rest periods (for the same time period) under California Labor Code §§ 226.7, 510, IWC Order 9, and derivative claims under the UCL (the "Meal and Rest Period Settlement Subclass").  FXG stipulated to the filing of Plaintiffs' Fourth Amended Complaint, adding Plaintiff Marjorie Pontarolo as a class representative for the Meal and Rest Period Subclass.  On October 22, 2015, this Court granted preliminary approval of the Settlement.  *Id*.

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

**B.      Counsel Skillfully Litigated the Case to a Successful Conclusion, Overcoming Extraordinary Risks**

Leonard Carder undertook representation of the *Alexander* Plaintiffs in late November 2004 on a wholly contingent basis, with no guarantee of payment unless the litigation was successfully resolved by settlement or judgment.  Ross Decl. ¶ 59.  Leonard Carder knew from the outset that the case posed significant risks, including that it would be well-lawyered and hard-fought because the case challenged the legality of FXG's fundamental business model to operate a nationwide package delivery business at a lower cost by using independent contractor drivers instead of employees. *Id.* Leonard Carder expected that the case would only be resolved after lengthy litigation including trial and appeals, because the litigation was similar to a predecessor case which resulted in a trial verdict and appellate opinion for the plaintiff drivers.  Ross Decl. ¶ 59; *Estrada v. FedEx Ground Packages Systems, Inc.,* 154 Cal.App.4th 1 (2007).[3]

Leonard Carder also undertook a significant risk by agreeing to represent a class of drivers comprised of both single work-area ("SWA") *and* multiple work-area ("MWA") drivers.  Ross Decl. ¶ 60.[4]  In the *Estrada* case, the MWA drivers were excluded from the certified class by the Court.  Additionally, the lone MWA driver whose claim was tried together with the SWA class was found by the trial judge to be a *bone fide* independent contractor, based on the view that the MWA plaintiff had entrepreneurial opportunities to be inconsistent with employment status under the "*Borello*" test.  *Id.*  Leonard Carder's choice to assert class claims for the MWA drivers in the *Alexander* thus created a heightened risk to the Plaintiffs' chances of obtaining both class certification and a finding of employment status.   *Id.*

The known risks undertaken by Leonard Carder were amplified when, despite Plaintiffs' vigorous objections, JPML granted Defendant's motion to transfer *Alexander* to an MDL docket.  Ross Decl. ¶ 62.  Counsel was forced to litigate in a consolidated proceeding with dozens of other

---

[3]  The *Estrada* litigation lasted five years and culminated in a 9 ½ week trial, during which there were no meaningful settlement discussions.  Ross Decl. ¶ 59.

[4] The SWAs were drivers who contracted with FedEx to operate a single route, with a single truck, that they drove themselves.  The MWAs were drivers who contracted with FedEx to operate multiple routes and who hired secondary drivers and helpers to work the additional routes.

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

cases across the country, many of which asserted claims under largely untested state statutes that provide far more limited relief than California law and/or novel common law tort and contract theories with a no possibility of statutory fee shifting.  Ross Decl. ¶ 61.

Despite the high risk that many of the cases consolidated in the MDL docket would have limited or possibly no success, Leonard Carder actively sought appointment by the MDL Court to serve as Co-Lead Counsel in order to protect the California class.  Ross Decl. ¶ 61.  Leonard Carder's experience in litigating and trying *Estrada* lent an extensive familiarity to FXG's independent contractor business model, key witnesses and documents, and the defenses Plaintiffs would face at class certification and on the merits of the employment status issue. *Id*.

The transfer to the MDL docket also increased the risk of longer than usual delay in the final resolution of the case.  While the MDL Court adopted an aggressive case management plan, the deadlines were predictably extended multiple times both because discovery disputes arose and because new cases continued to be "tagged-along" into the MDL docket.  Ross Decl. ¶ 62. Moreover, while the cases were consolidated for discovery and pretrial purposes, each also retained its separate identity because the legal claims asserted in each case were unique.  As a consequence, while the cases all presented a common fact question, the threshold employment status issue had to be analyzed and decided separately under the law of each state.  *Id*.  The MDL Court took a full year to work its way through the initial set of class certification motions, and more than two years to rule on the parties' cross-motions for summary judgment.  *Id*.

By pursuing an MDL litigation strategy, FXG itself created a *de facto* nationwide challenge to its independent contractor business model which, in turn, created enormous litigation risks for both sides.  Ross Decl. ¶ 63.  While in *Estrad*a it was sufficient to focus discovery on FXG's state-wide operations, the nationwide focus of the MDL case caused counsel to focus the MDL discovery on FXG's corporate decision-makers and decision making at the highest levels, and also to pursue a highly risky litigation strategy aimed at prevailing at summary judgment.  *Id*. Counsel deployed enormous effort and a high degree of skill to develop a comprehensive "Omnibus" record of undisputed facts derived *entirely* from the testimony of FXG witnesses and documents, without any reliance on anecdotal evidence or testimony from the Drivers, and then

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

1    marshall those facts into a concise record to support the dozens of class certification and summary

2    judgment filings.  *Id.*

3        The risk undertaken by the MDL Counsel in pursuing a summary judgment strategy was

4    in fact, realized in this case:  the MDL Court granted FXG's motion for summary judgment and

5    denied Plaintiffs' motion for summary adjudication, finding that the California Drivers were

6    "independent contractors" as a matter of law.  Ross Decl. ¶ 66.  Counsel persevered and overcame

7    this potentially case-ending obstacle by successfully appealing the decision to the Ninth Circuit.

8    Critically, the Ninth Circuit decision ultimately relied entirely on the Omnibus undisputed factual

9    record created by Counsel before the MDL Court.

