BETH A. ROSS (SBN 141337)
bross@leonardcarder.com
AARON D. KAUFMANN (SBN 148580)
akaufmann@leonardcarder.com
DAVID P. POGREL (SBN 203787)
dpogrel@leonardcarder.com
ELIZABETH R. GROPMAN (SBN 294156)
egropman@leonardcarder.com
LEONARD CARDER, LLP
1330 Broadway, Suite 1450
Oakland, California 94612
Tel: (510) 272-0169
Fax: (510) 272-0174

*Attorneys for Plaintiffs and the Class*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DEAN ALEXANDER, *et. al.*, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>FEDEX GROUND PACKAGE SYSTEM, INC. et. al.,<br><br>        Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No: 3:05-cv-38 EMC<br><br>**DECLARATION OF BETH A. ROSS IN SUPPORT OF PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE SERVICE PAYMENTS**<br><br>Date:    March 24, 2016<br>Time:    1:30 PM<br>Dept.:   Courtroom 5 |

*Sidebar (rotated text):* LEONARD CARDER, LLP ATTORNEYS 1330 BROADWAY, SUITE 1450 OAKLAND, CA 94612 TEL: (510) 272-0169 FAX: (510) 272-0174

DECLARATION OF BETH A. ROSS IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND CLASS
REPRESENTATIVE SERVICE PAYMENTS           Case No. 3:05-CV-38 EMC

I, Beth A Ross, declare as follows:

1. I am an attorney licensed to practice law in the State of California. I am a Partner at the firm of Leonard Carder, LLP (hereinafter "LC") located at 1330 Broadway, Suite 1450, Oakland California 94612. I am the class counsel for the certified Plaintiff class in this matter and my firm is one of three court-appointed Co-Lead Counsel in the multi-district litigation ("MDL") case in which this case was litigated between 2005 and 2011, entitled *In Re FedEx Ground Package Systems Employment Practices Litigation* (MDL Docket 1700, US District Court N.D. Ind. No. 05-MD-527 RM-CN). I have personal knowledge of the facts set forth herein and could competently testify to them if called as a witness.

2. I am a member in good standing of the bar of the State of California; the United States District Court for the Northern, Central, Southern and Eastern Districts of California, the United States Courts of Appeals for the Seventh and Ninth Circuits and the United States Supreme Court. I have substantial experience in complex class actions, including but not limited to serving as one of the court-appointed Co-Lead Counsel in the MDL pretrial proceedings of which this case was formerly a part, as the lead appellate counsel in those cases, and as the certified class counsel in *Estrada v. FedEx Ground Packages Systems, Inc.*, 154 Cal.App.4th 1 (2007).

3. By this motion, the *Alexander* class Plaintiffs seek an award of reasonable attorneys' fees and costs in the amount of $49,830,000 representing 22% of the $226,500,000 million dollar common settlement fund negotiated by counsel and preliminarily approved by the Court. The requested attorneys' fees – while large – represent fair compensation for the tens-of-thousands of hours of legal work that were reasonably and necessarily performed by Leonard Carder and the MDL Counsel during the 11 years this case has been pending. This includes (1) work performed by Leonard Carder in the *Alexander* case before transfer to the MDL docket (2004-2005), and after remand back to this Court (2011-present); (2) work performed by Leonard Carder during the MDL that pertained solely to the California (*Alexander*) case; and (3) a reasonable portion of the time devoted by the MDL Counsel to the Omnibus work during the MDL. For purposes of the lodestar cross-check, these components of the fee are as follows:

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

| LODESTAR COMPONENTS OF COUNSEL'S FEE REQUEST | |
|---|---|
| Leonard Carder Lodestar in N.D. Cal., Before & After MDL *See* ¶ 29, Exhibit B | $1,732,211.25 |
| Leonard Carder Lodestar in MDL Litigation on California-Specific Work *See* ¶ 35, Exhibit C | $1,939,610.00 |
| MDL Omnibus Work Reasonable & Necessary to Litigation of *Alexander*, at 25-30% *See* ¶ 35, Exhibit D | $8,718,000.00   -   $10,460,000.00 |
| *TOTAL* | $12,389,821.25   -   $14,131,821.25 |
| Resulting Multiplier, at 22% Percentage-of-the-Fund | 3.5   -   4 |

4.      A 22% "percentage of the fund" fee recovery is less than the Ninth Circuit benchmark of 25%, is fully supported by a lodestar cross-check, and will not result in a windfall to class counsel at the expense of the class.  After deducting 22% from the $226.5 million common fund and paying the modest costs of administering the settlement, more than $174 million will remain to pay the claims of the 2,016 class members. At a minimum, each class member will be eligible to receive a settlement payment exceeding 40% of the estimated value of his/her claims. The median settlement payment to eligible class members is $84,000, more than 160 class members will be eligible to receive settlement payments larger than $200,000 and the largest settlement payment will exceed $350,000.00.  Class members are not required to prove their claims and will receive individualized notice and claims forms notifying them of their estimated recovery.  Because our firm has been diligent in maintaining current contact information for class members, the parties anticipate that they will be able to locate and pay a very high percentage of the eligible class members.

5.      Fees awarded by the Court for work performed by MDL counsel during the six years the *Alexander* case was litigated in the MDL docket will not be retained exclusively by LC but will instead be apportioned between LC and the other firms that worked together on the MDL cases, as described more fully below.  Although it is usual in MDL litigation for the Court to establish a common benefit trust to collect attorneys' fees and costs recovered in constituent cases

- 2 -

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

DECLARATION OF BETH A. ROSS IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND CLASS REPRESENTATIVE SERVICE PAYMENTS

Case No. 3:05-CV-38 EMC

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

to compensate the MDL co-leads and other counsel for their work, the MDL Court in this case declined to establish such a trust.   Consequently, the MDL Co-Leads, the Plaintiff Steering Committee ("PSC") firms (described *infra*), and many of the originating counsel – have entered into confidential agreements among themselves to return to the MDL litigation fund an appropriate amount of fees and costs recovered by settlement or judgment in remanded cases. Modest settlements have been reached in a number of smaller cases that have been remanded out of the MDL, like *Alexander*, and a portion of the fees recovered in those cases have been returned to the MDL litigation fund.[1]  An appropriate portion of the *Alexander* fee will likewise be returned by LC to the MDL litigation fund for distribution to MDL counsel other than LC for work that was reasonably and necessarily performed to prosecute the MDL cases as a whole.

## SUMMARY OF THE LITIGATION

6.      On November 17, 2004, Plaintiffs filed *Alexander v. FedEx Ground Package System, Inc.*, in the Superior Court for the County of Alameda, alleging that the California Drivers were employees, not independent contractors.  In their Third Amended Complaint, filed October 1, 2007, Plaintiffs asserted damage claims under the Family Medical Leave Act, 29 U.S.C. §2617(a)(1)(b), along with various provisions of the California Labor Code (including, *inter alia*, claims for unreimbursed employment expenses (§2802),  unlawful wage deductions (§ 221), missed meal and rest breaks (§226.7), unlawful coercion (§ 450), and unpaid overtime (§1194), a common law fraud claim, claims to collect civil penalties under Labor Code §203 (waiting time) and §2699 (PAGA), and derivative claims for restitution, declaratory, and injunctive relief under the California Unfair Competition Law, Business and Professions Code §17200 *et. seq.*[2]

7.      FXG filed a timely answer to the complaint and then, on January 3, 2005, removed the action to federal court.  In August 2005, pursuant to a motion filed by FXG, the Judicial Panel on Multidistrict Litigation ("JPML") transferred *Alexander* to a multidistrict litigation ("MDL")

---

[1]   These include three certified class cases (Kentucky, New Hampshire, and Nevada) and five non-class cases (Illinois, Colorado, Massachusetts, Vermont and Connecticut).  Twenty-one of the cases litigated in the MDL are still pending in the Seventh Circuit Court of Appeal.

