Steven F. Helfand, SBN 206667
HELFAND LAW OFFICES
1400 SW 137th Avenue, Unit F112
Hollywood, FL 33027
Telephone:   415.596.5611
Email:       sh4078@gmail.com

John William Davis, SBN 200113
501 West Broadway, Suite 800
San Diego, CA 92101
Telephone:   619.400.4870
Email:       john@johnwdavis.com

Attorneys for absent class members Rafick El-Hani &
El-Hani Services, Inc.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| DEAN ALEXANDER, *et al*.<br><br>         Plaintiff,<br>*vs*.<br><br>FEDEX GROUND PACKAGE SYSTEM, INC.,<br><br>         Defendant. | Case No.: 3:05-CV-38-EMC<br><br>**OBJECTION AND NOTICE TO APPEAR BY RAFICK EL-HANI AND EL-HANI SERVICES, INC.**<br><br>Ctrm.  5<br>Hon.   Edward M. Chen<br>Date:  April 7, 2016<br>Time: 1:30 p.m. |

Objection and Notice to Appear by Rafick El-Hani and El-Hani Services, Inc.

1

Rafick El-Hani and El-Hani Services, Inc. [hereafter collectively "Objectors"], by and through counsel object as follows:

# I. OBJECTIONS

## A. The Settlement is Unfair and Unreasonable.

### 1. The settlement contains a warning sign of an unfair deal: a "clear sailing" agreement.

A clear sailing clause stipulates that attorney awards will not be contested by opposing parties. *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011); Settlement Agreement, pp. 19-20.

"Such a clause by its very nature deprives the court of the advantages of the adversary process." *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991). The clause "suggests, strongly," that its associated fee request should go "under the microscope of judicial scrutiny." *Id*. at 518, 525; *Childs v. United Life Ins. Co.*, No. 10-CV-23-PJC, 2012 U.S. Dist. LEXIS 70113, at *13-*14 & n.6 (N.D. Okla. May 21, 2012). The clear sailing clause lays the groundwork for lawyers to "urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees." *Weinberger*, 925 F.2d at 524; accord *Bluetooth*, 654 F.3d at 948.  *Gooch v. Life Investors Ins. Co. of Am*. found that a clear-sailing agreement that awarded class counsel disproportionate fees could be evidence of settlement unfairness. 672 F.3d 402, 425 (6th Cir. 2012) (finding potentially problematic clear-sailing clause acceptable

Objection and Notice to Appear by Rafick El-Hani and El-Hani Services, Inc.

2

because class counsel received only 2.3% of settlement value; reversing on other grounds).

**2. The release is overbroad; the named plaintiffs were inadequate; liability is transferred from FedEx to absent class members**

Objectors, like many other absent class members, had multiple employees servicing the routes. These employees were non-signatories to a FedEx Operating Agreement and therefore are not members of the settlement class.

The retention of these drivers was expressly contemplated by the FedEx Operating Agreement. The FedEx Operating Agreement provides:

> Contractor may employ or provide person(s) to assist Contractor in performing the obligations specified by this Agreement. All persons so employed or provided by Contractor shall be qualified pursuant to applicable federal, state and municipal safety standards and the FedEx Ground Safe Driving Standards, and shall be fully trained, at Contractor's expense. to operate the Equipment. Contractor understands and agrees that such persons shall not be considered employees of FedEx Ground and that it is Contractor's responsibility to assure that such persons conform fully to the applicable obligations undertaken by Contractor pursuant this Agreement." Declaration of Rafick El-Hani, p. 13, section 2.2.

The inherent inconsistency with the exclusion of those hired pursuant to section 2.2 is plain. The inconsistency is compounded into material detriment since absent class members supplant FedEx for overtime liability vis-a-vis these non-signatories. Put simply, if it is true that class members were misclassified then presumably so was everyone else, including those employed pursuant to section

Objection and Notice to Appear by Rafick El-Hani and El-Hani Services, Inc.

