UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEAN ALEXANDER, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>FEDEX GROUND PACKAGE SYSTEM, INC., et al.,<br><br>  Defendants. | Case No. 05-cv-00038-EMC<br><br>**REDACTED/PUBLIC VERSION**<br><br>**ORDER GRANTING FINAL APPROVAL AND PLAINTIFFS' MOTION FOR ATTORNEY'S FEES**<br><br>Docket No. 185, 204 |

Previously, the Court conditionally granted Plaintiffs' motion for final approval and deferred ruling on Plaintiffs' motion for fees, costs, and incentive awards. *See* Docket No. 215 (order). The Court has now received updated information from Plaintiffs regarding the response rate as well as additional information related to fees. *See, e.g.*, Docket Nos. 234, 243-44 (supplemental declarations). Having reviewed that information, the Court hereby rules as follows.

## I.   FINAL APPROVAL

It appears that one late claim was submitted (*i.e.*, past the May 27, 2016, claims filing date). That claim is worth approximately $148,000. *See* Docket No. 244 (2d Supp. Myette Decl. ¶ 13). It is not clear from the papers submitted whether the parties have agreed to credit that claim. Assuming that the parties have not so agreed, the Court hereby orders that that claim be deemed valid. At best, the claim was submitted only a few days late, and the Court sees no prejudice to any party or class member in recognizing the claim.

Accordingly, final approval is now granted outright. Plaintiffs have made additional efforts to reach out to nonclaiming class members. After those additional efforts, 98% of the net settlement fund is being claimed. *See* Docket No. 244 (2d Supp. Myette Decl. ¶ 12). There are only approximately 100 people who have not filed claims. *See* Docket No. 244 (Ross Decl. ¶ 7).

1  All reasonable efforts to contact these individuals have been exhausted.

## II.     FEES, COSTS, AND INCENTIVE AWARDS

The Court grants the incentive awards requested by Plaintiffs – *i.e.*, $10,000 to each original named Plaintiff and $1,500 to Plaintiff Marjorie Pontarolo. The incentive awards are reasonable given the time and effort each individual invested in the litigation, which has lasted more than ten years.

The remaining issue for the Court is fees/costs. Plaintiffs have asked to be awarded 22% of the global settlement fund – *i.e.*, $49.83 million.[1] As the Court previously noted, fee awards in megafund cases present difficult questions.

> "[W]hen a common fund is extraordinarily large, the application of a benchmark or standard percentage may result in a fee that is unreasonably large for the benefits conferred." *In re Copley Pharm., Inc.*, 1 F. Supp. 2d 1407, 1413 (D. Wyo. 1998). "'[A]bsent unusual circumstances, the percentage will decrease as the size of the fund increases'[]. This sliding scale . . . is explained in part by economies of scale. It is not one hundred fifty times more difficult to prepare, try, and settle a $150 million case than it is to try a $1 million case." *Id.* "'[I]n many instances the increase [in recovery] is merely a factor of the size of the class and has no direct relationship to the efforts of counsel.'" *In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*, 148 F.3d 283, 339 (3d Cir. 1998).

Docket No. 215 (Order at 14).

Although a percentage award in a megafund case can be 25% or even as high as 30-40%, typically the percentage award in such a case is substantially less than the 25% benchmark applicable to typical class settlements in this Circuit. *See, e.g.*, *Ramah Navajo Chapter v. Jewell*, No. 90 CV 957 JAP/KBM, 2016 U.S. Dist. LEXIS 27624, at *64 (D.N.M. Mar. 2, 2016) (noting that, "[i]n mega fund cases, courts in other districts have awarded between 10% and 15% of a mega fund," but acknowledging that "[s]ome courts . . . have awarded percentage fees of more than 15% in mega fund cases," *e.g.*, 30 and 31 1/3%); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043,

---

[1] At the hearing on final approval and fees, Plaintiffs confirmed that the fees awarded would be apportioned with all attorneys who worked on or contributed to the *Alexander* case, *i.e.*, not just the Leonard Carder firm but also other firms who worked on or contributed to *Alexander* via the MDL (*e.g.*, the MDL Omnibus work).