10       Even after prevailing on the main liability issue of employment status at the Ninth Circuit,

11   the prospect of lengthy continued litigation remained. Before settlement discussions began in

12   earnest, FXG filed three motions that were aimed at severely limiting the scope of the damages

13   available to class members and length the liability period.  Ross Decl. ¶ 14.  FXG continued to

14   deny all liability and contended that the class should be decertified.  *Id.*  Had FXG succeeded on

15   any of its recovery-limiting motions or on a motion to decertify the class and/or subclass, many or

16   all of the Drivers may not have been entitled to any recovery.  Similarly, had Counsel not been

17   able to settle the case at this juncture, the parties would have embarked on an expensive,

18   complicated, and likely lengthy period of discovery, motion practice, and ultimately trial on

19   FXG's liability on specific claims and damages.

20       **C.    The Settlement Terms and Process Are Extremely Beneficial to the Class**

21       The settlement is extremely advantageous to the class and subclass members.  The gross

22   settlement amount of $226,500,000 allows each class member to recover between 40% and 50%

23   of the full value of their claims, as calculated based on FXG's data.  Ross Decl. ¶ 4.  There is no

24   possibility of reversion to FXG; all settlement funds (less Court-approved payments to the

25   settlement administrator, Counsel, class representatives, and the Labor Workforce Development

26   Agency) will be paid to the class.  *Id.*  Class members are not required to prove their claims and

27   will receive individualized notice and claim forms notifying them of their estimated recovery.

28   Because Leonard Carder has been diligent in maintaining current contact information for class

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

members, the parties anticipate that they will be able to locate and pay a high percentage of the class members. *Id*. If this Court grants final approval, and assuming there are no objectors and/or any objectors are overruled and do not appeal, checks will be mailed to class members who submitted valid claim forms by May 30, 2016. The median recovery for the class will be approximately $84,000.00. Ross Decl. ¶ 4.

The Settlement Agreement provides that Counsel may seek up to 22% of the fund in fees, equal to $49,830,000, inclusive of costs. Counsel's lodestar in this case, provided for the purposes of a cross-check, is between $12,389,821 and $14,131,821. Ross Decl. ¶ 53. That figure includes time for work in this Court before and after the MDL proceedings, all California-specific work done by Leonard Carder in the MDL, and a percentage of the Omnibus work done by the MDL co-leads in the MDL that was reasonable and necessary to the litigation of *Alexander*. Regardless of the amount of the fee ultimately approved by this Court, a percentage of Counsel's recovered fees will be returned to the MDL Litigation Fund to compensate counsel in the consolidated cases. Ross Decl. ¶ 5.

## III.   THE COURT SHOULD AWARD COUNSEL ATTORNEYS' FEES IN THE AMOUNT OF 22% OF THE COMMON FUND TO COMPENSATE THEM FOR WORK DELIVERED OVER 11 YEARS IN THIS HIGH-STAKES LITIGATION WITH EXCELLENT RESULTS.

### A.   Counsel Are Entitled to an Award of Attorneys' Fees Because the Litigation Recovered a Certain and Calculable Fund for the Plaintiff Class and Subclasses

California and federal courts have long recognized that, when counsels' efforts result in the creation of a common fund that benefits a class, counsel have an equitable right to be compensated from that fund as a whole. *See, e.g. Boeing*, 444 U.S. 478 (U.S. Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund . . . is entitled at a reasonable attorney's fee from the fund as a whole"); *Serrano III*, 20 Cal. 3d at 35 ("Although American courts . . . have never awarded counsels' fees a routine component of costs, at least one exception to this rule has become as well established as the rule itself: that one who expends attorneys' fees in winning a suit which creates a fund from which other derive benefits, may require those passive beneficiaries to bear a fair share of the litigation costs.") (internal

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

quotation marks omitted).[5]  The common fund doctrine rests on the principle that attorneys should normally be paid by their clients, and unless attorneys' fees are paid out of the common fund, those who benefit from the attorneys' efforts will be unjustly enriched.  *Boeing*, 444 U.S. at 478; *Woodland Hills Residents Assn., Inc. v. City Council*, 23 Cal. 3d 917, 943 (1979).  Courts therefore exercise their inherent equitable powers to assess attorneys' fees against the entire fund, spreading the cost of those fees among all those who benefit.  *Boeing*, 444 U.S. at 478; *Serrano III*, 20 Cal.3d at 35.

This litigation resulted in the "recovery of a certain or easily calculable sum of money," *Seerano III*, 20 Cal.3d at 35, for the benefit of the class and subclass – namely, a non-reversionary settlement fund of $266,500,00 million to be divided among roughly 2,016 class and subclass members.  Because none of the class members paid fees to Counsel for their efforts during the litigation, principles of equity permit that they pay a fair and reasonable fee based on what the market would traditionally require, no less than if they had hired private counsel to litigate their cases individually.  *Boeing*, 444 U.S. at 478-82.  Counsel are thus entitled to fees from the settlement fund as a whole.

**B.    The Percentage-of-the-Fund Method is the Appropriate Method of Calculating Fees in this Case**

Where, as here, "a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-the-fund method."  *Bluetooth*, 654 F.2d at 942.  When either method is applied, the Ninth Circuit encourages district courts to "cross-check" the calculations against the second method, to guard against an unreasonable result.  *Id.* at 944; *see also Vizcaino*, 290 F.3d at 1050-51 (applying lodestar cross-check to verify reasonableness of percentage-of-the-fun method); *In re Consumer Privacy Cases*, 175 Cal.App.4th 545, 557-58 (2009).  Perhaps most importantly, regardless of the chosen method, the Ninth Circuit only requires that "fee awards in common fund cases be

---

[5] This case involves claims under California law removed to federal court under diversity jurisdiction. Thus, state law governs both the right to fees and the method of calculating fees. *Mangold v. California Pub. Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995).