[2] A proposed Fourth Amended Complaint was filed on September 11, 2015, by stipulation.  Doc. No. 146.

docket before Judge Robert Miller in the Northern District of Indiana. *In re FedEx Ground Package System Inc. Employment Practices Litig.*, (No. II), 381 F.Supp.2d 1380 (J.P.M.L. 2005). Over 62 cases challenging FXG drivers' "independent contractor classification" were eventually transferred to the MDL docket for coordinated pretrial proceedings.

8.    The MDL Court designated lead counsel for both sides and bifurcated the proceedings into liability and damages phases with simultaneous class certification and merits discovery. Three firms, including Leonard Carder, were appointed as Co-Lead Counsel for the Plaintiffs. *In re FedEx Ground Package System Inc. Employment Practices Litigation*, United States District Court for the Northern District of Indiana, Case No. 3:05-MD-527 RM (MDL 1700) at Doc. 52 ("MDL Docket").

9.    Between 2005 and 2007, the parties engaged in extensive written, document, deposition, and expert discovery. The MDL Court's case management order required Plaintiffs to file class certification motions in four "waves" after the close of class certification and merits discovery. Plaintiffs moved to certify a nationwide claim for damages and injunctive relief under the Family Medical Leave Act, along with state law claims for unreimbursed employment expenses, illegal wage deductions, unlawful coercion, waiting time and PAGA penalties, UCL claims that were derivative of these predicate claims, and overtime claims on behalf of an overtime subclass under Labor Code Section 1194. The MDL Court granted certification of all of Plaintiffs' state law claims, but denied certification of the nationwide FMLA claim. Plaintiffs did not seek to certify several of the other claims asserted in the complaint, including claims for missed meal and rest breaks under the California Labor Code or a derivative claim under the UCL and a common law fraud claim.

10.    In May 2008, class notice was sent to the 2,374 *Alexander* Class Members identified by FXG, followed by a Supplemental and Second Supplemental Class Notice sent in September 21, 2009. About 20 persons opted out of the *Alexander* class.

11.    Between April and June 2008, the parties filed cross-motions for summary judgment and summary adjudication on the issue of the Drivers' employment status. On August 11, 2010, the MDL Court entered an order granting FXG's motion for summary judgment in the

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

1   Kansas case.  The MDL Court issued a further Omnibus order on December 10, 2010 addressing

2   the parties' cross motions for summary judgment in all the remaining cases, including *Alexander*.

3   (MDL Docket at Doc. No. 2097).    The MDL Court granted Defendant's motion for summary

4   judgment as to all of Plaintiffs' claims arising under the California Labor Code based on a finding

5   that the Plaintiffs and class members were "independent contractors" as a matter of law.  *Id.* The

6   MDL Court denied Plaintiffs' cross-motion for summary adjudication, and issued no ruling with

7   regard to Plaintiffs' FMLA claim.  Instead, the MDL Court initiated proceedings for remand of

8   the *Alexander* case to this Court.

9          12.      On January 24, 2011, the parties filed a Joint Proposed Pretrial Order detailing the

10   history of the prior proceedings and the remaining issues to be tried.  Doc. 46, Ex. A [MDL Doc.

11   No. 2450).  Thereafter, the MDL Court referred the case back to the JPML with a suggestion for

12   remand to the transferor Court in California.  In late 2011, the JPML remanded the *Alexander*

13   case to this Court for resolution of the remaining FMLA claims.  *Id.* In mid-2012, the parties

14   settled the FMLA claims after conducting discovery, and the Court entered final judgment in

15   FXG's favor.  An amended final judgment was entered by this Court on January 29, 2013.  (Doc.

16   No. 76).

17          13.      Plaintiffs appealed from the adverse judgment to the Ninth Circuit.  FXG also filed

18   a conditional cross-appeal with respect the MDL Court's class certification decision.  On August

19   27, 2014, the Ninth Circuit issued its opinion reversing the MDL Court's decision and finding the

20   California Drivers to be FXG's employees as a matter of law.  *Alexander v. FedEx Ground*

21   *Package Systems, Inc.*, 756 F.3d 981 (9th Cir. 2014).  The Ninth Circuit remanded *Alexander* to

22   this Court with instructions to enter summary adjudication for Plaintiffs on the question of

23   employment status.  *Id.*

24          14.      Shortly after remand in October 2014, the parties recommenced the litigation and

25   began to meet and confer to develop a joint pretrial and discovery plan.  Over a period of months,

26   the parties participated in a cooperative and informal discovery exchange, including the

27   identification and production of voluminous electronic records and documents from Defendant's

28   electronic records pertaining to Plaintiffs' class-wide damage claims and Defendant's various

- 5 -

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169 FAX: (510) 272-0174

defenses to liability. In May 2015, they initiated intensive motion practice with respect to critical disputed legal and factual issues, starting with three "first round" motions filed by FXG pertaining to its key defenses, including (1) a motion to clarify the class definition intended to vastly reduce the size and scope of the class, (2) a motion to limit Plaintiffs' recoverable damages by shortening the length of the damage period, and (3) a motion to exclude settlement deductions from Plaintiffs' damages. *See* Doc. Nos 108 through 113. Both before and after these motions were filed, the parties participated in numerous in-person meetings and telephonic conferences in an effort to narrow the disputed legal and factual issues without formal discovery or unnecessary motion practice in order to move the litigation forward efficiently and expeditiously.

15. In April 2015, the parties began formal settlement discussions to resolve the remaining class and individual claims. In preparation for mediation, FXG provided Plaintiffs with voluminous data from multiple electronic record-keeping systems to enable Plaintiffs to identify the putative class members who drove for FXG on a full-time basis during the class period as well as to value the class damage claims. The data spanned a 15-year period and included scanner and settlement data showing mileage and work hours, settlement payments, deductions, adjustments, route ownership, vehicle records, and dates of service. Plaintiffs engaged a forensic accounting expert who spent dozens of hours reviewing and analyzing these complex records in order to identify those class members who met the full-time criteria, their work hours, their mileage, and wage deductions. Plaintiffs' counsel and staff also processed and analyzed literally thousands of pages of receipts and other records produced by the Named Plaintiffs documenting their damage claims. After months of work, Plaintiffs' expert generated a detailed damage-exposure model and risk analysis based on his comprehensive analysis of the complex data produced by Defendant.

16. The parties selected Michael Dickstein, a highly-respected and skilled mediator with special expertise in complex employment matters, to serve as a neutral. In advance of the mediation, the parties exchanged comprehensive mediation briefs that included their respective analyses of Defendant's pending motions, the strengths and weaknesses of all claims and defenses, and the other potential litigation risks facing both sides.

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

17.     The parties attended two full days of mediation on June 2 and 3, 2015.  The parties entered into a Memorandum of Understanding which was the basis for the Class Action Settlement presented to the Court on August 6, 2015.  Following the August 6, 2015 hearing, the parties engaged in further negotiations in light of concerns raised by the Court with the assistance of the mediator.  As part of the renegotiated agreement the parties agreed to certification of a settlement subclass comprised of class members who continued to drive for FXG during the last four years (between August 1, 2011 and August 31, 2015) in exchange for the release of potential claims they may possess for alleged missed meal and rest periods (for the same time period) under California Labor Code Sections 226.7, 510, IWC Order 9, and derivative claims under the UCL (the "Meal and Rest Period Settlement Subclass").  FXG stipulated to the filing of Plaintiffs' Fourth Amended Complaint, adding Plaintiff Marjorie Pontarolo as a class representative for the Meal and Rest Period Settlement Subclass.  The Court granted preliminarily approval on October 22, 2015 following a hearing on October 15, 2015.