3

2.2.  Class members are now exposed to the very claims they have brought against FedEx.  The Notice is silent as to this fact and has misled the class.  A notice may not be misleading.  The notice is misleading.  It violates due process and Fed. R. Civ. Proc., Rule 23.  *Molski v. Gleich,* 318 F.3d 937, 952 (9th Cir. 2003) [Notice is not adequate if it misleads the class]; *In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. 488, 504 (D. Kan. 2012) (denying approval where *cy pres* beneficiaries were not designated); *Dennis v. Kellogg*, 697 F.3d 858, 869 (9th Cir. 2012); see also, *In re Thornburg Mortg., Inc. Secs. Litig.*, 885 F. Supp. 2d 1097, 1111 (D.N.M. 2012) (outlining *cy pres* defects).

Worse, class members are purportedly releasing the claims of their employees (non-signatory drivers) against FedEx and presumably supplanting themselves in place of the settling defendant as to penultimate liability for any such claims.  The named representatives were likely inadequate and not similarly situated to the vast majority of class members.  An evidentiary hearing may be required to flesh out precisely how and why the named Plaintiffs are inadequate.  The class members may now face claims that mirror those settled here and would potentially be judicially estopped from disputing liability.

There is no concession for class members who have or had additional drivers such as Objectors.  This sort of untenable situation actually could be detrimental to route holders with employees as it could foist liability on them in place of the

Objection and Notice to Appear by Rafick El-Hani and El-Hani Services, Inc.

4

settling defendant.  The release is overbroad and there may be a need for subrogation of claims to FedEx.

### 3.  A "claims-made" settlement was unnecessary and stymies claims.

FedEx can make required payment to current operators for which addresses and banking information are already known.  The claim form should have only been required for address changes.  Other limited exceptions also may have existed to warrant a claim form in certain expressly defined and limited circumstances not found here.  For past drivers, a claim form should have only been required if last known address information had changed as well.  In other words, it should have been presumed that every driver could participate in the settlement on a minimal level.  Exceptions or challenges, including address changes, could have been accounted for without the need for all absent class members to file a claim form.  FedEx would know, for example, which drivers participated in the *Estrada* case.  Likewise, FedEx knows who has current operating agreements, banking information, and the like.  This is compounded by the fact that the notice and attached claim form is unduly lengthy, confusing and difficult to understand.

### B.  Attorneys Fees are excessive

Attorneys for the class have indicated in the Notice that they intend to seek fees in an amount equal to 22% of the fund, inclusive of expenses.

Objection and Notice to Appear by Rafick El-Hani and El-Hani Services, Inc.

5

Consideration of fee petitions submitted by counsel representing a plaintiff class requires the utmost judicial scrutiny and discretion.  It is at this stage that counsel for the class is transformed from the champion of the class to a competing claimant against the fund intended to recompense the wrong suffered by the class. REPORT OF THE THIRD CIRCUIT TASK FORCE, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 251 (Oct. 8, 1985) (hereinafter "*Task Force Report*").  The amount sought here is suggestive of collusion.

In essence, the district court assumes the fiduciary role for the class that its counsel filed during the litigation, but vacated upon submission of the fee petition. *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 253 (7th Cir. 1988), *cert. denied*, 493 U.S. 810 (1989); *City of Detroit v. Grinnell Corp.*, 560 F.2d 1093, 1099 (2d Cir. 1977) ("*Grinnell II*"); *Task Force Report* at 255.  Because objections by class members are rare and defendants, having made their contribution to the settlement, are uninterested in the distribution, the district court must act with moderation and a jealous regard for the rights of the class members in determining a reasonable attorney fee.  *See, e.g., Rothfarb v. Hambrecht*, 649 F. Supp. 183, 237 (N.D. Cal. 1986) (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 469 (2d Cir. 1974) ("*Grinnell I*")); Deborah A. Klar, *Attorney's Fees in Securities Class Actions: Recent Developments Under the Common Fund Doctrine*, SECURITIES LITIGATION (1991); *Task Force Report* at 251; *In re Equity*

Objection and Notice to Appear by Rafick El-Hani and El-Hani Services, Inc.