2

1052-53 (9th Cir. 2002) (identifying cases ranging between $53 and $198 million in value, with percentages ranging from 2.8 to 40%; approximately half of those cases had percentages less than 25%). Indeed, Judge Koh has found there is "persuasive evidence that 'the median attorney's fee award in a sample of 68 'megafund' class action settlements over a 16-year period was 10.2%.'" *In re High-Tech Emple. Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 U.S. Dist. LEXIS 118052, at *50 (N.D. Cal. Sept. 2, 2015) (also citing a study where the mean award was 12%). Notably, Judge Koh rejected evidence from a different study indicating that the mean and median fee percentages awarded were 17.8% and 19.5%. *See id.* at *48-50 (noting that the "study spanned just two years" and "the sample size in the . . . study is only eight"). This data suggests that a proposed award of 22%, while not without precedent, is well above the typical range in a megafund case.

For the reasons noted above, in megafund cases, the lodestar cross-check assumes particular importance. In the instant case, the bulk of counsel's efforts took place in conjunction with the MDL. Plaintiffs argue that a portion of the MDL Omnibus work should be attributed to the *Alexander* case, which is a fair contention. The question is what percentage. Originally, Plaintiffs asserted that 25-30% of the MDL Omnibus work should be allocated to *Alexander*. This estimate was "based on a qualitative analysis of the portion of the MDL omnibus work that would have been performed in the *Alexander* case had it been litigated as a stand-alone matter."[2] Docket No. 234 (Ross Decl. ¶ 11); *see also* Docket No. 185 (Mot. at 19) ("Counsel estimates that between 25% and 30% of the Omnibus work in the MDL was reasonable and necessary to the litigation of *Alexander*."). Under that analysis, Plaintiffs asserted a then-lodestar of between $12.4 to $14 million.[3]

However, in supplemental briefing filed pursuant to a Court order, Plaintiffs maintained that it was actually fair to allocate ▓▓▓ of the MDL Omnibus work to the *Alexander* case because

---

[2] Although the Ross declaration has been filed under seal, this portion of the declaration does not contain any confidential information.

[3] Portions of the following two paragraphs shall be maintained under seal. Consistent with the Court's prior sealing order, Plaintiffs shall apply to the Court to lift this sealing (which should be on or about June 15, 2016). *See* Docket No. 233 (order).

3

1
2
3
4  ▮▮▮ Under this analysis, the asserted lodestar is
5  approximately $19.3 million.

6  This change is significant. The more that can be allocated from the MDL, the greater the
7  lodestar in *Alexander*, which in turn reduces the multiplier requested. More specifically, under
8  Plaintiffs' original calculations (*i.e.*, 25-30% of the MDL Omnibus work being allocated),
9  Plaintiffs sought a multiplier in the range of 3.5 to 4. *See* Docket No. 185 (Mot. at 18). With a
10 ▮ allocation of the Omnibus work, the multiplier is reduced to 2.59. *See* Docket No. 234 (Ross
11 Decl. ¶ 18).

12 The Court acknowledges that Plaintiffs' assertion of the ▮ re-allocation arose, in part,
13 based on the Court's order deferring ruling on fees. *See* Docket No. 215 (Order at 16) ("Plaintiffs
14 could provide additional information as to how much of the Omnibus work has been allocated to
15 other cases (*i.e.*, to ensure that counsel will not get double recovery) and the size of the respective
16 recoveries in the other case which grew out of the MDL, including how much the proposed
17 recovery in the *Alexander* (*i.e.*, California) case was compared to all other cases in the MDL.").
18 However, the Court views the ▮▮▮ as simply supportive of Plaintiffs' original allocation of
19 25-30% – reflecting the amount of work that would need to have been done in *Alexander* – and
20 concludes that the 25-30% original allocation is the most reasonable and accurate approach. This
21 assessment of the lodestar is based on what time in the MDL was reasonable and necessary for the
22 *Alexander* case.