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

reasonable under the circumstances." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 (9th Cir. 1994) (citing *Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990)).

In cases where fees are requested from a certain and calculable common fund, courts generally award fees "based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n. 16 (1984); *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) ("a reasonable fee under the common fund doctrine is calculated as a percentage of the recover"); *Melendres v. City of Los Angeles*, 45 Cal. App. 3d 267, 278 (1975) (total fee often is awarded as "a percentage of the fund involved"); *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). Using the percentage-of-the-fund method to award fees here is appropriate for a number of reasons. Because the percentage method is "result-oriented rather than process-oriented," that approach best "approximates the workings of the marketplace," where counsel's success is frequently measured in terms of the results achieved. *Lealao v. Beneficial California*, 82 Cal. App. 4th 19, 48 (2000); *see also Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993) ("a percentage-of-the-fund approach more accurately reflects the economics of litigation practice," which "given the uncertainties and hazards of the litigation, must necessarily be result-oriented") (citations omitted). When clients do not pay an ongoing hourly fee to their counsel, they typically negotiate a contingency-fee agreement in which counsel's fee is based on a percentage of any recovery. The percentage-of-the-fund approach mirrors this aspect of the market and, accordingly, reflects the fee that would have been negotiated by the class members in advance, had such negotiations been feasible, given the prospective uncertainties and anticipated risks and burdens of the litigation. *See, e.g. In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) (in common fund case, object "is to give the lawyer what he would have gotten in the way of a fee in an arm's length negotiation, had it only been feasible").

The percentage approach has other benefits as well. Because the percentage approach mimics the market, it helps provide highly qualified attorneys the necessary incentive to bring class actions. *Lealao*, 82 Cal. App. 4th at 47; *Melendres*, 45 Cal.App.3d at 272-273 (noting need to encourage attorneys to undertake common fund cases). The percent method is also far less

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

- 11 -

burdensome for courts to calculate than the lodestar method.  *See, e.g.*, *Bluetooth*, 654 F.3d at 942 ("Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar."); *Swedish Hosp.*, 1 F.3d at 1269 ("percentage-of-the-fund approach is less demanding of scarce judicial resources than the lodestar method"); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378-79 (N.D. Cal. 1989).  Furthermore, basing the common fund fee award on a percentage of the fund encourages counsel to spend their time efficiently and to focus on maximizing the size of recovery – as Counsel did here – rather than maximizing their own lodestar hours.  *Swedish Hosp.*, 1 F.3d at 1269.   Accordingly, the Court should assess Counsel's fee request by applying the percentage-of-the-fund method.

### 1.      The Requested Fee is Below the Ninth Circuit Benchmark

Plaintiffs' request for reasonable attorneys' fees of 22% of the gross settlement fund is set below the 25% benchmark considered by the Ninth Circuit and California courts to constitute a fair and reasonable percentage for purposes of calculating a common fund fee.  *See Vizcaino*, 290 F.3d at 1047; *Bluetooth*, 654 F.3d at 942 ("courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award");[6] *Munoz v. BCI Coca-Cola Bottling Co. of Los Angeles*, 186 Cal. App. 4th 399, 403 (2010) (affirming settlement with 30% fee award); *Glendale City Employees' Ass'n v. City of Glendale*, 15 Cal. 3d 328, 341 n. 19 (1975) (approving fee award of 25% of common fund); *Bell v. Farmers Ins. Exc.*, 115 Cal. App. 4th 715, 726 (2004) (attorneys' fee award of 25% of common fund).   An acceptable range of attorneys' fees in the Ninth Circuit under this method is 20% to 33 1/3% of the total settlement value, as some courts award over 25%.  *Garcia v. Gordon Trucking, Inc.*, No. 1:10-CV-0324 AWI SKO, 2012 WL 5364575, at 88 (E.D. Cal. Oct. 31, 2012) (*citing Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir.

---

[6] *See also Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (benchmark is 25%); *In re Pac. Enter Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (benchmark is 25%, but affirming 33% fee award); *Torrisi v. Tuscon Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (25% of common fund allocated to attorneys' fees is a benchmark in the Ninth Circuit); *Six (6) Mexican Workers*, 904 F.2d 1311 (same); *Paul, Johnson*, 886 F.3d at 271 (citing with approval benchmark of 25% and noting that common fund fee awards generally range from 20% to 30%).

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

2000)); *Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786-LHK, 2013 WL 496358, *1 (N.D. Cal. Feb. 6, 2013) (*quoting In re Omnivision Technologies, Inc.*, 559 F.Supp.2d 1036, 1047 (N.D. Cal. 2008)). *See also Activision Sec.*, 723 F. Supp. 1375 (noting that benchmark is 25% but also stating that fee awards in common fund cases "almost always hover[] around 30% of the fund created by the settlement"); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 n. 11 (2008) (common fund attorney fee awards average one third of recovery; 4 Conte & Newberg, *Newberg on Class Actions* § 14:6, p. 551 (4th Ed. 2002) ("fee awards in class actions average around one third of recovery").

Because Plaintiffs' request is below the Ninth Circuit's 25% benchmark percentage for a common fund fee award and, as discussed below, because the circumstances of the case justify an award at or possibly even over the benchmark, Plaintiffs' request for an award of 22% of the common fund should be approved.