## LEONARD CARDER FIRM HISTORY AND ATTORNEYS' BACKGROUND

18.     Leonard Carder, LLP was founded nearly eighty (80) years ago and specializes in labor and employment law.  The firm – which now includes 29 attorneys – represents clients throughout California and nationally, including labor unions, associated trust funds, and employees in employment law class actions and other representative cases as well as single and multi-plaintiff cases. LC has devoted a special focus to independent contractor misclassification litigation over the last 25 years. Representative independent contractor litigation in LC attorneys have served as lead class counsel have included, *inter alia*, *Estrada v. FedEx Ground Packages Systems, Inc.,* 154 Cal.App.4[th] 1 (2007) (package delivery drivers: IC misclassification/ LC 2802 statewide class action); *Vickery v. Cinema Seven Inc. dba the Mitchell Brothers O'Farrell Theatre,* SF Superior Court, No. 959610 (1998) (exotic dancers: IC misclassification/ LC 2802, minimum wage and overtime class action);  *LaBrie v. UPS Supply Chain Solutions*, U.S. District Court ND Cal., No. 08-CV-3182 PJH (2008) (package delivery drivers: independent contractor misclassification/ FLSA collective action); *Aguilar v Carey Limousine*, JAMS, No. 1100059356 (2012) (2010). (limousine drivers: IC misclassification/ LC 2802 and overtime multi-plaintiff

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

arbitration); *Ardon v. 3PD, Inc.*, US District Court  C.D. Cal., No. ED CV13-01758-DTB (2013) (appliance delivery and installers: IC misclassification/ LC 2802 and overtime PAGA collective action); *Narayan v. EGL, Inc.*, US District Court ND Cal., No. C 05-4181 RMW  (2005) (delivery drivers:  IC misclassification/ LC 2802 and overtime class action); *Kairy v. SuperShuttle Int'l Inc.*, U.S. District Court N.D. Cal., No. 08-cv-2993-JSW (2008) (airport shuttle drivers; IC misclassification/ LC 2802, minimum wage/ overtime class action); *Ayala v, Antelope Valley Press*, Cal. Supreme Court, No. S206874 (2013) (CELA amicus curiae – class certification standard in IC misclassification cases).

19.     During the close to 11 years this case has been pending before this Court, the MDL, and the Ninth Circuit, LC has staffed the case with one lead attorney supported by one or two other primary attorneys, and one or two legal assistants, bringing in other attorneys and staff to assist with discrete projects when the scope of work necessitated additional time.  Now-retired LC Partner Lynn Faris served as the lead Plaintiffs' attorney in this case between November 2004 and August 2011.  During that time, Ms. Faris devoted nearly 100% of her practice to this case.  I have worked on this case in a leadership capacity since its inception, and took over responsibility as the lead attorney in 2011 when Ms. Faris retired.  Other LC attorneys with primary responsibility for staffing this case have included special counsel Kirsten Zerger (2005 -2006 ), former senior associate Hina Shah (2005-1006), former senior associate Erik Fink (2006-2007 and 2008), senior associate associate/partner Eleanor Morton (2007-2011), partners Aaron Kaufmann and David Pogrel (2012 to the present), and associates Elizabeth Morris (2012-2014) and Elizabeth Gropman (2014 - present).

20.     Attached as **Exhibit A** is a chart that identifies the LC attorneys and staff who have worked on the *Alexander* and MDL cases since their inception and that summarizes their academic credentials, years of practice, and current contingent fee billing rates.  These billing rates are at or below the market rates charged by or awarded to attorneys with similar skill,

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

background and experience, as further detailed in the supporting declarations of Michael Rubin and Dan Feinberg filed concurrently herewith.[3]

21.     I am a 1988 graduate of the Boalt Hall School of Law at the University of California where I was awarded a Robert Cowell Labor Law fellowship in 1987 and served as an articles editor for the Industrial Relations and Labor Law Journal in 1988.  I served as a law clerk to the Honorable Lawrence K. Karlton of the United States District Court for the Eastern District of California from 1988 to 1990.  At the conclusion of my clerkship, I became an associate attorney with LC and was named a partner in 1995.  I have practiced exclusively in the areas of labor and employment law with a specialty in class action litigation challenging independent contractor misclassification schemes and wage and hour violations.   I am an elected fellow in the College of Labor and Employment Lawyers and I have been named a California Super Lawyer in each year since 2009.  I have served on the Board of Directors of the AFL-CIO Lawyers Coordinating Committee, I am a member of the ABA Labor and Employment Law and Litigation Sections, and was a chapter reviewer for the fifth edition of Lindemann/ Grossman treatise *Employment Discrimination Law* published in 2012 (Ch. 42 – Attorneys' Fees and Ch. 44 – Settlement).  I am a frequent invited speaker on wage and hour law and employment class action litigation for the ABA Labor and Employment Section, the California State Bar Labor and Employment Section, the San Francisco Bar Association, the California Employment Lawyers Association and other professional conferences and meetings.  I have served as class counsel in a variety of class and collective action and multi-plaintiff employment cases including but not limited to *Vickery, supra; Estrada, supra; Aguilar, supra; Ardon, supra.*, referenced above as well as *King v. Turlock Irrigation District*, U.S. District Court Eastern District California No. CV-F-90-271 (1993) (FLSA collective action); *Travers v The Pacesetter Corp*., Los Angeles Superior Court Case No.  BC238504 (2000) (LC 2802 class action); and *Reid v. Extended Stay*

---

[3] In 2008, I was awarded attorneys' fees by the *Estrada* trial court at the rate of $650 per hour rate.  In 2015, I was awarded attorneys' fees for work performed in *Ardon v. 3PD, Inc.*, *supra.* at a below market rate of $725 dollar/ hour.  LC's 2016 billing rates have been updated to reflect the prevailing market rates for class action litigators in the San Francisco Bay Area.  *See* Declarations of Michael Rubin and Dan Feinberg in Support of Plaintiffs' Motion for Attorneys' Fees and Costs, filed concurrently herewith.

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

*America,* Alameda County Superior Court, No. 2002055285 (2004) (CA manager misclassification overtime class action).

22.     Lynn Rossman Faris is a 1980 graduate of the Golden Gate University School of Law, where she graduated *summa cum laude* and served as editor-in-chief of the Golden Gate University Law Review.  Ms. Faris served as law clerk to Chief Justice Rose Bird at the California Supreme Court from August 1980 to August 1981.  Thereafter, Ms. Faris worked as an associate attorney and partner in the labor and employment firm of Neyhart, Anderson, Nussbaum, Reilly and Freitas between 1981 and 1988, as in-house counsel to the Operating Engineers Union Local 3 between 1988 and 1995, and as a partner at LC between 1995 and 2011. Ms. Faris practiced exclusively in the areas of labor and employment law during her 32 years of legal practice and litigated numerous labor and employment cases in both trial and appellate courts including class and collective action cases involving independent contractor, minimum wage, overtime, and prevailing wage enforcement claims.

23.     Eleanor Morton is a 2001 graduate of the Northeastern University School of Law. Ms. Morton served as a law clerk to United States District Judge Lynn Adelman in the Eastern District of Washington from 2001 to 2003.  She joined LC in 2003 as an associate attorney and became a partner in the firm in 2008. She specializes in labor and employment litigation.  She has served as class counsel in *Roberts v. Best Buy*, Contra Costa County Superior Court Case No. C-02-1642 (CA overtime/ manager misclassification class action) and has been an active member of the litigation team in both *Estrada*, *supra,* and the national MDL action, *In re FedEx Ground Package Systems Employment Practices Litigation,* MDL 1700 (N.D. Ind.).