6

*Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1325 (C.D. Cal. 1977) (not only must the courts avoid awarding windfall fees, but they must avoid every appearance of having done so).

> **1. The need to cross-check a contingent fee against counsel's lodestar is particularly important in a "mega-fund" case such as the one at bar.**

Notably, this is not a typical class action. Rather, it is a "*mega-fund*" case. See *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 106 F. Supp. 2d 721, 735-36 (D.N.J. 2000) (noting that percentage awards in mega-fund cases range from 4.1 percent to 17.92 percent of fund and awarding 4.8 percent of fund.); *see also In re Baldwin-United Corp. Litig.*, 1986 WL 12195 (S.D.N.Y.) (attorneys' fees constituted 4.1% of the $183.8 million settlement fund); *In re Washington Public Power Supply Sys. Sec. Litig.*, 779 F.Supp. 1063 (D.Ariz.1990); *In re Corrugated Container Antitrust Litig.*, 1983-2 Trade Cas (CCH) ¶ 65,628 (S.D.Tex. September 1, 1983) (awarding fee of 9 percent of $366, million fund); *In re Agent Orange Prod. Liab. Litig.*, 611 F.Supp. 1296 (E.D.N.Y.1985), (fee award constituted 5.5 percent fee of the $180 million settlement fund); *In re MGM Grand Hotel Fire Litig.*, 660 F.Supp. 522 (D.Nev.1987), (fee award constituted 7 percent fee of the $205 million settlement fund.); *In re Washington Public Power Supply Sys. Sec. Litig. ("WPSS"),* 19 F.3d 1291, 1297, 1301 (9th Cir.1994) ($687

Objection and Notice to Appear by Rafick El-Hani and El-Hani Services, Inc.

7

million settlement fund; 4.658 percent fee award reversed and remanded because district court abused its discretion in *refusing* to award a risk multiplier; court indicated that a greater award was appropriate); *In re Folding Carton Antitrust Litig.,* 84 F.R.D. 245 (N.D.Ill.1979) ($200 million settlement fund; 6.6 percent fee award); *In re Nasdaq Market-Makers Antitrust Litig.*, 187 F.R.D. 465 (S.D.N.Y. 1998) (awarding fees and expenses of 14.4 percent of the common fund); *Bowling v. Pfizer,* 922 F.Supp. 1261, 1283-84 (S.D. Ohio 1996) ($102.5 million settlement fund; 10 percent fee award plus separate award of up to 10 percent of all future contributions to settlement fund); *Sioux Nation of Indians v. United States,* 227 Ct.Cl. 404, 650 F.2d 244, 247 (1981) ($106 million settlement fund; 10 percent fee award); *Stender v. Lucky Stores, Inc.,* No. 88-cv-1467 (N.D.Cal. Apr. 20, 1994) ($107 million settlement; fees *and costs* consumed 12.8% of recovery) (reported in 18 *Class Action Reports* 338 (May-June 1995)); *In re Shell Oil Refinery,* 155 F.R.D. 552 (E.D.La.1993) ($170 million settlement fund; 17.92 percent fee award).

Accordingly, a "*declining percentage*" approach is certainly warranted here. The rationale for this approach is to account for economies of scale: "*In many instances the increase [in fund size] is merely a factor of the size of the class and has no direct relationship to the efforts of counsel*." See, In re Nasdaq, 187 F.R.D. at 486.

Objection and Notice to Appear by Rafick El-Hani and El-Hani Services, Inc.

8

The fee sought by lead counsel far exceeds what is customarily awarded when applying the "percentage of fund" method in cases of this magnitude.