23 As noted above, the 25-30% allocation results in a claimed lodestar in the range of $12.4 to
24 $14 million. In performing the lodestar cross-check, however, the Court applies the more
25 conservative lodestar figure proposed by Plaintiffs – $12.4 million. It does so for several reasons.
26 First, it is not clear that substantial billing judgments were exercised by firms other than Leonard
27 Carder. Moreover, the allocation of the MDL Omnibus work turns in part on judgment; it is a soft
28 number. Having reviewed the nature and description of the MDL Omnibus work (which included,

4

*e.g.*, over 100 depositions of FedEx officers and employees), the Court concludes that the more conservative estimate is appropriate.

Based on the $12.4 million lodestar, Plaintiffs are asking for a multiplier of approximately 4 to get to the requested $49.93 million in fees. The Court concludes that this multiplier is not warranted for several reasons. First, a more typical multiplier for a megafund case is less 3 or less. *See, e.g.*, *Vizcaino*, 290 F.3d at 1051 n.6 (in cases where the common fund is $50-200 million, in a majority of cases, the multiplier was in the 1.5-3.0 range); *In re Cendant Corp. Prides Litig.*, 243 F.3d 722, 742 (3d Cir. 2001) (indicating that lodestar multiplier of 1.35 to 2.99 common in megafunds over $100 million). Second, Plaintiffs' lodestar is calculated on current billing rates which compensates in part for the delay and length of this litigation. Third, as indicated above, the size of the lodestar has been influenced by the number of attorneys involved in this case.[4] Rigorous billing judgment should be exercised where multiple counsel are involved; the risk of an inflated lodestar, even where the Court takes the most conservative estimate proffered by the Plaintiffs, counsels caution in applying an extraordinary multiplier. Finally, Plaintiffs' counsel will likely receive additional fee awards as the other cases stemming from the MDL are resolved.

Nevertheless, the Court concludes that a multiplier at the high end of the range – *i.e.*, 3 – is proper. The instant case involves compelling circumstances. For example, Plaintiffs' counsel have vigorously litigated this case for approximately 11 years, including in MDL proceedings, and counsel undertook a sizeable risk, having to appeal the case after losing on summary judgment before ultimately prevailing. In addition, Plaintiffs have incurred substantial additional fees/costs since the motion for final approval was brought. Finally, and most importantly, Plaintiffs' counsel provided a high quality of representation and obtained excellent results. Notably, no objection to the fee request was filed.

Applying a multiplier of 3 to the $12.4 million lodestar, the Court awards $37.2 million in fees.[5] This represents 16.4% of the common fund, consistent with the higher end of awards in

---

[4] Forty-five law firms were involved in the MDL proceedings; three firms were designated co-lead counsel, and three additional firms served on the steering committee.

[5] Even if the enhanced lodestar of $19.3 million is used, the award reflects a multiplier of nearly 2,

5

megafund cases as discussed above and well within the range of reasonableness.

### III. PROPOSED ORDER

For the foregoing reasons, the Court grants final approval and grants fees/costs and incentive awards as itemized above. Plaintiffs shall immediately submit a revised proposed order, *see* Docket No. 245 (proposed order), for the undersigned's signature.

A courtesy copy of the sealed order is being provided to the parties, as well as to the following objectors: Henrik Zohrabians and Rafick El-Hani and El-Hani Services, Inc. (collectively, "El-Hani"). Consistent with the terms of the protective order previously agreed to, *see* Docket No. 240 (stipulation and order), Mr. Zohrabians and El-Hani shall not disclose the confidential information in this order while the Court's sealing order of April 28, 2016, remains in effect.

This order disposes of Docket Nos. 185 and 204.

**IT IS SO ORDERED**.

Dated: June 15, 2016

_____
EDWARD M. CHEN
United States District Judge

---

a number within the typical range in megafund cases.