### 2.      The Requested Fee is Fair, Reasonable, and Warranted

The requested fee award of 22% of the common fund settlement is eminently fair and reasonable. All of the relevant factors to this Court's consideration support the Plaintiffs' attorneys' fee request, including: (1) the results achieved; (2) the skill and quality of counsel's work; (3) the risk of the litigation; (4) the contingent nature of the fee; (5) awards made in similar cases; (6) the market rate for contingency representation such as this; and (7) the size of the fund. *Vizcaino*, 290 F.3d at 1048-50; *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132-33 (2001); *Hopkins*, 2013 WL 496258, *1. There are no exceptional circumstances here that warrant a downward departure further below the Ninth Circuit's 25% benchmark. *Bluetooth*, 654 F.3d at 942 (internal quotation omitted); *see also Paul, Johnson*, 886 F.2d at 272 (25% benchmark should be awarded absent "unusual circumstances").

Most importantly, the fairness of the requested fee award is supported by the results obtained and the effectiveness with which Counsel resolved the class claims. It was Leonard Carder and the MDL Counsel's expertise in independent contractor misclassification cases and skill in litigating not only the California class but the consolidated MDL cases, along with Leonard Carder's successful appeal to the Ninth Circuit on the key liability issue of employment

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

status, that positioned Plaintiffs to settle this case for $226,500,000.  If the Court grants the requested structure of the settlement, the net settlement fund of $173, 263,500 will be distributed to the General Class ($151,663,000), Overtime Subclass ($16,000,000), and Meal and Rest Period Settlement Subclass ($5,600,000).  Ross Decl. ISO Preliminary Approval Doc. 149, ¶ 43.  The $2,000,000 reserve fund is designed to maintain the integrity of that fund even if previously unidentified class members are found, and any remains of the reserve fund will be redistributed back to the class, thus potentially further increasing their recoveries.  *Id*. at ¶ 49.   As is, class members will receive average payouts of $65,000 to $85,000 based on their actual weeks, days, and hours driven; over class members will receive settlements of $200,000, and the highest payment exceeds $350,000.  *Id.* ¶ 20.  Counsel's work thus provided meaningful recoveries for the class members while avoiding the substantial risk and expense associated with the remaining liability and damages phase of litigation, which might have excluded some class members entirely, eliminated whole damages categories, and/or required class members to compile receipts to precisely prove their expense damages.

Leonard Carder took this case on a contingency despite being was acutely aware of the very types of obstacles they would come up against based on their experience litigating *Estrada* and other independent contractor misclassification cases.  Ross Decl. ¶ 59.  Plaintiffs were aware that FXG would not settle early and would likely insist on trying the case to a judgment.  *Id*. From the outset, Leonard Carder also knew that representing a combined class of SWAs and MWAs – a strategy rejected by the court in *Estrada* – would manifest significant challenges at both class certification and summary judgment.  Moreover, once the case was transferred and consolidated with over 60 other cases in the MDL, Plaintiffs faced the added challenge of litigating summary judgment on employment status under the California "right to control" test in front of an out-of-state judge.  As the MDL Court's adverse summary judgment decision demonstrated, the risks were not merely theoretical in this case, but rather were realized throughout the litigation.  And, as with Leonard Carder's successful appeal to the Ninth Circuit – obtaining a precedential decision that Plaintiffs are employees – Counsel capably navigated each hurdle placed before them.  Counsel, in their role as Co-Lead Counsel responsible for

spearheading the offensive discovery and summary judgment phases of the MDL oversaw the

development of a comprehensive record that they distilled into an extensively detailed Omnibus

Fact statement, which was the basis for the Ninth Circuit's decision that the Drivers are FXG's

employees.  Ross Decl. ¶ 66.  Counsel's litigation strategy positioned the case for maximum

potential recovery, while aiming to avoid an expensive and complex trial.

Additionally, because Counsel took this case on a contingent basis and faced serious risk

of loss at the class certification stage, summary judgment, and trial, there was a possibility that

Counsel would not obtain any fees.  As the California Supreme Court has explained,

> A contingent fee must be higher than a fee for the same legal services paid as they
> are performed.  The contingent fee compensates the lawyer not only for the legal
> services he renders but for the loan of those services.  The implicit interest rate on
> such a loan is higher because the risk of default (the loss of the case, which
> cancels the debt of the client to the lawyer) is much higher than that of
> conventional loans.

*Ketchum*, 24 Cal. 4th at 1132-33, *quoting* Posner, Economic Analysis of Law (4th ed. 1992) at

534, 567.  "A lawyer who bears the risk of not being paid and provides legal services is not

receiving the fair market value of his work if he is paid only for the second of these functions."

*Id.* (internal citation omitted).  Particularly for smaller law firms, such as Counsel here, litigating

large class action lawsuits with no guarantee of payment is perilous.  *Boyd v. Bank of America*

*Corp.*, 2014 WL 6473804, *10 (C.D. Cal. Nov. 18, 2014).   Here, Counsel's payment for

advanced litigation fees and costs has been largely delayed for 11 years.[7]

Awards in common fund cases further support the 22% figure requested here.  *Rigo v.*

*Kason Industries, Inc.*, No. 11-CV-64-MMA DHB, 2013 WL 3761400, at *7 (S.D. Cal. July 16,

2013) (approving 30 percent fee award; noting that "in a study of 287 settlements ranging from

less than $1 million to $450 million, "[t]he average attorney's fees percentage is shown as

31.71%, and the median turns out to be one-third.").  Indeed, courts have found far less favorable

---

[7] Counsel waived its fees related to the settled FMLA claim and settled its claim for fees
in the Ninth Circuit Appeal, and Leonard Carder has been compensated in full for the $697,000 it
advanced in costs incurred in the MDL.  Therefore, Counsel do not seek those fees and costs in
this motion.  Leonard Carder has advanced an additional $125,000 in costs in the Northern
District for which it has not been reimbursed.  Ross Decl. ¶ 29, 32.