24.     Aaron Kaufmann is a 1990 graduate with honors from the University of California, Hastings College of the Law.  He clerked for the Honorable Edward Dean Price, United States District Judge, Eastern District of California from 1990 to 1991.  He has litigated employment law cases in private practice for over 20 years.  Prior to joining LC in March 2011, Mr. Kaufmann was a principal at Hinton, Alfert, Sumner & Kaufmann ("HASK"), where he represented employees in class and individual actions.  He argued as amicus counsel for the California Employment Lawyers Association to the California Supreme Court in the *Ayala v. Antelope*

- 10 -

*Valley Newspapers, Inc.*, in which the Court took up whether a class action should be certified to address the allegation that over 500 newspaper carriers were misclassified as independent contractors.  Mr. Kaufmann has published numerous articles on employment law, and is a frequent guest lecturer on wage and hour law and employment class action litigation at a variety of law schools, professional conferences and meetings

25.     David Pogrel is a 1999 graduate of the Boalt Hall School of Law at the University of California, Berkeley.  He has practiced law since November 1999, with an emphasis in employment litigation on behalf of employees and a particular focus on wage and hour class actions.  Prior to joining LC, Mr. Pogrel worked with Mr. Kaufmann at HASK, where he started as an associate there in 2005 and became a principal in 2009.  Prior to HASK, Mr. Pogrel served for five-and-a-half years as a Staff Attorney with the Legal Aid Society-Employment Law Center, a nationally recognized worker-advocacy organization practicing in many areas of employment law on behalf of low-income and disenfranchised workers.   Mr. Pogrel has been named a Northern California "Super Lawyer" or "Rising Star" in the area of Plaintiffs' side Employment Litigation in every year since 2009. Mr. Pogrel has been a Chapter Editor for the ABA FLSA Treatise annual supplement since 2011.

26.     Kirsten Zerger is a 1977 graduate of the Boalt Hall School of Law at the University of California, Berkeley.  Between 1975 and 1977 she served as a law clerk and staff attorney to the United Farm Workers of America, AFL-CIO in Salinas, California.  She has served as Chief Counsel to the California Teachers Association (1979-1989), a legal writer for the California State Bar Association (1988-1993), and has practiced and taught mediation and conflict resolution with the Kansas Institute for Peace and Conflict Resolution at Bethel College in North Newton, KS.  She has published dozens of articles on the subjects of labor and employment law, collective bargaining, conflict resolution and mediation, and between 1988 and 1993 she served as the Editor-in-Chief and principle author of *California Public Sector Labor Relations (*Matthew Bender, 1989).

27.     Hina B. Shah is a 1995 graduate of the UC Hastings College of the Law.  Following her graduation, she worked as a staff attorney for the U.S. Court of Appeals for

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

the Ninth Circuit, served as the Director of the Labor and Employment Project at the Asian Law Caucus, and practiced labor and employment law on behalf of unionized and low-wage workers as a private practitioner including at LC.  In 2006, she left private practice to become a clinical faculty member with the Women's Employment Rights Clinic at the Golden Gate University School of Law.  Eric M. Fink is a 1995 graduate of the New York University School of Law.  Mr. Fink practiced labor and employment law on behalf of unionized and low wage workers at Willig, Williams & Davidson in Philadelphia, Pennsylvania and taught legal writing and appellate advocacy at the Stanford University before joining LC as an associate attorney in 2006.  Mr. Fink left LC in 2008 to join the faculty at the Elon University School of Law in Greensborough, North Carolina, where he teaches, *inter alia*, labor and employment law.

28.    Elizabeth Morris is a 2007 graduate of the Stanford University School of Law.  In 2010, following graduation, she joined LC as an associate attorney where she specialized in litigating wage and hour class action cases.  She left in 2014 to become the Deputy Director of the Center for WorkLife law at the UC Hastings College of the Law, where she teaches Advanced Employment Law.  Elizabeth Gropman is a 2013 graduate of the UC Hastings College of the Law.    Following graduation, she practiced class action employment law on behalf of workers at Sanford Heisler Kimpel, LLP.  In 2014, she joined LC as an associate attorney, where she practices wage and hour class action litigation and has worked primarily on the *Alexander* litigation.

### LEONARD CARDER BILLING PRACTICES, LODESTAR FEE AND LITIGATION COSTS TO DATE

29.    Attached as **Exhibit B** is a chart that accurately summarizes the work performed by LC during non-MDL phases of the *Alexander* case in the Northern District of California, showing the total number of hours worked by attorneys, legal assistants and law clerks which could reasonably be billed to a fee-paying client categorized by task (Table 1) and time-keeper (Table 2).  Since the inception of the litigation in 2004, our firm has devoted 2997.75  attorney and paralegal hours to the *Alexander* case outside of the MDL docket (exclusive of time worked on the Ninth Circuit appeal and on the FMLA issues) representing a lodestar fee of $1,732,211.25.

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169 FAX: (510) 272-0174

30.     In addition to the hundreds of thousands of dollars that LC invested and risked in the MDL (described below), LC has paid expenses for separate prosecution of the *Alexander* action of approximately $124,721.57 (summarized in Exhibit B, Table 3). These costs, which have not been reimbursed to LC, include expert and mediator fees, travel, Westlaw/ Lexis, filing fees, transcripts, postage, copying and so on.  LC does not seek separate compensation for these costs, but will be reimbursed for them from any fee awarded by the Court from the common fund.

31.     It is the custom and practice of our firm to bill for work performed in six minute increments.  As a general rule we do not "block bill" but instead bill time separately for each discrete task performed.  To prepare **Exhibit B**, I personally reviewed the complete set of contemporaneous time records maintained by LC in a commercial time and billing software program (Sage-Time-Slips) and assigned task-based billing codes to each time entry.

32.     I further reviewed the time billed by each attorney and paralegal to each set of tasks, and deleted several hundred time entries that, in my professional judgment, could not reasonably be billed to a fee paying client.  I also excluded 887 hours billed to the file for time spent on the Ninth Circuit appeal (representing a lodestar fee of $502,000), and 426  hours billed to the file for time spent litigating the FMLA claim (representing a lodestar fee of approximately $214,000.00) because we resolved our claim for appellate fees with FXG, and because the we waived our fees for time spent on the FMLA claim as a term of the FMLA settlement.[4]  The remaining tally of billed time represents the legal work performed by LC attorneys and legal assistants that was reasonable, necessary and appropriate for the proper representation of the Plaintiff class in this case.

## THE MDL ATTORNEYS, LODESTAR, AND LITIGATION COSTS

33.     The MDL Counsel who litigated this case between November 2005 and January 2011 included attorneys and staff from 45 law firms from across the country.  In its initial case management orders entered in November 2005, the MDL court designated three firms to serve as

---

[4] While fees for the Ninth Circuit Appeal and FMLA claim were previously settled, Counsel suggest that the time incurred on these aspects of the cases should be considered for the purposes of deciding on a multiplier.

Co-Lead Counsel for the Plaintiffs including Leonard Carder, Harwood Feffer LLP (New York, NY), and Lockridge, Grindal & Nauen (Minneapolis, MN). The Co-Leads were charged with responsibility for managing and directing all aspects of the litigation for the benefit of all the constituent cases. The Court also appointed three additional firms to serve on a Plaintiffs' Steering Committee ("PSC") to assist the co-leads in managing and directing the litigation: Cureton Caplan PC (Delran, NJ), Siegel Brill et. al. (Philadelphia, PA), and Zimmerman Reed (Minneapolis, MN). The court-appointed Co-Lead firms were heavily involved in every aspect of the pre-trial work. Attorneys and staff of the MDL Co-Lead firms performed approximately 65% of the work on the MDL cases, 25% of the work was performed by the three other PSC firms, and the remaining 10% of the work to a number of other firms. Nearly all of the work that pertained specifically to the *Alexander* case was done by Leonard Carder personnel.