**2. It is not an abuse of discretion for this Court to apply the lodestar method simply because class counsel prefer that the Court follow the percentage of recovery approach.**

The only fee award that could be considered reasonable under the circumstances is one that compensates class counsel for work that benefited the class without negating such benefit in the process or creating a windfall for counsel. *Detroit v. Grinnell Corp*, 560 F.2d 1093, 1098 (2nd Cir. 1977) ("Courts and commentators have repeatedly warned that too little judicial regard for the interests of the benefited class can easily result in lesser recoveries for intended beneficiaries because of massive fees for enterprising attorneys."); *In re Superior Beverage/Glass Container*, 133 F.R.D. 119, 126 (N.D. Ill. 1990) (in no case should a fee award consume an untoward portion of the class recovery; what is left for the class after fees have been awarded is always of paramount consideration) ("*Superior Beverage*"); *see also Grunin v. Intl. House of Pancakes*, 513 F.2d 114, 127 (8th Cir. 1975), *cert. denied*, 423 U.S. 864 (1975) (the primary concern is to ensure that such awards reasonably compensate the attorneys for their services, and are not excessive, arbitrary or detrimental to the class).

Objection and Notice to Appear by Rafick El-Hani and El-Hani Services, Inc.

9

### 3. Even if the Court employs the percentage of recovery method to compute fees, it should cross check the reasonableness of such an award under the lodestar/multiplier method.

To avoid a several million-dollar windfall to counsel and confirm the overall reasonableness of any percentage of recovery award, the court must necessarily employ the lodestar approach to determine attorney fees.  Indeed, "District Courts often use the lodestar method as a cross-check on the percentage method in order to ensure a fair and reasonable result.  *See, e.g., Vizcaino v. Microsoft Corp.*, 142 F. Supp. 2d 1299, 1301 (W.D. Wash. 2001).  *See also Coordinated Pretrial,* 109 F.3d at 607; *Fischel v. Equitable Life Assurance Society*, 307 F.3d 997, 1007 (9th Cir. 2002).  In order to ensure that all necessary data is before the court, attorneys are generally required to submit detailed affidavits which itemize and explain their fee claims. Also, many courts have required that an evidentiary hearing be held at which each claimant is subject to cross-examination. *Grunin v. Intl. House of Pancakes,* 513 F.2d 114, 127 (8th Cir. 1975).  This Court should apply such scrutiny to this case in order to ensure that the compensation of damaged class members is not improperly reduced by an unreasonable windfall for class counsel. **Attorneys' fees are excessive** – Class counsel in this case anticipate applying for fees in the proximity of 22%.  Attorneys fees in this type of case is not intended to

Objection and Notice to Appear by Rafick El-Hani and El-Hani Services, Inc.

10

be a boon to class counsel. The class members are the ones who are to benefit from a class action.

There is a distinct body of law addressing fee awards to class counsel in mega-fund cases (those over $50 million). Although courts generally apply a percentage method in class action settlements, many courts have suggested that the commonly-used 25% fee is only a "benchmark" for an award of fees in class action cases, since in some events such is not appropriate as it would amount to a windfall to counsel. Many courts have now become accustomed to using a sliding scale with the percentage decreasing as the magnitude of the fund increases.

<u>The Manual of Complex Litigation,</u> 3rd, speaks to this issue:

An award of attorneys' fees in a common fund case is committed to the sound discretion of the trial court, considering the unique factors in the case. The court awarding such a fee should articulate reasons for the selection of the given percentage sufficient to enable a reviewing court to determine whether the percentage selected is reasonable. The factors used in making the award will vary, but may include one or more of the following:

- the size of the fund created and the number of persons benefited;
- the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel;
- the skill and efficiency of the attorneys involved;

Objection and Notice to Appear by Rafick El-Hani and El-Hani Services, Inc.

11

- the complexity and duration of the litigation;

- the risk of non-payment

- the amount of time devoted to the case by plaintiffs' counsel; and

- the awards in similar cases.