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

recoveries to warrant similar or higher awards. *See e.g.*, *Elliott v. Rolling Frito-Lay Sales, LP*, No. SACV 11-01730 DOC, 2014 WL 2761316, at *10 (C.D. Cal. June 12, 2014) (approving 30 percent fee award on $1,600,000 wage and hour class settlement involving 3,500 class members, after less than three years of litigation); *Gomez v. H & R Gunland Ranches, Inc.*, No. CV F 10-1163 LJO MJS, 2011 WL 5884224, at *6 (E.D. Cal. Nov. 23, 2011) (awarding fees of $425,000 on $915,000 total settlement); *Vasquez*, 266 F.R.D. at 491 (award of fees equal to 33 1/3% of the common fund when net settlement fund of $200,000 to be divided up among 177 class members); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 327 (E.D.N.Y. 1993) (awarding 33.8% in fees in a case where counsel recovered 10% of class damages); *In re Med. X-Ray Film Antitrust Litig.*, 1998 U.S. Dist. LEXIS 14888, at *20 (E.D.N.Y. Aug. 7, 1998) (awarding 33.3% fee in antitrust action where counsel recovered 17% of damages). Moreover, the Ninth Circuit's 25% benchmark is already below the market rate for contingency fee litigation. *See Vizcaino*, 290 F.3d at 1049 (noting that the district court found a 28% rate was below the market rate of 30% for contingency fee cases); *Blum*, 465 U.S. at 904 ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers."). Counsel representing employees under individual negotiated contingency fee arrangements generally receive at least one-third of plaintiff's recovery. Counsel here reasonably expected when they undertook this case to recover attorneys' fees in excess of the lodestar fee to compensate them for the known and unanticipated risks they expected to face in this case. Ross Decl. ¶ 68. *See Vizcaino*, 290 F.3d at 1050 ("appropriate to examine lawyers' reasonable expectations, which are based on the circumstances of the case and the range of fee awards out of common funds of comparable size").

Finally, the size of the fund alone does not support a downward adjustment from the Ninth Circuit benchmark beyond that already conceded by counsel. Here, though the gross settlement value of $226,500,000 is substantial, the lodestar cross-check, discussed *infra*, confirms that the circumstances of this case do not implicate the potential "windfall" concerns that arise in some so-called "megafund" settlements. Because none of the relevant factors warrant a downward departure from the Ninth Circuit's benchmark for common fee awards; the already reduced 22% attorneys' fees requests should be awarded.

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

- 16 -

## C.      The Requested Fee Amount is Reasonable Under a Lodestar Cross-Check

The Ninth Circuit has held that the Court may conduct a lodestar cross-check because, "while the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award" *Vizcaino*, 290 F.3d at 1050; *Glass*, 2007 WL 221862, *15; *Consumer Privacy Cases*, 175 Cal. App. 4th at 557. The Ninth Circuit has clearly stated that the lodestar cross-check is only a rough measure, used to ensure that the percentage fee is not inappropriate: "The lodestar method is merely a cross-check on the reasonableness of a percentage figure, and it is widely recognized that the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward early settlement." *Vizcaino*, 290 F.3d at 1050, n. 5.

The lodestar is calculated based on reasonable hours at prevailing hourly rates for each attorney.  *Ketchum*, 24 Cal. 4th at 1131-32.  To conduct a lodestar "cross-check" the court first determines the lodestar, and then divides the total percentage-of-the-common-fund fee requested by that lodestar to determine the "multiplier."  *Hopkins*, 2013 WL 469358, *4.  The court may adjust the lodestar figure to reflect a host of "reasonableness" factors, "including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment."  *Bluetooth*, 654 F.3d at 942. "If the multiplier is within an acceptable range, this adds further support to the conclusion that the fees sought are reasonable." *Id.*

Here, in light of the excellent settlement achieved, the lodestar cross-check – which results in a multiplier of 3.5 to 4 – fully supports Counsel's request for fees in the amount of $49,830,000 of the common fund.

### 1.      Plaintiffs' Lodestar is Reasonable and Appropriate

Here, a lodestar cross-check confirms that the percentage requested is reasonable.  The *Alexander* lodestar is comprised of three categories of hours: (1) work performed by Leonard Carder in the *Alexander* case before transfer to the MDL docket (2004-2005), and after remand

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

back to this Court (2011-present) (2,997.75 hours);  (2) work performed by Leonard Carder during the MDL that pertained solely to the California (*Alexander*) case (3,594.5 hours); and (3) a reasonable portion of the time devoted by the MDL Counsel to the Omnibus work during the MDL (approximately 21,000 – 25,000 hours), as shown below.

| LODESTAR COMPONENTS OF COUNSEL'S FEE REQUEST | |
| --- | --- |
| Leonard Carder Lodestar in N.D. Cal., Before & After MDL *See* Ross Decl. ¶ 29, Exhibit B | $1,732,211.25 |
| Leonard Carder Lodestar in MDL Litigation on California-Specific Work *See* Ross Decl. ¶ 35, Exhibit C | $1,939,610.00 |
| MDL Omnibus Work Reasonable & Necessary to Litigation of *Alexander*, at 25-30% *See* Ross Decl. ¶ 35, Exhibit D | $8,718,000.00  -  $ 10,460,000.00 |
| TOTAL | $12,389,821.25  -  $14,131,821.25 |
| Resulting Multiplier, at 22% Percentage-of-the-Fund | 3.5 - 4 |