34.     During the six years that the MDL docket was active, the MDL Counsel collectively billed over 135,000 hours to the MDL case file, representing a lodestar fee calculated at current rates of approximately $57,000,000.00. The "Omnibus" work included time spent for the benefit of all cases including, *e.g,* case management and administration, affirmative discovery, drafting common pleadings, motions and supporting documents, and expert work, while the "State-Specific work" included defensive discovery (*e.g.* responding to interrogatories, document production, deposition defense), drafting case specific pleadings and briefs.

35.     Attached as **Exhibit C** is a summary chart of time incurred in the MDL by LC on work that pertained specifically and solely to the California (*Alexander*) case, broken down by task. Attached as **Exhibit D** is a summary chart of the time incurred in the MDL by the MDL Counsel collectively.[5] Table 1 accurately reflects the lodestar fee reported by the MDL Co-Leads, as well as the PSC firms and the other firms (as assigned by the Co-Leads), broken down by percentage of time spent on Omnibus and State-Specific work. Table 2 accurately reflects time spent by each of the Co-Lead firms distinguishing between the Omnibus and State-Specific

---

[5]     The hours incurred by the other co-lead firms as reflected in this chart and elsewhere in this declaration are supported by the declarations of Susan Ellingstad and Matthew Houston filed in support of the instant motions. As explained in their declarations, they each reviewed and coded their time and billing statements that form the basis of the summary chart.

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

1    work performed during each phase of the litigation and broken down by task.  Table 3(a)-(c)

2    accurately reflect time spent by each of the Co-Lead firms, broken down by timekeeper.

3         36.    In preparing **Exhibit D**, I also reviewed the complete set of LC's contemporaneous

4    time and billing records for the MDL case for 2005 through early 2011, and assigned task-based

5    codes to each entry.  Additionally, I coded each entry to distinguish between time spent for the

6    benefit of all cases, the Omnibus work, and time spent on State-Specific work. I also separately

7    coded all time devoted specifically to tasks related solely to the *Alexander* case during the MDL

8    proceeding, nearly all of which was done by LC attorneys and staff.  The chart also incorporates

9    summaries of the time and billing records maintained by the MDL Co-Lead firms, Lockridge

10   Grindal and Nauen, PLLC, and Harwood Feffer, LLP as well as summaries of the time records

11   provided to the MDL Co-Leads by the PSC and other originating counsel during the course of the

12   litigation.  Approximately $ 34,871,316.00 of the MDL lodestar fee represents Omnibus work

13   (approximately 84,000 hours) and $21,299,698.67 represents State Specific work (approximately

14   51,000 hours).  The portion of the MDL lodestar fee attributable to work that LC performed that

15   was specific to the *Alexander* case alone, as reflected in LC's time and billing records, is

16   $1,939,610 (3,594.5 attorney and paralegal hours).

17        37.    The MDL Counsel also advanced approximately $4.5 million in expenses to fund

18   the substantial costs of the litigation which included, *inter alia,* Westlaw and Lexis research,

19   postage, copying, transcripts, and travel, as well as the costs associated with more than 320

20   depositions taken and defended by the MDL attorneys across in the country, expert witness and

21   deposition fees, establishing and maintaining a website for posting information for class members

22   and clients and a web-based electronic document depository for use by all of the MDL attorneys.

23   The PSC shouldered approximately 73% of the burden (for an outlay of $ 3.1 million) and the

24   remainder was contributed by most of the originating counsel.  LC's contribution to these costs

25   was approximately $679,000.[6]

26

---

27   [6]  Funds sufficient to fully reimburse the MDL counsel who contributed funds to pay
     these costs have been recovered by the MDL litigation fund from the settlements reached in the
     cases discussed in footnote 1 above and all but three firms have been fully paid for the costs
28   advanced from those funds.  Because the costs have been reimbursed from another source,

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

38.     Based on the close and careful review undertaken by me and the MDL Co-Leads, (as described in their declarations), of the contemporaneous time and billing statements reflecting work performed during the MDL proceedings through early 2011 (when the MDL court suggested the case for remand to the JPML) we estimate that between 60% and 65% of the MDL lodestar represented Omnibus work that was reasonable and necessary to litigation of the common threshold issue of whether the FXG pickup and delivery drivers, like the *Alexander* class, were employees or independent contractors. The remaining 35% - 40% of the time invested in the case was State Specific work, meaning time devoted litigation of issues unique to the constituent MDL cases. A description of the major categories of work performed during the MDL per the analysis that I conducted with the other Co-Leads is as follows:

**A.     General Case Administration and Management**

39.     This included case organization and coordination, comprehensive research regarding potential legal claims that could be asserted in each state (followed by amendments to the pleadings), preparation and service of the mandatory Rule 26 disclosures (including  review and production of many thousands of pages of documents were reviewed and produced on behalf of each of the approximately 215 Named Plaintiffs), preparation and filing CMC statements with the court and court appearances, quarterly meetings of counsel, strategy and planning with respect to each phase of the litigation, photographic site visits, preparation and filing of case management and pretrial orders, and attorney fee issues.

**B.     Discovery:**

**(1)     Plaintiffs' Affirmative "Offensive" Discovery**

40.     Plaintiffs served seven separate sets of production requests during discovery which resulted in FXG's production of over 3.5 million pages of electronic records and paper documents pertaining to the common employment status issues.  This massive quantity of material was reviewed, analyzed, coded and stored in a centralized document management database for use by

Plaintiffs do not seek to recover any portion the $4.5 million dollars in MDL costs from the *Alexander* settlement.

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

counsel and included, *inter alia*, all versions of the Driver contracts and addenda in effect during the class period, policies and procedures in effect during various portions of the class periods and changes thereto, documents pertaining to Driver recruitment, training, management, supervision, and termination of the plaintiff Drivers, documents pertaining to manager training and supervision, documents pertaining to the sale and rental of goods and services to Drivers, FXG involvement in the purchase and leasing of the Drivers' trucks, years' worth of email correspondence of dozens of identified corporate and regional executives, corporate and other communications between FXG management and the plaintiff Drivers, and more.

41.     Plaintiffs took approximately 105 full-day depositions of FXG witnesses and third parties, including FXG's then-Chief Executive Officer, its Executive Vice President, all six of its Division Vice Presidents, 10 senior and lower-level Vice Presidents, and over 20 managing directors with responsibility for different substantive aspects of FXG's operations (e.g. route planning and design, contractor relations, safety, fleet management and vehicle acquisition, driver "settlement" compensation, and more), regional and local terminal managers, 10 Rule 30(b)(6) subject matter witnesses, and several third-party deponents.  Lawyers from my firm took more than 40 of the 105 affirmative depositions, and participated in preparing for many of the depositions taken by other MDL Counsel.

**(2)     Defensive Discovery**

42.     Defendant served comprehensive written interrogatories and production requests on each of the 215 Named Plaintiffs, including requests for the Plaintiffs' personal tax returns and financial records, insurance applications, claims for workers' compensation or employee benefits, documents reflecting communications with FXG or others about their employment status, when, where and how they performed their work, expenses they incurred, their days and hours or work, and the nature and extent of their claimed employment expenses. The *Alexander* plaintiffs, collectively, produced more than 10,000 documents in response to these requests.   The MDL Counsel also prepared for and defended the depositions taken by Defendant of every one of the 215 Named Plaintiffs, including all seventeen (17) original *Alexander* plaintiffs.

//

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

## C.  Discovery Motions

43.    Numerous disputes arose during the discovery phase, some of which were resolved without court intervention following discovery conferences between the parties, and approximately14 others resulted in formal discovery motions.  These included, *inter alia*, motions by Plaintiffs to compel production of FXG's corporate policies and procedures, and production of documents and a 30(B)(6) deponent regarding an IRS notice of proposed assessment of employment taxes founded on a preliminary finding that the FXG Drivers were employees not independent contractors and a motion to quash deposition subpoenas directed to absent class members. Other discovery motions included Defendant's motion to compel production of the Named Plaintiffs' tax returns and personal financial records, and to compel production of documents and information regarding communications between Plaintiffs, their counsel, and representatives of the International Brotherhood of Teamsters.