While the trend has been toward the percentage method, courts continue to award attorneys' fees in some common fund cases based on the lodestar or a combination of the two methods.  **<u>Use of the lodestar may be more appropriate than the percentage of the fund method where the fund is extraordinarily large.</u>**  As with percentage fees, an award of attorneys' fees under the lodestar method should fairly compensate the attorney for the reasonable value of the services beneficially rendered, based on the circumstances of the particular case, (emphasis added) Manual for Complex Litigation, 3rd, pp. 197-201, §24.121 & §24.122.

    Thus, there is sound basis for awarding class counsels' fee based purely on counsels' lodestar.  Regardless, should the Court be inclined to award fees based on the percentage approach, counsel should at the least be required to fully substantiate their fees by reference to the above factors listed in the Manual for Complex Litigation.

    Also on point is *In re: NASDAQ Market – Makers Antitrust Litigation*, U.S.D.C., So. Dist. NY, 187 F.R.D. 465; 1998 U.S. Dist. LEXIS 17557; 1998-2 Trade Cas. (CCH) P72, 337 (Decided 11/9/98) – In this landmark case, U.S.

Objection and Notice to Appear by Rafick El-Hani and El-Hani Services, Inc.

12

District Judge Robert W. Sweet did an exhaustive analysis of attorneys' fees in mega-fund cases. The Court reasoned that the beginning point in any class action settlement is assessing fees from a common fund is to determine the true value of the settlement, and then he stated, "25% . . . is not the benchmark for circumstances, the percentage will decrease as the size of the fund increases." *NASDAQ* at p. 21.

The *NASDAQ* Court went on to state, "where the fund is unusually large, some Courts have used a 'sliding scale, with the percentage decreasing as the magnitude of the fund increased . . . ' citing Manual for Complex Litigation, 3rd, §24.12 at 189, Fed. Jud. Ctr. (1995) (citations omitted); *See, e.g.*, *Branch v. FDIC*, 1998 U.S. Dist. LEXIS 7815, 1998 WL 151249 (March 23, 1998) (applying 14% to $22 million; 12% of the next $10 million, and 5% over and above $32 million)."

The *NASDAQ* Court continued, "this sliding scale is explained in part by economics of scale . . . it is generally not 150 times more difficult to prepare, try and settle a $150 million case than it is to try a $1 million case. As noted in *In re: First Fidelity Securities Litigation,* 750 F. Supp. 160 (D.N.J. 1990), 'there is considerable merit to reducing the percentage as the size of the fund increases. In many instances, the increase is merely a factor of the size of the class and has no direct relationship to the efforts of counsel, ' *Id.*, at 164 n.1."

Objection and Notice to Appear by Rafick El-Hani and El-Hani Services, Inc.

13

This procedure was adopted in the Third Circuit in *In re: Prudential Insurance Company America Sales Practice Litigation Agent Actions; et al.* U.S. Ct. App., 3rd Cir., 148 F. 3d 283; 1998 U.S. App. LEXIS 17057; 41 Fed. R. Serv. 3d (Callaghan) 596 (1998); Cert. Den. 1/1999, where the court, in a mega-fund case awarded a fee of 6.7%.

The fee request by class counsel in the present case represents an extraordinary windfall to class counsel. The Court is urged to scrutinize the fee application of class counsel and, applying sound judgment, disallow such a arge fee award and instead carve out a substantial portion of the fee request and add it to the benefits accruing to the class.

## II.  CONCLUSION

The Court should decline to grant final approval to the proposed settlement. Assuming, arguendo, the proposed settlement is approved, attorneys fees should be dramatically reduced.

Respectfully submitted,

Dated: January 5, 2015                                 _____/s/_____

Steven Franklyn Helfand

1400 SW 137th Avenue, Apt. F112
Hollywood, FL 33027
Telephone:  415.397.0007
Email:        sh4078@gmail.com

Objection and Notice to Appear by Rafick El-Hani and El-Hani Services, Inc.

14