The number of hours expended and rates used to calculate the lodestar fee are set forth in the declarations of the MDL Co-Lead Counsel – Beth A. Ross, Susan E. Ellingstad, and Matthew Houston – in support of the instant motion.[8]

As discussed more fully in the accompanying Ross declaration, a large percentage of the work performed during the MDL litigation was of an omnibus nature. *See generally* Ross Decl. ¶ 38 to 58.  MDL Counsel developed an Omnibus record to show that FXG drivers nationwide – who executed a common "independent contractor agreement" and whose terms and conditions of employment were established in common policies, procedures and practices – were employees

---

[8] In determining the lodestar figure, Counsel have exercised billing judgment as they would for a fee-paying client, reducing hours billed to exclude redundancies, inefficiencies, or other time not appropriately charged to a paying client. Ross Decl. ¶ 32.

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

under any common law or statutory employment status test.  A smaller percentage of the work was devoted to litigation of issues unique to each case.  See Ross Decl. ¶ 34-35.[9]

The comprehensive factual record developed by Plaintiffs was predicated entirely on FXG's voluminous common corporate policies and procedures and its corporate decision making at the highest levels, probed through depositions of FXG's CEO, others of its top level executives, and 30(b)(6) witnesses.  Ross Decl. ¶ 56.   It is thus fair to say that virtually all of the underlying Omnibus fact and expert discovery work done in support of class certification, summary adjudication and non-dispositive motion practice was necessary to establish the *California* Drivers' employment status.  Ross Decl. ¶ 55.   Because that singular record was necessary to establish employment status – whether *Alexander* was litigated as a stand-alone action or in the MDL docket – any effort to allocate an exact percentage of the total MDL lodestar to *Alexander* is extremely difficult.

Even if litigated alone, Leonard Carder would likely have amassed a comparable factual record to support the common arguments advanced at class certification and summary judgment stages, including deposing many of the same executives, pursuing production of the same body of FXG policies, procedures, training manuals and other common documents, seeking the same admissions through written discovery, relying on the same expert testimony, and preparation of nearly identical briefing.  Ross Decl. ¶ 56.   And the potential exposure in the *Alexander* case alone – which Plaintiffs estimated to be over $500,000,000 – and the threat posed to the continued viability of FXG's "independent contractor" business model-created powerful incentives for both parties to litigate each and every stage of the *Alexander* case with the same amount of intensity as was devoted to the MDL litigation.  Ross Decl. ¶ 55.  But Plaintiffs also recognize the reality that, absent the MDL, the *Alexander* plaintiffs would have deposed fewer than 105 FXG executives and managers, and some amount of the time devoted to case administration and coordination would not have been performed.  Ross Decl. ¶ 56.  Accordingly,

---

[9] A thorough description of the work performed during the MDL is set forth at paragraphs 38 through 58 of the Ross Declaration filed herewith.

to strike the appropriate balance, Counsel estimates that between 25% and 30% of the Omnibus work in the MDL was reasonable and necessary to the litigation of *Alexander* and that percentage of the MDL hours are included in the calculation of the lodestar here.  Ross Decl. ¶ 54.

The remaining hours that comprise the lodestar – based on time accrued before and after the MDL proceedings as well as Leonard Carder's California-specific hours in the MDL – were likewise accrued on tasks performed for the benefit of the *Alexander* class including: pre-filing factual investigation, interviewing Named Plaintiffs and class members, drafting and filing the original complaint and three subsequent amended complaints, opposing two motions to transfer to the MDL, extensive discovery and non-dispositive motion practice, briefing class certification and summary judgment on behalf of the California class specifically, appealing the adverse summary judgment decision to the Ninth Circuit, settling the uncertified FMLA claims, developing a post-appeal joint trial plan for a merits and damages phase, drafting a mediation statement based on extensive complex analysis of FXG's data, participating in mediation and settlement negotiations, and drafting and arguing the motion for preliminary approval, including defending against an early intervenor.  Given the numerous tasks, the hours of work performed by Counsel are reasonable.[10]

By the time this motion is heard, Counsel will have performed additional work briefing the final approval and fee motions; and Counsel will continue to perform additional work up to and following final approval – including drafting the motion for final approval, responding to any objections that are filed, defending the settlement on appeal (in the unlikely event that an appeal is taken by an objector), and assisting with the settlement administration process by responding to

---

[10] Class Counsel here are not making a separate request to recover their litigation expenses – which amount to approximately $125,000 - though such a request would have been reasonable. Like attorneys' fees, these expenses should be paid from the common fund because all beneficiaries should bear their fair share of the costs of the litigation, and these are the normal costs of litigation that are traditionally billed to paying clients.  *See e.g., Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *Rider v. County of San Diego*, 11 Cal.App.4th 1410, 1423 n. 6 (1992) (costs may be recovered from common fund); *see also Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (attorneys should recover reasonable out of pocket expenses of the type ordinarily billed to paying clients).

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

class member inquiries, helping to resolve any disputes, and ensuring proper settlement distribution.  Ross Decl. ¶ 69.

The rates used in calculating the lodestar are likewise reasonable.  The lodestar should be calculated using hourly rates that are "the prevailing market rates in the relevant community." *Blum*, 465 U.S. at 895.  Courts typically apply each attorney's *current* rates for all hours of work in order to account for the delay in payment resulting from the years it took to litigate the case. *See Missouri v. Jenkins*, 491 U.S. 274, 282-84 (1989) (court should account for delay in payment by applying current rather than historic hourly rates);  *In re Washington Public Power Supply System Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994).