## D.    Non-Dispositive Motion Practice

44.    In addition to the discovery motions, there was also significant additional non-dispositive motion practice.  There were both dozens of routine and uncontested procedural motions (e.g., to amend the pleadings, for extensions of time) and dozens more contested procedural and evidentiary motions relating to matters of significance.  For example, Plaintiffs filed a comprehensive motion to strike over 60 declarations from putative class members submitted by FXG in support of its opposition to class certification because FXG had not previously identified these individuals as potential witnesses in its Rule 26 disclosures.  At the same time, Plaintiffs moved to strike a 40-page single spaced purported "State Law Variation Appendix" filed by Defendant along with its class certification opposition briefs that Plaintiffs contended was an unauthorized legal brief.  Both motions were granted.  During the summary judgment briefing, Plaintiffs filed three motions to strike the "Statements of Genuine Issues" filed in opposition to Plaintiffs' comprehensive statement of undisputed facts.  Defendant, for its part, opposed Plaintiffs' motion for approval of the class notices and sought a stay of the class notice procedure.  It also filed a motion to strike Plaintiffs' summary judgment briefs from the record

and another motion to exclude evidence offered by Plaintiffs that it argued was "individualized" and inconsistent with the class certification order.

45.    In early October 2007, Plaintiffs – in a heavily litigated motion – sought a temporary restraining order and preliminary injunction from the Court to enjoin Defendant from terminating the contracts of all of the "Single Work Area" (or SWA) contractors in California who the California Court of Appeal had found to be employees in its 2007 *Estrada* opinion.  The TRO application was supported by many dozens of declarations from *Alexander* class members and comprehensive briefing.  All of the work performed on this aspect of the case was for the benefit of the *Alexander* class and was performed by LC attorneys and staff.

**E.    Expert Discovery**

46.    Defendant engaged and designated six experts who were commissioned to conduct extensive and expensive qualitative and quantitative studies in an effort to prove that class certification in these cases was inappropriate and that the Plaintiff drivers were independent contractors and not employees on the merits. These included two labor economists, two survey experts, and two industry safety experts to testify regarding the Federal Motor Carrier Safety Regulations.  Plaintiffs engaged and designated four experts to offer affirmative and rebuttal testimony, including a forensic accountant and business valuation expert, a labor economist and survey expert, and two regulatory and tax attorneys.  Collectively, the experts designated by both sides produced more close to twenty expert reports.  All sat for full-day depositions and several were deposed twice.  Plaintiffs filed *Daubert* motions challenging the opinions of three of FXG's experts that were ruled on by the Court ruled on in connection with its October 15, 2007 class certification order in the lead case. MDL Doc. 906.  Defendant filed a motion to exclude the expert testimony of one of Plaintiffs' experts that was ultimately denied by the Court.

**F.    Class Certification**

47.    The MDL Counsel filed certification motions in all 42 of the putative class actions. The primary issue presented in these motions was common: whether the Drivers' classification as employees or independent contractors could be proven with a common set of facts under the various permutations of the multi-factor legal test adopted in every jurisdiction.  For this reason,

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

Co-Lead Counsel prepared a comprehensive "Omnibus Fact Memorandum" detailing the common facts proffered in support of the dozens of class certification motions that distilled and summarized the relevant evidence contained in the massive discovery record described above. Counsel also prepared a comprehensive set of model legal briefs discussing the common factual and legal issues that were then customized by a team of attorneys to address the unique law and substantive claims asserted in each of the constituent cases, and gathered and filed hundreds of class member declarations in support of the entire group of motions.

48. Plaintiffs similarly responded to the common legal arguments proffered by Defendant in opposition to these motions in a common and single Omnibus Reply Brief in addition to briefing addressing issues unique to the particular cases. The Court ruled on the class certification motions in two stages: it entered an initial order in the *de facto* lead case, *Craig v. FedEx Ground Packages System, Inc*., that originated in Kansas and included a nationwide class claim under ERISA, and then directed the parties, *inter alia*, to file supplemental briefing in each of the other cases explaining why the same or different outcome would be appropriate.

49. Ultimately, the MDL Court certified classes in 26 cases presenting claims where the threshold question of employment status turned on common law employment status test and rejected Plaintiffs' motions to certify claims in 12 cases that turned on variations of the so-called statutory "ABC" employment status test. Defendant filed an unsuccessful petition with the Seventh Circuit Court of Appeal seeking discretionary review of the lead class certification ruling entered in the Kansas case pursuant to Federal Rule of Civil Procedure 23(f). As noted above, numerous other procedural motions were filed by both sides in connection class certification.

**G. Summary Judgment/ Adjudication of Employment Status Issue**

50. Beginning in April 2008, each side filed more than 60 motions for summary judgment/adjudication on the issue of the Drivers' employment status. Plaintiffs' supported the affirmative motions filed in the class cases with a single 75-page "Separate Statement of Undisputed Material Facts" that summarized a 12 volume appendix of evidence (totaling over 1,500 pages) of common evidence. The underlying evidence included, *inter alia*, relevant deposition testimony of dozens of FXG witnesses, tens of thousands of pages of documents, and

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

1  expert testimony.   In addition, Plaintiffs filed a singular brief in support of all of the motions in

2  support of the common argument that the California Court of Appeal's employment status ruling

3  in the *Estrada* case was entitled to collateral estoppel effect and barred Defendant from contesting

4  the Drivers' employment status under any iteration of the common law test.

5       51.    On August 11, 2010, the MDL Court entered an order granting FXG's motion for

6  summary judgment in the Kansas case, followed by a further Omnibus order on December 10,

7  2010 addressing the parties' cross motions for summary judgment in all the remaining cases,

8  including *Alexander*.  (MDL Docket at Doc. No. 2097).   The MDL court granted Defendant's

9  motions for summary judgment as to all of Plaintiffs' claims predicated upon a common law

10 employment status test – including the claims asserted in *Alexander* – and denied Plaintiffs' cross

11 motions with regard to these same claims.  *Id.*  The detailed statement of facts set forth in the

12 MDL Court's August 2010 order granting summary judgment to FXG was more than forty (40)

13 pages long and was grounded almost entirely on the factual record developed by *Plaintiffs*, as

14 Defendant's motions were supported primarily by the FXG independent contractor agreement.

15      52.    The MDL Court awarded summary judgment to Plaintiffs in a small number of

16 cases (Illinois, New Hampshire, Kentucky and Nevada) but issued no rulings at all in connection

17 with non-class claims that, like the *Alexander* Plaintiffs' FMLA claims, were governed by either

18 an "economic realities" or a statutory "ABC" employment status test.  Instead, the MDL Court

19 initiated proceedings to remand this subset of cases – including *Alexander* – to the transferor

20 courts for further proceedings.