Here, Counsel's experience, reputation and ability justify the rates charged.  Further, these rates are commensurate with those in the local community for attorneys with comparable skill and experience litigating complex wage and hour class actions.  *See* Declaration of Michael Rubin; Declaration of Daniel Feinberg.  These hourly rates, or their historical equivalents, have been paid to counsel by commercial clients, and have been repeatedly approved by other courts, including many within this district.  *Id.*

### 2. A Multiplier in a Range of 3.5 and 4 is Justified Under the Circumstances of the Case

California courts routinely enhance lodestar amounts based on multipliers that "range from 2 to 4 or even higher."  *Wershba*, Cal. App. 4th 255; *Vizcaino*, 290 F.3d at 1051 n. 6.  A multiplier is necessary because the lodestar rates reflect "the general local hourly rate for a *fee-bearing* case" and do "*not* include any compensation for contingent risk, extraordinary skill, or any other factors."  *Ketchum*, 24 Cal. 4th at 1138 (emphasis added).  Thus, in determining whether a multiplier is appropriate, courts also consider the amount involved and the results obtained.  *Hopkins*, 2013 WL 496358, *4-6 (approving enhanced award of 30% of the common fund resulting in a multiplier of 2.76, based on excellent results achieved by class counsel in wage-and-hour class action).  As discussed above, the excellent results achieved for the class over a long, hard-fought course of litigation, especially in light of the risks involved, fully supports a lodestar multiplier in the range of 3.5 - 4.

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

In circumstances similar to the instant case, courts in this district have approved comparable multipliers, even some above the common range.  For example, the court in *Vizcaino* approved a multiplier of 3.8 where, as here, class counsel achieved exceptional results for the class in the face of "vigorous opposition" and "revived their case on appeal."  290 F.3d at 1048-49 (approving 3.8 multiplier equal to 28% of the $98,995,000 common fund).  Likewise, in *Gutierrez*, the court ordered a 5.5 multiplier for class counsel who had "bravely confronted several obstacles" including, as here, "hard-fought dispositive motions," "voluminous discovery," and defending the class on appeal.  2015 WL 2438274, at *7.  The court noted that it had ordered "a multiplier of 5.5 mainly on account of the fine results achieved on behalf of the class, the risk of non-payment they accepted, the superior quality of their efforts, and the delay in payment."  *Id.*  In addition to facing similar obstacles as the counsel in those cases, this fee request is unique in that an appropriate portion of the fees will not be retained by Leonard Carder exclusively, but will go to the common MDL Litigation Fund to be redistributed amongst *all* counsel who prosecuted the MDL contingent cases.  Ross Decl. ¶ 5. A multiplier in the range of 3.5 to 4.0 is entirely reasonable.

Furthermore, the settlement fund, though large, cannot fairly be compared to so-called "megafund" settlements.  In such cases, which are usually consumer or securities class actions, courts sometimes reduce the percentage award from a large common fund to avoid a "windfall" to class counsel due to the likelihood that the multiplier over counsel's lodestar is attributable only to the size of the class or the extent of the damages, rather than to counsel's efforts.  *In re Bluetooth*, 654 F.3d at 943 ("basis for inverse relationship between size of fund and percentage awarded for fees is that in many instances the increase in recovery is merely a factor of the size of the class and has no direct relationship to the efforts of counsel").  The fear of a "windfall" is often confirmed in the incongruous results revealed in the cross-check; for example, in *Gutierez*, class counsel requested the 25% benchmark percentage-of-the-fund, but a cross-check revealed a multiplier of over 10.  2015 WL 2438274.  Here, by contrast, the size of the fund is due to the size of each class member's recovery, many of whom will receive over $100,000.  Ross Decl. ¶ 4.  And the resulting lodestar multiplier of 3.5 to 4 is well within the range approved by courts,

particularly in light of the circumstances of this case.  The lodestar cross-check thus fully supports awarding Counsel the requested 22% fee for skillfully and strategically resolving the case at great benefit to the class.

## IV.    THE COURT SHOULD APPROVE THE REQUESTED SERVICE PAYMENTS TO THE CLASS REPRESENTATIVES

Service awards for class representatives "are intended to compensate class representatives for work done on behalf of the class, to make up for financial and reputational risk undertaken in bringing the action and [ ] to recognize their willingness to act as a private attorney general" and "fairly typical in class action cases." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).  To assess whether an incentive payment is appropriate, courts balance the "number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment."  *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).  The substantial risk of stigma and retaliation to which Plaintiffs submitted, as well as their willingness to bear the costs of an adverse judgment, is justification for the awards sought.  For example, in approving service awards of $25,000 to named plaintiffs in an employment class action, one district court explained that it "evaluates incentive awards using 'relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation and reasonable fears of workplace retaliation[,]'" as well as the "stigma upon future employment opportunities for having initiated an action against a former employer." *Graham v. Overland Solutions, Inc.*, No. 10-CV-0672, 2012 WL 4009547, at *8 (S.D. Cal. 2012) (internal citations omitted).