21 **AT A MINIMUM, BETWEEN 25% AND 30% OF THE MDL LODESTAR REPRESENTS
22 ATTORNEYS FEES FOR WORK THAT WAS NECESSARY TO LITIGATION OF THE
   *ALEXANDER* CASE**

23      53.    Based on my familiarity with the work performed during all phases of the MDL

24 litigation and the legal and factual issues unique to the *Alexander* case under California law, I

25 estimate that between 25% and 35% of the MDL lodestar fee generated by the Omnibus work

26 represents legal work that was reasonable and necessary and to the successful prosecution of the

27 *Alexander* case and proper representation of the class in the context of the MDL proceeding. This

28 includes: (1) approximately 3594.5 attorney and paralegal hours LC devoted to work that was

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

specific to the *Alexander* case during the MDL proceeding, (or a lodestar fee of $1,939,610) as reflected in the time and billing records of LC and summarized in Exhibit C, and (2) between 25% and 30% of the MDL Omnibus lodestar representing on the range of between approximately 21,000 and 25,000 attorney and paralegal hours and a lodestar fee in the range of between approximately $8,718,000 and $ 10,460,000. (*See supra*, ¶ 3).[7]

54.     Because the Omnibus work performed in the MDL was directed at developing a comprehensive and singular factual record to support a finding of employment status in all of the constituent MDL cases, any effort to allocate the MDL lodestar between the constituent cases is extremely difficult.   At the same time, there can be no dispute that a very substantial percentage of the Omnibus work performed by LC and the other MDL Counsel represents work that was reasonably performed and necessary to the proper representation of the *Alexander* class.  By my best estimation, between 25% and 30% of the time devoted by the MDL counsel to the Omnibus work was essential to Plaintiffs ability to establish the *Alexander* class members' employee status as a matter of law.[8]

55.     The potential exposure in the *Alexander* case alone – which Plaintiffs estimated to be over $500,000,000 – and the threat posed to the continued viability of FXG's "independent contractor" business model – created powerful incentives for both parties to litigate each and every stage of the *Alexander* case with the same amount of intensity as was devoted to the MDL litigation as a whole.  For this reason, it is fair to say that virtually *all* of the Omnibus fact and expert discovery work, class certification, summary adjudication and non-dispositive motion

_____

[7]   As shown in Exhibit C, Table 2, LC attorneys and paralegals devoted over 25,000 hours of time to the MDL file representing a lodestar fee of over $15 million dollars.

[8]   Other possible approaches to apportioning the MDL lodestar attributable to the indivisible Omnibus work between the consolidated cases would likely under- or over-compensate counsel. For example, allocating 100% of the MDL lodestar to each case, while analytically sound, would likely over-compensate counsel because only a portion of the time devoted to case coordination and administration is fairly attributable to each case, while allocating the hours *pro rata* to each case, or *per capita* based on the percentage of represented class members would under-compensate California counsel because of the higher damages available under California law and availability of fee shifting. The fact that an exact apportionment of the MDL lodestar is not possible under the unique circumstances here supports use of a common fund approach rather than the lodestar/multiplier.

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

1  practice was necessary to establish the California Drivers' employment status whether the

2  *Alexander* case was litigated as a stand-alone action or in conjunction with the other cases in the

3  MDL docket.

4      56.    The comprehensive factual record developed by Plaintiffs was predicated entirely

5  on FXG's voluminous common corporate policies and procedures and its corporate decision

6  making at the highest levels probed through depositions of FXG's CEO and others of its top level

7  executives.  The Omnibus factual and legal presentations made by Plaintiffs in support of the

8  class certification and summary adjudication motions were grounded in this common body of

9  evidence developed with FXG's own documents, testimony of its 30(b)(6) witnesses and other

10 corporate executives and managers, and other admissions made in discovery.  While, absent the

11 MDL, the *Alexander* Plaintiffs would have deposed fewer than 105 FXG executives and

12 managers, and some amount of the time devoted to case administration and coordination would

13 not have been performed, the identical factual record amassed during the MDL to support the

14 common arguments advanced at class certification and summary judgment stages was necessary

15 to successful prosecution of the *Alexander* case, including deposing many of the same high-level

16 executives, pursuing production of the same body of FXG policies, procedures, training manuals

17 and other common documents, seeking the same admissions through written discovery, relying on

18 the same expert testimony, and preparation of identical common briefing (including, but not

19 limited to, the Omnibus Fact Brief filed in support of the class certification motions, and the

20 Omnibus Separate Statement of Undisputed Facts filed in support of the summary judgment

21 motions and the many related filings).

22     57.    I am confident that the outstanding result achieved for the *Alexander* class, *i.e.*

23 summary adjudication that the Drivers were employees under California's fact intensive multi-

24 factor employment status test, would not have been possible without the exhaustive undisputed

25 factual record that was developed and motions filed in the MDL litigation.  It was this record that

26 formed the basis for the MDL Court's findings in its class certification and summary judgment

27 orders and that also formed the foundation of the Ninth Circuit's opinion that the California

28 Drivers were employees as a matter of law, a ruling that ultimately avoided the exponentially

- 23 -

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

1  higher litigation costs, lengthier delay, and ultimately the uncertainty inherent in a jury trial.  As

2  noted above, while we would likely have taken many fewer depositions in stand-alone litigation,

3  by contrast – e.g. document discovery, experts, and briefing – there would have been little

4  reduction in the volume of the other common work necessary both to prosecute the claims and

5  respond to FedEx Ground's forceful defense of its business model.   For these reasons, I

6  conservatively estimate that, at a minimum, between 25% and 30% of the MDL Omnibus lodestar

7  was generated by work essential to the successful litigation of the *Alexander* case and must

8  therefore be considered as part of the *Alexander* lodestar for purposes conducting a lodestar cross-

9  check.

10        58.      Finally, I believe the litigation has been handled efficiently and with appropriate

11  staffing. FXG was represented by extremely able and aggressive counsel throughout the MDL

12  proceeding (and afterwards) who were formidable opponents at every stage of this high-stakes

13  litigation.  Notwithstanding the size of the litigation and the leadership role played by our firm,

14  we endeavored at all times to staff the case conservatively to avoid duplication of effort and to

15  conserve our limited resources.  For example, we relied on our well-trained legal assistants to

16  perform the time consuming work of document organization, review and analysis, client

17  communications, and deposition preparation which avoided the over-use of attorney time.   We

18  did not double-staff depositions, nor did we spend excessive time reviewing and correcting each

19  other's written work product. Further, we assigned projects both within and outside our firm to

20  small teams of subject matter specialists (e.g. document review, briefing writing, and depositions)

21  to avoid overlap and maximize efficiencies.  Different teams of attorneys deposed FXG's

22  witnesses and defended the depositions of the Named Plaintiffs.  Because Ms. Faris's knowledge

23  of the facts ran deeper than any other lawyer in the case, she personally took the depositions of

24  FXG's highest-ranking executives. Similarly, I led the summary judgment effort.  The labor

25  intensive and highly detailed work of marshalling the facts from the voluminous discovery record

26  into a single and concise statement of undisputed facts, as well as drafting the omnibus and

27  template pleadings was done by the lead attorneys in my firm (including me, Eleanor Morton and

28

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

1  Lynn Faris) and assigned out the work of State-Specific brief writing based on the common

2  templates.

3  **LEONARD CARDER ACCEPTED REPRESENTATION OF ALEXANDER CLASS ON
   A CONTINGENCY BASIS AND UNDERTOOK THE SUBSTANTIAL RISK OF NON-
4  PAYMENT AND/OR A LENGTHY DELAY IN PAYMENT**

5       59.     LC undertook representation of the *Alexander* Plaintiffs on a wholly contingent

6  basis, in the face of significant risks that the litigation would be well-lawyered and hard-fought,

7  expensive and time-consuming, and that success was far from certain.  Based on our experience

8  in litigating the *Estrada* case for five years, followed by a 9.5 week trial (during which time no

9  meaningful settlement discussions ever took place), we expected that FXG was unlikely to settle

10 early and would insist on taking the case to trial.  As any resolution of the case would be years

11 away, there was a significant risk that we might never be compensated for our work.  Any lawyer

12 representing large numbers of affected employees in a class action case must inevitably be

13 prepared to make a tremendous investment of time, energy, and resources. These risks were

14 amplified in this case because – despite our vigorous objections – the case was transferred into an

15 MDL docket nine months after it was filed and Plaintiffs had no choice but to litigate in a

16 consolidated proceeding with dozens of other cases filed under the laws of as many states.