Here, there are 17 named Plaintiffs who, for the past eight to 10 years, have served as class representatives for the General Class and Overtime Subclass; Plaintiff Pontarolo was recently added as the class representative for the Meal and Rest Period Settlement Subclass.  Plaintiffs request that the Court award $10,000 each to the original named Plaintiffs and $1,500 to Plaintiff Pontarolo, totaling $171,500, for the services they rendered to the class.  This amount is

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

separate and apart from any other recovery to which those class representatives will be entitled under the Settlement as class members.[11]

These proposed payments are fair and reasonable and in recognition of the time and effort each individual invested in assisting Counsel with the investigation, prosecution, and settlement of the case. *See generally* Plaintiffs' Declarations In Support of Preliminary Approval, Doc. Nos. 150-166. The 17 original plaintiffs have been active participants throughout the court of the case. At its inception, the Plaintiffs devoted substantial time to aid Counsel in its investigation of the case. *Id.* Once discovery began in earnest, Plaintiffs produced thousands of pages of documents and reviewed and provided helpful analysis of the many documents produced by FXG. Declarations. Each of the 17 Plaintiffs sat for a half- or full-day deposition. *Id.* Plaintiffs also advised and provided information to Counsel throughout class certification, summary judgment, the Ninth Circuit appeal, mediation, and settlement. *Id.*

The service payments are also designed to compensate class representatives for the risks that they were willing to face by coming forward publicly to put their names on, and their reputations behind, the complaint – a public position that always creates risk that future employers will have concerns about whether those individuals are unduly litigious. Plaintiffs understood this risk, but nonetheless stepped forward to represent all the Drivers, because they felt that it was wrong that they had been classified as independent contractors and thus deprived of rights under California law. *Id.* Additionally, the named forewent the possibility of individual resolution of their claims far earlier, instead enduring 11 years of complex litigation for the benefit of the class.

Plaintiffs seek a significantly smaller service award of $1,500 for Plaintiff Pontarolo, who became actively involved in the litigation recently as the representative for the Meal and Rest Period Settlement Subclass. However, her contribution, helping Counsel develop issues

---

[11] The class representatives' separate settlements for their individual meal and rest period claims should not supplant the service awards sought here. Those individual settlements represent recovery for their unique claims, apart from those of the class and subclasses, and are in consideration for a general release which does not apply to the class.

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

regarding post-2011 drivers and otherwise aiding in the prosecution of the case, has benefitted the settlement subclass.  Declaration of Marjorie Pontarolo in Support of Preliminary Approval, Doc. No. 167.  She also bore the risk associated with putting her name forward on a settlement subclass that was challenged before it was even explicitly defined, let alone approved and certified.  In light of her valuable participation, the relatively small service award requested is appropriate.

The service awards that Plaintiffs seek are also consistent with and actually significantly lower than the range of awards approved by other federal judges in class actions.  "Numerous courts in the Ninth Circuit and elsewhere have approved incentive awards of $20,000 or more where . . . the class representative has demonstrated a strong commitment to the class."  *Garner v. State Farm Mut. Auto. Ins.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *17 n. 8 (N.D. Cal. Apr. 22, 2010) (collecting cases); *see also Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (approving incentive payment of $25,000); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299-300 (N.D. Cal. 1995) (approving incentive award of $50,000 to named plaintiff); *Bradburn Parent Teacher Store, Inc. v. 3M*, 513 F. Supp. 2d 322, 347 (E.D. Pa. 2007) (incentive award of $75,000 to one plaintiff); *Bynum v. Dist. of Columbia*, 412 F. Supp. 2d 73, 80 (D. D.C. 2006) (incentive awards of $200,000 divided among six named plaintiffs).

Finally, the amounts requested are modest in light of both the total value of the settlement and the amounts that class and subclass members will be receiving under the Settlement.  *See Staton v. Boeing Co.*, 327 F.3d 938, 976 (9th Cir. 2003).  The total $171,500 value of the class representative service awards is 0.075% of the total $226,500,000 settlement fund.  Moreover, the amounts requested are equal to or lower than enhancement awards that district courts in California have typically approved in recent, far smaller settlements.  *See, e.g., Ramirez v. Ghilotti Bros. Inc.*, No. C 12-04590 CRB, 2014 WL 1607448, at *2 (N.D. Cal. Apr. 21, 2014) (approving service payments of $15,000 each to three class representatives from $950,000 settlement); *Greene v. Gino Morena Enters. Inc.*, 2014 WL 1607448, at *2 (C.D. Cal. Nov. 4, 2014) (approving two $10,000 service payments from $575,000 settlement fund); *Ontiveros v. Zamora*, 2014 WL 5035935 at *6 (E.D. Cal. Oct. 8, 2014) (approving $15,000 service payment from $2 million settlement fund); *Ross v. U.S. Bank NA*, No. C 07-02951 SI, 2010 WL 3833922

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

at *2 (N.D. Cal. Sept. 29, 2010) (approving four $20,000 service payments from $3.5 million settlement fund); *Bond v. Ferguson Enters., Inc.*, 2011 WL 2648879, at *2, 14-15 (E.D. Cal. June 30, 2011) (approving $11,250 incentive payments from $2.25 million settlement fund). Moreover, this is not a case where representative plaintiffs receive outsized incentive awards while the class members receive nominal recoveries. *See, e.g., Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 463 (E.D. Cal. 2013) ($2,500 rather than $7,500 service award appropriate where each class member was to receive average of $65 under the settlement).   Rather, the average recovery will be between approximately $65,000 and $85,000.

In sum, the requested payments to the class representatives are appropriate in light of their services to, and the risks taken on behalf of, the class and are justified in relation to the overall settlement.

**V.      CONCLUSION**

For the foregoing reasons, this Court should award Counsel $49,830,000 in attorneys' fees and costs, approve $10,000 service awards to each of the 17 original class representatives, and approve a $1,500 service award for the class representative for the Meal and Rest Period Settlement Subclass, all out of the common settlement fund.

Respectfully submitted,

DATED:  November 13, 2015                    **LEONARD CARDER, LLP**

By:  /s/ Beth Ross
                    Beth Ross
                    Aaron Kaufmann
                    David Pogrel
                    Elizabeth Gropman

*Attorneys for Plaintiffs and the Class*

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174