17      60.     From the outset, one objective of the *Alexander* litigation was to expand the

18 *Estrada* employment status ruling to FXG drivers who contracted with Defendant for multiple

19 routes that they operated with secondary drivers and helpers (the "MWAs").  The MWAs were

20 excluded from the *Estrada* class. And, while the *Estrada* trial court found the class of single-work

21 area drivers were employees, it agreed with Defendant that the lone MWA driver whose claims

22 were tried alongside those of the certified class was a *bone fide* independent contractor.  In

23 analyzing the *Borello* factors in his Statement of Decision, Judge Schwab expressed the view

24 (which we believed to be incorrect) that the MWA Drivers had entrepreneurial opportunities that

25 were inconsistent with employee status.   As such, including MWA Drivers in *Alexander* was an

26 extremely risky litigation strategy because of the adverse MWA-related rulings on the MWA

27 drivers in the *Estrada* case both in regard to class certification and liability.  However, while the

28

- 25 -

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

1    decision to include the MWAs presented a significant challenge, the ultimate result is now that

2    hundreds of class members who were excluded from *Estrada* will receive long-awaited relief.

3          61.    LC actively sought appointment by the MDL Court to serve as Co-Lead Counsel

4    to protect the California class *despite* the significant risk that some or all of the other cases could

5    well have limited success or not be successful at all.   We believed we were uniquely qualified to

6    direct the MDL litigation because of our experience litigating and trying *Estrada* and other

7    independent contractor cases; we had gained a deep familiarity with FXG's "independent

8    contractor" business model and other related aspects of its business, the key witnesses and

9    documents to pursue in discovery, and the defenses Plaintiffs would face to class certification and

10   the merits of the employment status issue.  In order to leverage that experience and knowledge for

11   the benefit of the *Alexander* class, LC accepted primary responsibility for representing the

12   putative class members in the dozens of other cases transferred into the MDL docket.  Many of

13   these cases asserted claims under largely untested state statutes that provide for far more limited

14   relief that is available under California law and/or novel common law theories with no possibility

15   of statutory fee shifting.

16         62.    The prospect of a longer than usual delay in final resolution of this case and the

17   likelihood of a long delay in payment, or no payment at all, was also heightened significantly by

18   virtue of its transfer to the MDL docket and the case management plan adopted by the Court.

19   While the initial case management schedule was aggressive, the deadlines were predictably

20   extended multiple times both because discovery and other disputes arose and because cases were

21   continually being "tagged-along" into the MDL docket.  Additionally, even though all of the

22   MDL cases challenged FXG's "independent contractor" classification, and were consolidated for

23   discovery and pretrial purposes, the threshold issue had to be analyzed and decided separately

24   under the law of each state and each of the constituent cases retained its separate identity.   For

25   this reason, it took the MDL Court a full year to work its way through the initial set of class

26   certification motions, and more than two years to rule on the parties' cross-motions for summary

27   judgment.

28

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169 FAX: (510) 272-0174

63.     By pursuing an MDL litigation strategy, FXG itself created a *de facto* nationwide challenge to its independent contractor business model which, in turn, created enormous litigation risks for both sides.  Where in *Estrada* it was sufficient to focus discovery on FedEx's state-wide operations, the nationwide focus of the MDL case caused Class Counsel to focus the discovery on FedEx's corporate decision-makers and decision-making at the highest levels, and also to pursue a highly risky "all of nothing" summary judgment litigation strategy. The work of developing a comprehensive record of undisputed (and irrefutable) facts derived *entirely* from the testimony of defense witnesses and documents, with no reliance on anecdotal evidence or testimony from the Plaintiff drivers, and marshalling those facts into a concise record to support the dozens of class certification and summary judgment filings required enormous effort and a high degree of skill.

64.     Even after prevailing on liability at the Ninth Circuit, the *Alexander* class continued to face significant risks.  As noted above, prior to mediation, FXG filed three motions aimed at limiting the size of the class and the scope of FXG's liability; had FXG succeeded on all or any of the motions, class members' potential recovery could have been significantly decreased. Moreover, the class would have faced a complicated, hard-fought, time-consuming, and expensive damages phase trial.

65.     Some of these risks in these types of cases are known at the outset of the litigation, while many develop over the course of time due to changes or developments in the law, new appellate opinions, actions by defendants or defense counsel, court rulings on certification or other motions, or other events that often cannot be predicted at the time my firm commits to litigation.  Even in cases where plaintiffs initially prevail on motion work or at trial, appellate risk and delay further jeopardize the chance of meaningful recovery for the class.

66.     In this case many of the risks undertaken by our firm in accepting representation of the *Alexander* class were fully realized.  The litigation was hard-fought by aggressive and able defense counsel through to a liability finding on summary judgment, over a 10-year period. The MDL Court found the SWA and the MWA drivers alike were independent contractors relying on an interpretation of California law modeled after a novel formulation of the common law agency test adopted in 2009 by the D.C. Circuit in *FedEx Home Delivery v. NLRB*, 563 F.3d 492 (D.C.

Cir. 2009) that focusing on the supposed entrepreneurial opportunities of the MWA drivers. Plaintiffs ultimately prevailed only after reviving their case through a successful appeal to the Ninth Circuit; and no meaningful settlement discussion pertaining to the *Alexander* case occurred until after the Ninth Circuit appeal was decided and FXG's liability was fixed.

67.     My firm has been involved in several other cases that are currently pending, or have been delayed for years in the courts of appeal – both state and federal – and we have also litigated cases where the class obtained nominal or no recovery despite, in my professional opinion, meritorious claims.  In several other cases, our firm has recovered fees below our lodestar, often with a significant discount either because we thought it prudent in order to provide meaningful relief to the Class, and for unpredictable events such as employer insolvency that inevitably lead to reduced settlements.  Thus, when we do succeed in vindicating the employment rights on behalf of a class of employees and bring meaningful relief to workers as has occurred in this case, our firm depends on the recovery of attorneys' fees, with a multiplier where appropriate, to properly compensate us for our work and recognize this risk incurred and time invested.

68.     LC's significant commitment of time and resources to this case has precluded our firm from performing a substantial amount of work for our hourly clients or other contingent fee cases during the close to 11 years this case has been pending.  LC advanced significant litigation costs and undertook the substantial risk of nonpayment and/or a delay in payment for time spent by LC attorneys and paralegals from the inception of the case to the present.  Wage and hour cases like this one, which challenge a defendants' core business model, are "undesirable" in that regardless of the size of the potential recovery, settlement before trial is very difficult and the employees are unable to afford the costs of litigation.  In taking on the representation of the Plaintiff class in this case, our expectation was that, if successful, we would be awarded a substantial enhancement of the lodestar fee to compensate us for the known risk and the expected lengthy delay to a resolution of the case.

//

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

## LC WILL CONTINUE TO PERFORM SIGNIFICANT WORK ON THE CASE AFTER THE INSTANT MOTION IS FILED

69.     After this fee submission is complete, the other LC attorneys, staff and I expect to spend additional time on this matter to bring this matter to a close, including time overseeing the process of notifying the over 2,000 class members of the settlement and other administration tasks, drafting the motion for final approval and completing the final approval process, attending the final approval hearing, monitoring payout to class members and resolving potential disputes, responding to questions and concerns of class members and the Settlement Administrator and potential objections, submitting any final accounting required by the Court, and assuring the proper approval and distribution of any residue to the designated *cy pres* beneficiaries. Due to both the number of class members and the large size of the settlement payments – which in some cases will exceed $350,000 – we anticipate that LC attorneys and staff will very likely spend significant additional hours on the litigation prior to final approval. Plaintiffs will file a supplemental declaration with the Court closer to the time of the hearing to document these additional hours.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed this 13th day of November, 2015 at Oakland, California.

Respectfully submitted,

**LEONARD CARDER, LLP**

Dated: November 13, 2015           By:   */s/ Beth A. Ross*
                                            Beth A. Ross
                                            *Attorneys for Plaintiffs and the Class*

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174